## NO. 12-20804

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee**

v.

**ELAINE T. MARSHALL, Individually, as Executrix of the Estate of E. Pierce Marshall, as Trustee of the E. Pierce Marshall, Jr. Trust and as Trustee of the Preston Marshall Trust; FINLEY L. HILLIARD, Individually, as former executor of the Estate of James Howard Marshall, II and as former Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust; E. PIERCE MARSHALL, JR., Individually, and as Executor of the Estate of Eleanor Pierce Stevens; PRESTON MARSHALL, Co-Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust,**

**Defendants-Appellants**

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

## ELAINE T. MARSHALL'S APPELLANT BRIEF

William R. Cousins III
Robert Don Collier
Stephen A. Beck
Brian J. Spiegel
MEADOWS, COLLIER, REED, COUSINS,
 CROUCH & UNGERMAN, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone

## NO. 12-20804

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee**

**v.**

**ELAINE T. MARSHALL, Individually, as Executrix of the Estate of E. Pierce Marshall, as Trustee of the E. Pierce Marshall, Jr. Trust and as Trustee of the Preston Marshall Trust; FINLEY L. HILLIARD, Individually, as former executor of the Estate of James Howard Marshall, II and as former Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust; E. PIERCE MARSHALL, JR., Individually, and as Executor of the Estate of Eleanor Pierce Stevens; PRESTON MARSHALL, Co-Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust,**

**Defendants-Appellants**

---

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

DEFENDANTS-APPELLANTS:

ELAINE T. MARSHALL, Individually, as Executrix of the Estate of E. Pierce Marshall, as Trustee of the E. Pierce Marshall, Jr. Trust and as Trustee of the Preston Marshall Trust;

FINLEY L. HILLIARD, Individually, as former executor of the Estate of James Howard Marshall, II and as former Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust;

E. PIERCE MARSHALL, JR., Individually, and as Executor of the Estate of Eleanor Pierce Stevens; and

PRESTON MARSHALL, Co-Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust

DEFENDANTS-APPELLANTS' ATTORNEYS:

Attorneys for ELAINE T. MARSHALL, Individually, as Executrix of the Estate of E. Pierce Marshall, as Trustee of the E. Pierce Marshall, Jr. Trust and as Trustee of the Preston Marshall Trust:

William R. Cousins III
    Texas State Bar No. 04901500
Robert Don Collier
    Texas State Bar No. 04599400
Stephen A. Beck
    Texas State Bar No. 24006821
Brian J. Spiegel
    Texas State Bar No. 24063987

Meadows, Collier, Reed, Cousins,
  Crouch & Ungerman, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202-3742
(214) 744-3700 Telephone
(214) 747-3732 Facsimile

Attorneys for FINLEY L. HILLIARD, Individually, as former executor of the Estate of James Howard Marshall, II and as former Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust; and E. PIERCE MARSHALL, JR., Individually, and as Executor of the Estate of Eleanor Pierce Stevens:

Emily A. Parker
    Texas State Bar No. 15482500
Eric Gordon Reis
    Texas State Bar No. 00797299
Scott Patrick Stolley
    Texas State Bar No. 19284350

Thompson & Knight, L.L.P.
1722 Routh Street, Suite 1500
Dallas, TX  75201
(214) 969-1700 Telephone
(214) 969-1751 Facsimile

Attorneys for PRESTON MARSHALL, Co-Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust:

John William Porter
    Texas State Bar No. 16149990
Jeffrey D. Watters
    Texas State Bar No. 24066695

Baker Botts, L.L.P.
910 Louisiana Street, Suite 3000
Houston, TX 77002
(713) 229-1234 Telephone
(713) 229-1522 Facsimile

PLAINTIFF-APPELLEE:

UNITED STATES OF AMERICA

PLAINTIFF-APPELLEE'S ATTORNEYS:

Ivan C. Dale, Attorney
Michelle C. Johns, Attorney
Andrew L. Sobotka, Attorney

Kathryn Keneally, Assistant
    Attorney General

United States Department of Justice
Tax Division, Appellate Section
P.O. Box 502
Washington, D.C. 20044-0000
(202) 514-8128 Telephone
(202) 514-8456 Facsimile

/s/ William R. Cousins III
William R. Cousins III
Attorney of Record for ELAINE T.
MARSHALL, Individually, as Executrix of
the Estate of E. Pierce Marshall, as Trustee
of the E. Pierce Marshall, Jr. Trust and as
Trustee of the Preston Marshall Trust

## REQUEST FOR ORAL ARGUMENT

This is a class III case.  The District Court's opinion presents issues of first impression in this Court.  The District Court's opinion reached an interpretation of the Federal gift tax donee liability provisions under the Internal Revenue Code of 1986, as amended, ("Code") that has no support under the plain language of the relevant Code provisions.  In doing so, the District Court relied on the minority view of a Circuit split, while extending the minority view substantially beyond its prior limits.  In so doing, the District Court imposed unlimited personal liability on the Marshall donees for approximately $75,000,000.00 of interest arising from a donor's failure to pay gift tax and interest thereon, contrary to the plain language and procedural safeguards of the Code.  This holding has far reaching adverse implications for donees, including charitable donees, that greatly exceed the limitation of liability that Congress mandated.  Therefore, this is a case of national importance, and the implications for all donees require the close scrutiny of oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS

REQUEST FOR ORAL ARGUMENT

TABLE OF AUTHORITIES ...................................................................................iv

I.     JURISDICTIONAL STATEMENT ................................................................1

II.    STATEMENT OF THE ISSUES ....................................................................1

III.   STATEMENT OF THE CASE .......................................................................2

IV.    STATEMENT OF FACTS ..............................................................................6

    A.   Gifts. ......................................................................................................6

    B.   JHM Estate's Gift Tax and GSTT Deficiency. .....................................7

    C.   Tax Court Case............................................................................................7

    D.   IRS's Assessment..........................................................................................8

    E.   Donee Payments.............................................................................................8

    F.   Government's Alternative Claim Against EPM Estate. ...........................9

V.     SUMMARY OF ARGUMENT ....................................................................11

VI.    STANDARD OF REVIEW ..........................................................................14

VII.   ARGUMENT AND AUTHORITIES ..........................................................15

    A.   Donee Liability For Gift Tax.................................................................15

        1.  Federal Gift Tax. ........................................................................15

        2.  Interest on Tax..................................................................................16

        3.  Section 6324(b) Donee Liability. ................................................17

        4.  Section 6324(a)(2) Estate Tax Beneficiary Liability. ........................18

        5.  State Law Income Tax Transferee Liability. ....................................19

6.  GSTT...........................................................................................19

7.  Transferee Liability Collection Procedures. ......................................20

B.  Section 6324(b)'s Plain Language Limits Donee Liability To the Value
of the Donee's Gift.................................................................................23

1.  Section 6324(b) Clearly and Unambiguously Limits Donee Liability
To the Value of Donee's Gift...........................................................23

2.  Majority Split Holds That Section 6324 Limits Transferee Liability. 25

a.   In *Poinier*, the Third Circuit Held That the "Plain Language"
Limits a Donee's Liability. .........................................................26

i.   Tax Court's Decision.................................................................26

ii.   Third Circuit's Decision. ..........................................................27

iii.  Applicability of Third Circuit's Rationale. ...............................30

b.   In *Baptiste I*, the Eighth Circuit Held That Section 6324 "Clearly"
Contemplated That a Transferee's Liability is Limited...............31

C.  The District Court Erroneously Applied an Irrelevant Statute and Relied
on Invalid Statutory Interpretations. ......................................................33

1.  Minority's Erroneous Interpretations. ..............................................33

2.  The District Court Erroneously Relied on *Baptiste II* and Section
6901, Which is Irrelevant to This Case. ...........................................35

a.   Section 6901 is Irrelevant. .........................................................35

b.   The Government Is Now Barred From Applying Section 6901. ..38

3.  The Government's Statutory Interpretations Are Invalid. .................39

a.   Section 6324(b) Imposes One Obligation. .................................39

b.   Section 6901 is Merely a Procedural Statute...............................39

c.   The Government's Double Interest Interpretation.......................40

d.   Section 6901 and Its Legislative History Show No Intent to Impose Unlimited Interest. .........................................................43

i.   Section 6901. ...............................................................................43

ii.  Statutory Predecessors. ...............................................................44

iii. Legislative History. .....................................................................45

e.   Donee Liability Cannot Be Both a Tax and Non-Tax. ................48

f.   Donee Liability Should Not Depend on the Chosen Procedure...49

D.   Policy Considerations Cannot Override Section 6324(b)........................50

1.  The Limitation Is Reasonable. ...........................................................50

2.  Minority Split's Policy Justifications. ...............................................51

E.   *Res Judicata* Bars the Government's Contingent Claim Against EPM Estate. ...............................................................................................53

1.  The Government is Bound. ................................................................55

2.  *Res Judicata* Authorities. ................................................................57

VIII.   CONCLUSION ......................................................................................58

STATUTORY ADDENDUM ..............................................................................61

CERTIFICATE OF SERVICE

ECF CERTIFICATIONS

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Federal Cases                                                    Page(s)

*Arberg v. Comm'r*,
  94 T.C.M. (CCH) 215................................................................49

*America Online, Inc. v. United States*,
  64 Fed. Cl. 571 (Fed. Cl. 2005) ...............................................43

*Badaracco v. Comm'r*,
  464 U.S. 386 (1984) ................................................................53

*Baptiste v. Comm'r*,
  100 T.C. 252 (1993) ..............................................23, 32, 34, 51

*Baptiste v. Comm'r*,
  29 F.3d 433 (8th Cir. 1994) ..............................................passim

*Baptiste v. Comm'r*,
  29 F.3d 1533 (11th Cir. 1994) ..........................................passim

*Baur v. Comm'r*,
  145 F.2d 338 (3d Cir. 1944) ...................................................19

*Bull v. United States*,
  295 U.S. 247 (1935) ................................................................22

*Carder v. Continental Airlines, Inc.*,
  636 F.3d 172 (5th Cir. 2011) ...................................................24

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994) ................................................................50

*Comm'r v. Lundy*,
  516 U.S. 235 (1996) ................................................................53

*Comm'r v. Stern*,
  357 U.S. 39 (1958) ................................19, 20, 21, 39, 40, 46

*Davis v. Michigan Dep't of Treasury*,
  489 U.S. 803 (1989) ................................................................45

*Duffie v. United States*,
  600 F.3d 362 (5th Cir. 2010) ...................................................49

*Estate of Davenport v. Comm'r*,
  74 T.C.M. (CCH) 405..............................................................57

*Estate of Smith v. Comm'r*,
  198 F.3d 515 (5th Cir. 1999) ...................................................54

*Fletcher Trust Co. v. Comm'r*,
  141 F.2d 36 (7th Cir. 1944) .....................................................17

*Flora v. United States*,
  362 U.S. 145 (1960) ................................................................22

*Freytag v. Comm'r*,
    501 U.S. 868 (1991) ................................................................45
*Geniviva v. United States*,
    16 F.3d 522 (3d Cir. 1994) .................................................23
*Gould v. Gould*,
    245 U.S. 151 (1917) ............................................................43
*In re Southmark*,
    163 F.3d 925 (5th Cir. 1999) ..............................................56
*Jiminez v. Quarterman*,
    555 U.S. 113 (2009) ............................................................24
*Keller v. United States*,
    697 F.3d 238 (5th Cir. 2012) ..............................................14
*Kimbell v. United States*,
    371 F.3d 257 (5th Cir. 2004) ..............................................14
*Krueger v. Comm'r*,
    48 T.C. 824 (1967) .............................................................55
*Lari v. Holder*,
    697 F.3d 273 (5th Cir. 2012) ..............................................24
*Leighton v. United States*,
    289 U.S. 506 (1993) ............................................................23
*Marsh & McLennan Cos. v. United States*,
    302 F.3d 1369 (Fed. Cir. 2002)..........................................52
*Mississippi Valley Trust Co. v. Comm'r*,
    147 F.2d 186 (8th Cir. 1945) ..............................................17
*Moskal v. United States*,
    498 U.S. 103 (1990) ............................................................46
*Patterson v. Sims*,
    281 F.2d 577 (5th Cir. 1960) ..........................................19, 20
*Poinier v. Comm'r*,
    86 T.C. 478 (1986) .................................................23, 26, 27, 28
*Poinier v. Comm'r*,
    858 F.2d 917 (3d Cir. 1988) ..........................................passim
*Sanford's Estate v. Comm'r*,
    308 U.S. 39 (1939) .............................................................19
*Texas v. United States*,
    497 F.3d 491 (5th Cir. 2007) ..............................................50
*Thompson v. Goetzmann*,
    337 F.3d 489 (5th Cir. 2003) ..............................................53
*Transco Exploration Co. v. Comm'r*,
    949 F.2d 837 (5th Cir. 1992) ..............................................36

*United States v. Davenport*,
    327 F. Supp. 2d 725 (S.D. Tex. 2004) ........................................57
*United States v. Davenport*,
    484 F.3d 321 (5th Cir. 2007) ............................ 17, 23, 38, 54, 55, 56, 57, 58
*United States v. MacIntyre*,
    2012 WL 1067283 (S.D. Tex. Mar. 28, 2012) ....................................... 3, 11
*United States v. MacIntyre*,
    2012 WL 2064977 (S.D. Tex. June 7, 2012).......................................... passim
*United States v. Marine Shale Processors*,
    81 F.3d 1361 (5th Cir. 1996) ....................................................54
*United States v. Russell*,
    327 F. Supp. 632 (D. Kan. 1971) ........................................ 37, 38
*United States v. Russell*,
    461 F.2d 605 (10th Cir. 1972) ..................................................38

## Federal Statutes

Internal Revenue Code (26 U.S.C.):

    § 61(a) ...........................................................................24
    § 2001 (1995) ...................................................................51
    § 2001 (2012) ...................................................................51
    § 2501(a) .......................................................................15
    § 2502 (1995) ...................................................................51
    § 2502 (2012) ...................................................................51
    § 2502(c) .......................................................................16
    § 2503(b)(1) ....................................................................24
    § 2511(a) .......................................................................16
    § 2512(b) .......................................................................15
    § 2601 ..........................................................................19
    § 2603(c) .......................................................................20
    § 2661(1) .......................................................................20
    § 6075(b)(1) ....................................................................16
    § 6151(a) .......................................................................16
    § 6203 ..........................................................................21
    § 6205(a)(1) ....................................................................52
    § 6212(a) ................................................................... 21, 22
    § 6213 ..........................................................................37
    § 6213(a) ................................................................... 21, 22
    § 6303(a) .......................................................................22
    § 6324 ..........................................................................61

§ 6324(a)(2) (1981) ................................................................ 32
§ 6324(a)(2) ........................................................................ 19
§ 6324(b) (1970) .................................................................. 27
§ 6324(b) ...................................................... 4, 17, 18, 23, 39
§ 6601 .................................................................. 25, 41, 63
§ 6601(a) ........................................................ 16, 47, 48, 51
§ 6601(e) ........................................................................ 4, 17
§ 6601(e)(1) .................................................................. 18, 27
§ 6601(f)(1) (1970) .............................................................. 27
§ 6601(i) ........................................................................... 52
§ 6601(j) ........................................................................... 52
§ 6665(a)(2) .............................................................. 4, 17, 18
§ 6901 .......................................................................... 22, 66
§ 6901(a) .................................................. 20, 21, 35, 36, 37
§ 7402 ................................................................................. 1
§ 7403 ................................................................................. 1
§ 7422(a) ........................................................................... 22
§ 7508(a)(1)(B) ................................................................. 52

28 U.S.C. 1291 ........................................................................ 1
28 U.S.C. 1294(1) .................................................................... 1
28 U.S.C. 1340 ........................................................................ 1
28 U.S.C. 1345 ........................................................................ 1

## Federal Regulations

Treas. Reg. § 25.2511-1(h)(1) ................................................. 16
Treas. Reg. § 25.2502-2 ......................................................... 16
Treas. Reg. § 301.6901-1(a)(3)(iv) ................................... 22, 37

## Public Acts

Revenue Act of 1926, Pub. L. No. 69-20, 44 Stat. 9
§ 274(j) .............................................................................. 47
§ 276(b) ............................................................................. 47
§ 276(c) ............................................................................. 47
§ 280 .................................................................................. 44
§ 315(b) ............................................................................. 45
§ 316(a)(1) ......................................................................... 44

Revenue Act of 1932, Pub. L. No. 72-154, 47 Stat. 169

   § 510 ................................................................................ 45

   § 526(a) ............................................................................ 45

## Congressional Reports

H.R. Rep. No. 69-356 (1926), *reprinted in* 1939-1 C.B. (Pt. 2) 361 ............... 46, 47

S. Rep. No. 69-52 (1926), *reprinted in* 1939-1 C.B. (Pt. 2) 332 ..................... 21, 46

## Federal Rules

Fed. R. App. P. 4(a)(1)(B) ......................................................... 1

Fed. R. App. P. 4(a)(4)(A)(iv) .................................................... 1

Fed. R. Civ. P. 59(e) ............................................................. 1

# I.     JURISDICTIONAL STATEMENT

The U.S. District Court for the Southern District of Texas had subject matter jurisdiction pursuant to 26 U.S.C. §§ 7402 and 7403 and 28 U.S.C. §§ 1340 and 1345 because the United States is plaintiff and this case involves the internal revenue laws.  (R347).[1]  The District Court's final judgment disposing of all of the parties' claims, from which Elaine T. Marshall ("Mrs. Marshall") appeals in her various capacities, was entered on July 26, 2012.  (R1740-41).  Mrs. Marshall timely filed a Motion to Alter Judgment on August 22, 2012.  (R1749-54).  *See* Fed. R. Civ. P. 59(e).  The court denied it in an order entered on November 5, 2012.  (R1866).  Mrs. Marshall timely filed her notice of appeal on December 10, 2012.  (R1867-69).  *See* Fed. R. App. P. 4(a)(1)(B), (a)(4)(A)(iv).  Thus, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294(1).

# II.     STATEMENT OF THE ISSUES

This appeal from cross-motions for summary judgment presents the following issues of law, the first three of which are of first impression in this Court:

---

[1] "R" references are to the original record on appeal as repaginated by the District Court Clerk.  "Supp. R" references are to post-judgment portions of the record on appeal which the District Court Clerk separately repaginated.  Where appropriate, additional descriptive information is given.

1.    Does Section 6324(b)[2] impose an independent liability on a gift donee that bears unlimited interest until paid, or does the plain language of the statute limit the liability of a donee to the value of the gift?

2.    When the Government elects to sue a donee in U.S. District Court to establish the donee's liability under Section 6324(b) and thereby deny the donee the procedural safeguards under Section 6901, including the donee's right to file suit in the U.S. Tax Court, can the Government still rely on Section 6901 to justify the collection of unlimited interest, or does it waive any right to rely on Section 6901?

3.    Alternatively, does Section 6901 impose an additional unlimited interest obligation on a donee, or is it merely a procedural statute which does not affect the limitation of Section 6324(b)?

4.    Is the contingent claim of the Government against the Estate of E. Pierce Marshall barred by *res judicata*?

### III.   STATEMENT OF THE CASE

This Federal tax donee liability case arose from indirect gifts made in 1995 by J. Howard Marshall, II ("JHM") to: (i) Eleanor Pierce Stevens ("EPS"), JHM's

---

[2] Unless otherwise specified, each reference herein to a "Section" is to a section of the Code.

former wife, or a "grantor retained income trust" ("GRIT") established by her;[3] (ii) E. Pierce Marshall ("EPM"), the son of JHM; (iii) Mrs. Marshall, the wife of EPM; (iv) Preston Marshall Trust ("PM Trust"), formed for the benefit of Preston Marshall, the son of EPM and Mrs. Marshall; and (v) E. Pierce Marshall, Jr. Trust ("EMPJR Trust"), formed for the benefit of E. Pierce Marshall, Jr., the son of EPM and Mrs. Marshall.  (R350-56).  This Appellant Brief is filed on behalf of Mrs. Marshall in her individual capacity, as executrix of the Estate of EPM ("EPM Estate"),[4] and as trustee of PM Trust and EPMJR Trust.  (Mrs. Marshall, EPM Estate, PM Trust and EPMJR Trust are each referred to as "Donee" and collectively as "Donees.")  This brief addresses the District Court's decision in *United States v. MacIntyre*, 2012 WL 2064977 (S.D. Tex. June 7, 2012), that donee liability for interest is not limited by Section 6324(b).  (R1686-97).  Separate Appellant Briefs are being filed by other Defendants in this case.  (Supp. R61-62; 5th Cir. Doc. 00512169882, 5th Cir. Doc. 00512169883).

The U.S. Tax Court decided in 2008, based on stipulations, that the Estate of JHM[5] ("JHM Estate") owed combined gift tax and generation skipping transfer tax ("GSTT") for 1995 of $47,509,047, plus statutory interest ("JHM Deficiency").

---

[3] The issue of whether JHM's gift was made primarily to EPS or her GRIT was at issue in *United States v. MacIntyre*, 2012 WL 1067283 (S.D. Tex. Mar. 28, 2012). (R1594-1602).

[4] EPM died on June 20, 2006.  (R355).

[5] JHM died on August 4, 1995.  (R350).

(R634-53, 675-76).  The Government assessed the JHM Deficiency on May 26, 2008.  (R355).  JHM Estate did not pay the JHM Deficiency.  (Id).

Over two years later, on August 6, 2010, the Government elected to sue Donees in this case, seeking a judgment for the JHM Deficiency pursuant to Sections 6324(b) and 2661.  (R16-52).  The Government did not utilize the Section 6901 procedures for collecting transferee liabilities and did not issue Section 6901 notices of transferee liability to Donees.  (R607).

Cross-motions for partial summary judgment were filed.  (R593-625, Sealed Doc. 71).  The motions centered around the following language in Section 6324(b): "If the [gift] tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift."  The Section 6324(b) reference to "tax" is deemed to include interest and penalties imposed on that tax.  *See* I.R.C. §§ 6601(e), 6665(a)(2).  Thus, the plain language of Section 6324(b) limits the donee's liability for the donor's gift tax, penalties and interest thereon to the value of the gift.

Prior to commencement of this case, Donees paid to the Government approximately the values of their 1995 gifts from JHM.  (R600-01).  Thus, at issue was whether the value-of-the-gift limit in Section 6324(b) limited each Donee's liability for interest, it being agreed that the liability for the gift tax and related

penalty was limited by the value of the gift. *See MacIntyre*, 2012 WL 2064977, at *3; (R604).

Donees asserted that the plain language of the value-of-the-gift limit limited all of a donee's liability, including interest. (Sealed Doc. 71, p. 7). Donees relied primarily on *Poinier v. Commissioner*, 858 F.2d 917 (3d Cir. 1988) and *Baptiste v. Commissioner*, 29 F.3d 433 (8th Cir. 1994). (Id. at 9-10).

The Government asserted that interest accrues concurrently on two distinct obligations: the donor's obligation for the unpaid tax; and the donee's personal, non-tax liability under Section 6324. (R611-12). The Government claimed that the value-of-the-gift limit applies only to the donor's obligation but not the donee's obligation. (R613). The Government relied primarily on *Baptiste v. Commissioner*, 29 F.3d 1533 (11th Cir. 1994). (R610).

The District Court adopted the Eleventh Circuit's *Baptiste* holding and concluded that Section 6324(b) donee liability involves two obligations: (i) the unpaid gift tax, including interest and penalties, all limited to the donee's gift value; and (ii) an independent obligation that is not a "tax" and is not subject to the value-of-the-gift limit. *See MacIntyre,* 2012 WL 2064977, at *6; (R1694-96). It further concluded that the donee's independent obligation is subject to unlimited interest until paid under Section 6601, which imposes interest only on delinquent "tax." *See MacIntyre,* 2012 WL 2064977, at *6; (R1695).

## IV.   STATEMENT OF FACTS

### A.   Gifts.

There are no material facts in dispute.  This case involves gifts made from JHM to various donees in 1995 pursuant to three transactions.

First, Marshall Petroleum, Inc. ("MPI") issued a note in redemption of its common stock owned by JHM's Grantor Retained Annuity Trust.  (R647).  The Internal Revenue Service ("IRS") alleged that the redemption resulted in an indirect gift from JHM to Donees, as other shareholders of MPI, because MPI's consideration for the redemption was less than the value of the stock.  (Sealed Doc. 92-1, pp. 42-43).

Second, MPI issued a private annuity in redemption of its common stock owned by J. Howard Marshall, II Living Trust.  (R648-49).  The IRS alleged that this redemption also resulted in indirect gifts to Donees, as other MPI shareholders, because the value of the annuity was less than the value of the stock.  (Sealed Doc. 92-1, pp. 43-46).

Third, EPM earned Electron Corporation stock for his services as co-trustee of the J. Howard Marshall, II Living Trust.  (R650).  The IRS alleged that the assignment of Electron stock involved a gift to EPM because the value of the stock at vesting exceeded the amount to which EPM was entitled.  (Sealed Doc. 92-1, pp. 46-47).

## B.  JHM Estate's Gift Tax and GSTT Deficiency.

On December 13, 1999, the IRS issued its Notice of Deficiency (the "Notice") alleging that JHM Estate owed 1995 gift tax and GSTT of $130,980,886.25, penalties of $32,745,221.56 and interest as provided by law.  (Id. at 34).

## C.  Tax Court Case.

On March 10, 2000, JHM Estate filed a petition with the U.S. Tax Court disputing the deficiency and penalties alleged in the Notice.  (Sealed Doc. 92-1). JHM Estate and the IRS entered into a Stipulation of Settled Issues that was filed with the Tax Court on June 6, 2002 (the "Stipulation").  (R634-53).  In it, the aggregate value of the 1995 gifts was stipulated as $83,038,172,[6] consisting of gifts to:

1.  EPM of $43,786,361; (R647, 649-50).

2.  EPS of $35,939,316; (R647, 649).

3.  Mrs. Marshall of $1,104,165; (R647, 649).

4.  PM Trust of $1,104,165; and (R647, 649).

5.  EPMJR Trust of $1,104,165.  (R647, 649).

---

[6] This total does not include the GSTT that was added to the gifts to reach total taxable gifts of $84,191,754.  (R598, 647-50).

On March 20, 2008, the Tax Court entered a decision (the "Decision") pursuant to the Stipulation.[7] (R675-76). In it, the Tax Court ordered that JHM Estate owed the JHM Deficiency and stated that "interest will be assessed as provided by law . . . ." (R676). The Decision also noted that cash bond payments had been made on the JHM Deficiency: (i) $5,309,229.39 on June 9, 2005; (ii) $6,451,965.00 on September 14, 2006; and (iii) $461,291.94 on October 3, 2006. (Id).

**D.    IRS's Assessment.**

On May 26, 2008, the IRS assessed the JHM Deficiency. (R355). The IRS then sent JHM Estate a notice and demand for payment, which JHM Estate did not pay. (R600).

**E.    Donee Payments.**

On May 25, 2010, and June 8, 2010, EPM Estate paid $47,098,854.33 towards satisfaction of the JHM Deficiency for the benefit of Donees. (R600-01). As a result, the remaining unpaid value of the 1995 gifts was:

---

[7] The Tax Court case was held open for several years following the Stipulation pending resolution of JHM Estate's litigation with Anna Nicole Smith (a/k/a Vickie Lynn Smith). (R597).

| Donee | Value of 1995 Gifts | Payment | Remaining Unpaid Value |
|---|---|---|---|
| EPM Estate | $43,786,361.00 | $43,786,359.33 | $1.67 |
| EPS Estate | $35,939,316.00 | $0.00 | $35,939,316.00 |
| Mrs. Marshall | $1,104,165.00 | $1,104,165.00 | $0.00 |
| PM Trust | $1,104,165.00 | $1,104,165.00 | $0.00 |
| EPMJR Trust | $1,104,165.00 | $1,104,165.00 | $0.00 |
| **Total** | **$83,038,172.00** | **$47,098,854.33** | **$35,939,317.67** |

(R600-01, 647-50). As shown, Donees paid the Government the value of the 1995 gifts received by them, with the exception of $1.67.

Lastly, on December 10, 2012, Donees delivered a check from EPM Estate to the Government for $74,990,571 as a result of the District Court's final judgment in *MacIntyre*, 2012 WL 2064977. (R1740-41). The payment was for the outstanding balance of the JHM Deficiency, plus interest thereon, and court costs. (R1739-40). The check and accompanying cover letter to the Government indicated that the payment was made as a deposit on the judgment and was not intended to settle the matter or moot an appeal by Donees. The entire $74,990,571 is in dispute by this appeal, except for the aforementioned $1.67 and the post-judgment interest thereon.

### F.    Government's Alternative Claim Against EPM Estate.

During 1995, EPS' MPI shares were held in the GRIT. EPS had a 93.9812% income interest and EPM had a 6.0188% remainder interest in the GRIT (Sealed Doc. 57, Para. 18). The GRIT held 46.0662% of MPI's stock. (Id. at Para. 19).

In the Stipulation, signed by the IRS and EPM as Executor of JHM Estate, the parties agreed EPM's ownership interest in MPI was 52.72%. (R647-50). This amount comprised EPM's direct ownership of 49.9577% and his 6.0188% remainder interest in the GRIT's 46.0662% interest in MPI (6.0188% of 46.0662% is 2.77%). (Id.; Sealed Doc. 57, Para. 20). The parties also agreed that EPS' ownership interest in MPI was 43.29% based on her 93.9814% interest in the GRIT. (R647-50; Sealed Doc. 57, Para. 20).

The Stipulation and Decision attributed gifts of $35,939,316 to EPS as a result of her 43.29% ownership interest and gifts to EPM of $43,786,361 as a result of his 52.72% ownership interest. (R647-50). The Government's First Amended Complaint added a contingent claim asserting that EPM should be considered as receiving additional gifts of $35,939,316 to the extent the District Court holds that EPS did not receive that amount. (R376-78).

EPM Estate filed a motion for partial summary judgment contending that the Stipulation and Decision barred the Government from challenging the total amount of EPM's gifts under the doctrine of *res judicata*. (Sealed Doc. 92). The Government agreed with EPM Estate – "the United States' primary position is consistent with the *res judicata* arguments asserted in the present Motion filed by Elaine Marshall on behalf of the Estate of E. Pierce Marshall" – and stated that it

was taking a protective position in case the District Court rules that *res judicata* does not apply and that EPS did not receive the 1995 gifts. (R1589-90).

In *United States v. MacIntyre*, 2012 WL 1067283, at *4-5, the District Court found that EPS was the recipient of the gifts of $35,939,316. (R1599-1602). Accordingly, in *MacIntyre*, 2012 WL 2064977, at *7, the District Court did not address the *res judicata* issue or the Government's contingent claim and denied EPM Estate's motion as moot. (R1696-97).

## V.    SUMMARY OF ARGUMENT

In Section 6324(b), Congress imposed a single liability on a donee for gift tax and related interest and penalty. Section 6324(b) also clearly and explicitly limits that donee liability to the value of the donee's gift. Congress did not include any exception to the liability limitation. It did not say that the limit applies to some donee obligations but not others. It did not include any language anywhere in the Code that would impose an interest obligation on donees that is exempted from the limit. Congress knows how to write exceptions and impose unlimited interest obligations when it wants to do so. It did not do so here. Section 6324(b) means what it says. Donee liability is limited to the value of the gift.

The Third and Eighth Circuit Courts of Appeals have held that the plain language of Section 6324 clearly limits all transferee liability, including interest, to the value of the property received by the transferee. The Third and Eighth

Circuits' holdings apply equally here. Donees' liabilities are limited to the value of their gifts.

Despite the plain language of Section 6324(b), the District Court adopted the minority Circuit split interpretation of the Eleventh Circuit, which interpreted Section 6324 as imposing two separate obligations on transferees: (i) an obligation for the unpaid tax, plus interest, limited to the value of the property received by the transferee; and (ii) an independent, personal obligation "of the general sort imposed by federal law." The Eleventh Circuit also interpreted Section 6901 as indicating that the latter independent obligation was not a "tax" and therefore not subject to the Section 6324 liability limitation. Conversely, it interpreted Section 6901 as indicating that the same independent obligation should be treated as a "tax" and therefore subject to interest accrual under Section 6601.

In adopting this interpretation, the District Court erred in three primary ways. First, it erred in applying Section 6901 because that Section, and thus the Eleventh Circuit's interpretation, is irrelevant to this case. Section 6901 applies only to transferee liability that is "assessed, paid, and collected in the same manner" as a tax deficiency, which means that the Government must issue a Section 6901 notice of transferee liability. The Government did not follow the Section 6901 procedures or issue any notices of transferee liability to Donees. This had important consequences to Donees as it deprived them of the opportunity

12

to have their liability determined in U.S. Tax Court. Since the Government did not apply the Section 6901 procedures, Section 6901 is inapplicable to this case. It therefore cannot be used as a justification for imposing unlimited interest on Donees.

Second, the District Court's interpretation of Section 6324(b) is invalid because it directly contradicts the plain language of the statute and Congress's intent to limit donee liability. The Third and Eighth Circuits have rejected the argument that Section 6324 imposes a second unlimited obligation on donees. Their conclusions apply equally here.

Third, even if Section 6901 is applicable, the District Court erred because it relied on an interpretation of Section 6901 that is invalid for four primary reasons. First, Section 6901 cannot be used as the basis for imposing interest on Donees because the U.S. Supreme Court has held that Section 6901 is merely a procedural statute that does not create any substantive liability. Second, the District Court's interpretation of Section 6901 directly contradicts Congress's limit on donee liability. Third, the language of Section 6901, its statutory predecessors, and its legislative history show that Congress did not intend to impose an unstated, unlimited interest obligation on transferees in contravention of its stated limit in Section 6324. Fourth, the District Court's interpretation is invalid because it

characterizes donee liability inconsistently as a "tax" for some purposes and a "non-tax" for others, depending on what serves the Government's interests.

Moreover, Congress has resolved all policy issues in favor of the Section 6324(b) limitation. Congress could have explicitly provided for unlimited interest on donee liability, but it did not. It did the opposite. It limited donee liability to the value of the gift. If the Government does not like the result achieved under Section 6324(b), the Government should look to Congress for change, instead of asking this Court to creatively rewrite the statute.

Finally, the Government's contingent claim against EPM Estate is barred by *res judicata*, and the Government agrees as to its primary position. Under an almost identical situation, this Court held that *res judicata* applies.

## VI.    STANDARD OF REVIEW

This appeal is taken from a final summary judgment based on stipulated facts and the District Court's interpretations of Federal statutes. Accordingly, the Court reviews the judgment *de novo*. *Kimbell v. United States*, 371 F.3d 257, 260 (5th Cir. 2004) (review of grant of summary judgment is *de novo*); *Keller v. United States*, 697 F.3d 238, 242 (5th Cir. 2012) (review of legal conclusions is *de novo*).

## VII.   ARGUMENT AND AUTHORITIES

### A.     Donee Liability For Gift Tax.

This case involves the extent of donee liability for Federal gift tax and interest.  Donees agree that:  (i) the transfers at issue were subject to the Federal gift tax; (ii) they are liable under Section 6324(b) as donees for the unpaid gift tax resulting from those gifts; and (iii) their donee liabilities under Section 6324(b) include liability for interest accruing on the unpaid gift tax from the date the gift tax was due.

The issue in this case for Donees involves the limit on the amount of each Donee's liability.  Donees assert that their respective donee liability is limited to the value of their gifts, as provided by the clear and explicit language of Section 6324(b).  The Government, in contrast, contends that Donees are liable for an independent personal obligation that is neither stated in the Code nor subject to the explicit limit of Section 6324(b).  Before reviewing relevant case authorities, fundamental concepts and Sections regarding donee liability for gift tax will be reviewed to provide the background for the Section 6324(b) issue.

### 1.     Federal Gift Tax.

Gift tax is imposed on "the transfer of property by gift."  I.R.C. § 2501(a).  A gift includes transfers of property for "less than an adequate and full consideration in money or money's worth."  I.R.C. § 2512(b).

The gift tax applies to a gratuitous transfer made directly or indirectly to the donee. *See* I.R.C. § 2511(a). A gratuitous transfer of property by a shareholder to his corporation generally represents an indirect gift by that shareholder to the other individual shareholders of the corporation to the extent of their proportionate interests in the corporation. *See* Treas. Reg. § 25.2511-1(h)(1). Accordingly, MPI's redemptions of JHM's stock for less than fair market value constituted indirect gifts to Donees, notwithstanding that Donees were not direct parties. (R647-649).

The donor is primarily liable for the gift tax. *See* I.R.C. § 2502(c). If the donor dies before it is paid, the gift tax is a debt of the donor's estate, which his executor must pay out of the estate. *See* Treas. Reg. § 25.2502-2. The gift tax is due at the time required for filing of the gift tax return. *See* I.R.C. §§ 6075(b)(1), 6151(a) (i.e., April 15th following the calendar year of the gift). Thus, JHM Estate was primarily liable for paying the 1995 gift tax by April 15, 1996.

### 2. Interest on Tax.

If the tax is not paid when due, Section 6601 imposes interest from the due date until the date paid. *See* I.R.C. § 6601(a). Thus, when JHM Estate did not pay the gift tax by April 15, 1996, interest started accruing on the gift tax.

Section 6601 is the only Section imposing interest on delinquent tax and imposes interest only on an "amount of tax." *Id.* Section 6601 further provides:

"Any reference in [the Code] . . . to any tax imposed by [the Code] shall be deemed also to refer to interest imposed by this section on such tax." I.R.C. § 6601(e). In addition, any reference in the Code to a "tax" is deemed to also refer to penalties imposed under Chapter 68 of the Code (i.e., Sections 6651 to 6751). *See* I.R.C. § 6665(a)(2). Thus, Section 6601 imposes interest on an amount of "tax," which includes interest previously accrued and any related penalties.

### 3.     Section 6324(b) Donee Liability.

If the donor does not pay the gift tax when due, the donee becomes personally liable for payment of that tax. *See* I.R.C. § 6324(b). The donee's liability is secondary because it arises only when the donor fails to pay. *See Fletcher Trust Co. v. Comm'r*, 141 F.2d 36, 39 (7th Cir. 1944). Upon that failure, however, the donee becomes subject to an immediate and direct liability for the tax, but only to the extent of that donee's gift's value. *See Mississippi Valley Trust Co. v. Comm'r*, 147 F.2d 186, 187-88 (8th Cir. 1945). The donee is liable for the gift tax due on all gifts made by the donor during the calendar year, regardless of whether the donee's gift was taxable. *See United States v. Davenport*, 484 F.3d 321, 325 (5th Cir. 2007). Donee liability is limited under Section 6324(b), which states in pertinent part:

> (b) Lien For Gift Tax – Except as otherwise provided in subsection (c), unless the gift tax imposed by chapter 12 is sooner paid in full or becomes unenforceable by reason of lapse of time, such tax shall be a lien upon all gifts made during the period for which the return was

17

> filed, for 10 years from the date the gifts are made.  If the tax is not paid when due, *the donee of any gift shall be personally liable for such tax to the extent of the value of such gift.*

I.R.C. § 6324(b) (emphasis added).

Section 6324(b), when read with Section 6601(e), is correctly interpreted as stating:  "If the [gift tax and interest] is not paid when due, the donee of any gift shall be personally liable for such [gift tax and interest] to the extent of the value of such gift."  *See Poinier v. Comm'r*, 858 F.2d 917, 920 (3d Cir. 1988).  In addition, the Government has acknowledged that the Section 6324(b) limit applies to penalties imposed on JHM Estate.  (R540).  Thus, to the extent Donees have paid amounts that exceed the value of their gifts and are attributable to JHM Estate's penalties, Donees are entitled to a refund.

Therefore, once JHM Estate failed to pay its 1995 gift tax liability on April 15, 1996, Donees became personally liable for the tax, related penalty, and interest thereon.  *See* I.R.C. §§ 6324(b), 6601(e)(1), 6665(a)(2).  Each Donee's liability, however, was limited to the value of that Donee's gift.  *See* I.R.C. § 6324(b).

### 4.    Section 6324(a)(2) Estate Tax Beneficiary Liability.

Transferee liability for estate tax is similarly imposed under Section 6324(a)(2), which states in relevant part:

> If the estate tax . . . is not paid when due, then the . . . transferee . . . who receives, or has on the date of the decedent's death, property

18

> included in the gross estate . . . to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax.

I.R.C. § 6324(a)(2).  Thus, like donee liability for gift tax, transferee liability for estate tax is imposed under the Code and limited to the value of the property received by the transferee.  *See id.*  Accordingly, decisions regarding transferee liability for estate tax are relevant in determining the extent of donee liability for gift tax because the two taxes must be interpreted together.  *See Sanford's Estate v. Comm'r*, 308 U.S. 39, 44 (1939) ("The gift tax was supplementary to the estate tax.  The two are in *pari materia* and must be construed together.").

### 5.    State Law Income Tax Transferee Liability.

Transferee liability for income tax, in contrast, is not imposed under Federal statute.  *See Comm'r v. Stern*, 357 U.S. 39, 42-45 (1958).  Rather, the existence and extent of income tax transferee liability is determined under state law.  *See id.* at 45-46 (Kentucky law); *Patterson v. Sims*, 281 F.2d 577, 580 (5th Cir. 1960) (Alabama law).  Therefore, income tax transferee cases are not relevant in determining gift tax donee liability.  *See Baur v. Comm'r*, 145 F.2d 338, 340 (3d Cir. 1944).

### 6.    GSTT.

The GSTT is imposed under Section 2601.  I.R.C. § 2601.  The JHM Deficiency comprised $46,305,465 of gift tax and $1,203,582 of GSTT.  (R647-

50). The GSTT was attributable to the indirect gifts made to PM Trust and EPMJR Trust. (Id).

All provisions applicable to the gift tax, including Section 6324(b), are applicable to the GSTT. I.R.C. §§ 2603(c), 2661(1). Thus, Donees' argument that Section 6324(b) limits their liability to the values of their gifts applies equally to the GSTT and interest thereon.

### 7.    Transferee Liability Collection Procedures.

Section 6901 is purely a procedural statute for the collection of donee, beneficiary or other transferee liability for taxes. *See* I.R.C. § 6901(a). It does not create or define any substantive liability of transferees. *See Stern*, 357 U.S. at 42; *Patterson*, 281 F.2d at 580. It states in relevant part:

> (a)    Method of Collection. – The amounts of the following liabilities shall . . . be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:
>
>> (1)    Income, Estate, and Gift Taxes. –
>>
>>> (A)    Transferees. – The liability, at law or in equity, of a transferee of property –
>>>
>>>> (i)    of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),
>>>>
>>>> (ii)    of a decedent in the case of a tax imposed by chapter 11 (relating to estate taxes), or
>>>>
>>>> (iii)    of a donor in the case of a tax imposed by chapter 12 (relating to gift taxes),

20

> in respect of the tax imposed by subtitle A [income tax] or B
> [estate and gift taxes].

I.R.C. § 6901(a).

Prior to 1926, the Government could pursue a transferee for payment of the transferor's tax liability only by bringing a court proceeding against the transferee. *See* S. Rep. 69-52 (1926), *reprinted in* 1939-1 C.B. (Pt. 2) 332, 353-54; (R1115-16). This was unduly cumbersome, so Congress enacted the 1926 statutory predecessor of Section 6901 enabling the Government to collect transferee liability under the same expedited administrative procedures applying to tax deficiencies. *See id.*; *Stern*, 357 U.S. at 42-43.

Administrative procedures for collecting tax deficiencies are generally as follows. If the IRS determines that a taxpayer owes additional tax, the IRS must send a notice of deficiency to the taxpayer. *See* I.R.C. § 6212(a). The taxpayer then has 90 days to file a petition with the U.S. Tax Court for redetermination of that deficiency. *See* I.R.C. § 6213(a). If the taxpayer files the petition, the IRS generally cannot assess the tax until the Tax Court decision has become final. *See id.* If the taxpayer fails to file the petition, however, the IRS can assess the tax. *See id.*

Assessment occurs when the taxpayer's liability is recorded on the IRS's books. *See* I.R.C. § 6203. Assessment fixes the amount of the taxpayer's liability

and entitles the Government to commence collection efforts. *See Bull v. United States*, 295 U.S. 247, 259 (1935). Within 60 days following assessment, the Government must send a notice, called the "notice and demand," to the taxpayer stating the amount of the taxpayer's obligation and demanding payment. *See* I.R.C. § 6303(a). After assessment, the taxpayer can obtain judicial review only by paying the assessed tax in full, filing an administrative refund claim and, upon denial, suing for refund in U.S. District Court or the Court of Federal Claims. *See* I.R.C. § 7422(a); *Flora v. United States*, 362 U.S. 145, 177 (1960).

Similarly, under Section 6901, the Government is required to issue a notice of transferee liability to the transferee, similar to a deficiency notice. *See* I.R.C. §§ 6901, 6212(a). The transferee, upon receipt, has the right to petition the U.S. Tax Court for judicial review prior to the Government's assessment of the transferee liability. *See* I.R.C. § 6213(a); Treas. Reg. § 301.6901-1(a)(3)(iv). If the petition is filed, the Government is precluded from assessing the transferee liability until the Tax Court decision is final. *See* I.R.C. § 6213(a). Accordingly, the transferee is entitled to the same type of procedural safeguards as is a taxpayer for an asserted tax deficiency. If the transferee fails to file a Tax Court petition, however, the Government can then collect the transferee liability without judicial review. *See id.*

Courts have determined that Section 6901 provides the Government with an additional, non-exclusive procedure for pursuing transferee liability. *See Geniviva v. United States*, 16 F.3d 522, 524-25 (3d Cir. 1994) (*citing Leighton v. United States*, 289 U.S. 506, 507-09 (1933)). Under these authorities, the Government has a choice. It can follow the Section 6901 procedures and issue a notice of transferee liability, thereby providing the transferee with the opportunity for pre-assessment review in Tax Court. *See, e.g., Poinier v. Comm'r,* 86 T.C. 478 (1986); *Baptiste v. Comm'r*, 100 T.C. 252 (1993). Alternatively, the Government can file suit in U.S. District Court against the transferee without following the Section 6901 procedures, as it did against Donees. *MacIntyre*, 2012 WL 2064977; *see also Davenport*, 484 F.3d 321 (District Court action).

**B.    Section 6324(b)'s Plain Language Limits Donee Liability To the Value of the Donee's Gift.**

The issue in this case is whether Section 6324(b) precludes a donee from being liable for any amount in excess of the value of the donee's gift.

**1.    Section 6324(b) Clearly and Unambiguously Limits Donee Liability To the Value of Donee's Gift.**

Section 6324(b) states: "If the [gift] tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift." I.R.C. § 6324(b). To resolve the meaning of the Section 6324(b) limitation, the statutory construction analysis must start with the plain language of the statute.

*See Jiminez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."); *Carder v. Continental Airlines, Inc.*, 636 F.3d 172, 175 (5th Cir. 2011) ("Statutory interpretation begins with the statute's plain language."). If the statutory language is plain, the inquiry ends there because the statute must be applied according to its terms. *See Jiminez*, 555 U.S. at 118 ("It is well established that, when the statutory language is plain, we must enforce it according to its terms."); *Lari v. Holder*, 697 F.3d 273, 278 (5th Cir. 2012) ("Because the statute is facially unambiguous, we adhere to its plain meaning.").

The language of Section 6324(b) is clear on its face. It imposes only a single liability on donees for the donor's tax and interest. It says that the donee's liability is limited to the value of the donee's gift. It does not state any exceptions. It does not say that the limit applies to some donee obligations but not others. No matter how many times the language is considered, the limitation clearly applies to any and all donee liability.

Congress knows how to write exceptions to general rules. The Code is full of them. *See, e.g.*, I.R.C. §§ 61(a) ("Except as otherwise provided in this subtitle, gross income means all income from whatever source derived . . ."), 2503(b)(1) (providing an annual exclusion from the gift tax). But, Congress did not write any exception to the Section 6324(b) liability limitation.

Congress also knows how to impose an unlimited interest obligation when it wants to do so. *See* I.R.C. § 6601 (interest on underpayment of tax from last date for payment until paid). But, Congress did not do so in Section 6324(b). It did the opposite. It explicitly placed a limitation on the amount of donee liability.

Section 6324(b) means what it says. Its plain language establishes that Congress intended that donee liability would be limited to the value of the gift. Donees had already paid amounts to the Government at least equal to the value of the gifts received by them, less $1.67. (R600-01, 647-50). EPM Estate has now been forced to pay almost $75 million more than the value of the gifts to Donees. As a result, Donees have satisfied their liabilities under Section 6324(b) and are entitled to refunds of the amounts paid in excess of the value of their gifts.

The District Court erred as a matter of law in construing Section 6324(b) contrary to its plain language. The District Court's decision should therefore be reversed, and judgment should be rendered as a matter of law in favor of the Donees.

### 2. Majority Split Holds That Section 6324 Limits Transferee Liability.

Although there is a Circuit split, the majority, consisting of two other Circuit Courts of Appeals, has held that the "plain language" of Section 6324(b) or its estate tax equivalent "clearly" limits the transferee's liability, including interest, to the value of the property received by that transferee. *See Poinier v. Comm'r*, 858

F.2d 917, 920 (3d. Cir. 1988); *Baptiste v. Comm'r*, 29 F.3d 433, 437-38 (8th Cir. 1994).

> **a.     In *Poinier*, the Third Circuit Held That the "Plain Language" Limits a Donee's Liability.**

*Poinier* involved a mother who in 1970 renounced her residual interest in a trust.  *See Poinier*, 858 F.2d at 918.  The value of the renounced residual interest was $10,450,623.41.  *See id.*  The mother did not include the value of the residual interest in a gift tax return, and she died in 1972.  *See id.*

The IRS claimed that the mother's renunciation constituted a gift of the residual interest to her two children.  *See id.* at 918-19.  The IRS sent a notice of deficiency to the mother's estate and notices of transferee liability to each child.  *See id*.  The estate and children filed petitions with the U.S. Tax Court.  *See id.* at 919.

> **i.     Tax Court's Decision.**

The Tax Court held:  (i) the mother's estate owed gift tax of $4,881,386.52 plus interest from April 15, 1971 to the date of payment; (ii) each child was liable for the gift tax as a transferee to the extent of the $5,225,311.71 gift received by each; and (iii) the children were liable for interest after the date of issuance of the notice of transferee liability.  *See id.; Poinier,* 86 T.C. 478 (1986).

As to interest, the Government acknowledged that Section 6324(b) limited donee liability for interest accruing from the date on which payment of the gift tax

was due until the date the IRS issued the notice of transferee liability. *See Poinier*, 86 T.C. at 488. The Government claimed, however, that interest accruing after the date of issuance of the notice of transferee liability was an independent liability that was not limited by Section 6324(b). *See id.* The Tax Court agreed based on its interpretation of legislative history underlying the enactment of the statutory predecessor to Section 6901. *See id.* at 488-89.

### ii.     Third Circuit's Decision.

The Third Circuit reversed the Tax Court on the interest issue. *See Poinier*, 858 F.2d at 923. The Third Circuit began its analysis by discussing the language of Section 6601 and its relationship with Section 6324(b). *See id.* at 920. Section 6324(b) stated (as it does today): "[T]he donee of any gift shall be personally liable for [the gift] tax to the extent of the value of such gift." I.R.C. § 6324(b) (1970). Section 6601 stated (as it does today): "Any reference in [the Code] . . . to any tax imposed by [the Code] shall be deemed also to refer to interest imposed by this section on such tax." I.R.C. § 6601(f)(1) (1970) (currently I.R.C. § 6601(e)(1)).

The donees in that case conceded that Section 6601(f)(1) must be read into Section 6324(b) so that the donees were liable for both the tax and interest owed by the donor. *See Poinier*, 858 F.2d at 920. The donees urged, however, that their liability for both the gift tax and interest of the donor was subject to the Section

6324(b) liability limitation. *See id.* The Third Circuit agreed, observing that limiting the donee's liability, including interest, to the value of the gift was "consistent with the plain language of section 6324(b) and sensible." *Id.*

The Third Circuit next expressed the difficulty with the Government's theory:

> The Commissioner's position, accepted by the Tax Court, is that there is an entirely independent liability for interest, placed directly on the transferee, which arises at the time of service of a notice of transferee liability. This is not an easy argument to articulate, for unlike the donee liability provision in section 6324(b), *the Commissioner can point to no specific code provision imposing such an independent liability on a transferee* . . . [I]t is well established that [Section 6901] 'neither creates nor defines a substantive liability but provides merely a new procedure by which the Government may collect taxes.'

*Id.* (emphasis added). Having noted the lack of any statute imposing an independent interest liability on transferees, the Third Circuit turned to an examination of the legislative history underlying the enactment of the Section 6901 predecessor, which the Tax Court had relied on as support for imposing post-notice interest on the donees. *See id.* at 920-22; *Poinier*, 86 T.C. at 488-89.

Based on its detailed review of the Section 6901 legislative history, the Third Circuit concluded:

> Thus, despite the language in the 1926 legislative history, we know of no 1970 authority to impose an 'independent liability' for interest after the notice of deficiency. Donees are liable for one type of interest: interest calculated from the day the gift tax was due to until it is paid.

*Poinier*, 858 F.2d at 922. The Third Circuit also noted that the 1926 legislation had nothing to do with the limits of donee liability for gift tax because that legislation repealed the gift tax. *See id.* In addition, the Third Circuit noted that, even if the 1926 legislation was authority for an independent liability for post-notice interest on transferees, the legislative history "says nothing about whether this independent liability is also subject to the value-of-the-gift limitation." *Id.*

Ultimately, the Third Circuit concluded that there was no explicit statutory authority or legislative history supporting the Government's claim of an unlimited independent interest obligation on donees. *See id.* The Third Circuit stated:

> In the absence of explicit statutory authority or useful legislative history, the Commissioner is reduced to arguing that Congress could not have intended to encourage donees whose liabilities are already equal to the value of their gift to delay the payment of gift taxes as long as possible, and that we should read the 1954 Code creatively.

*Id.* The Third Circuit noted that any incentive to delay payment would arise only in the comparatively rare instance where the amount of the gift is exhausted by the tax and interest owed by the donor. *See id.* at 922-23. The Third Circuit observed that the reason the tax and interest exceeded the value of the gifts to the children was probably because the Government delayed for ten years asserting the gift tax against them. *See id.* Thus, the Third Circuit concluded: "The equities favoring a creative rewriting of the 1954 Tax Code are not in this situation impressive." *Id.* at 923.

### iii.    Applicability of Third Circuit's Rationale.

The Third Circuit's rationale applies equally here.  Section 6324(b) reads the same today as it did in 1970.  Thus, the Third Circuit's conclusion that the plain language of Section 6324(b) limits the donee's liability, including interest, to the value of the gift remains true today.

Moreover, the Government's claim that Donees are subject to an unlimited independent interest obligation must fail for the same reasons.  The Third Circuit's conclusions that there is no Federal statute imposing, and no legislative history supporting the imposition of, an independent interest obligation are equally true today.

Lastly, the Third Circuit's conclusion that there are no equities favoring a creative rewriting of the Code is equally true in this case.  This case involves gifts of $83,038,172 from which the Government could collect the JHM Deficiency of $47,509,047.  To the extent that passage of time has resulted in accrual of interest that exceeds the value of the gifts, this is substantially the result of a highly complex situation involving third party litigation against JHM Estate brought by Anna Nicole Smith (a/k/a Vickie Lynn Smith).  (R597).  Donees' situation would rarely, if ever, be repeated.

Equities also do not support imposing unlimited interest on Donees because this is not an income tax case in which a transfer is made as part of the transferor's

attempt to avoid payment of tax.  Instead, the transfers themselves gave rise to the

gift tax at issue.  Furthermore, Donees passively and indirectly received the 1995

gifts by virtue of their status as shareholders.  In these circumstances, it would be

inequitable to require Donees to pay out of their other assets a liability that was

thrust on them through no fault of their own.  As in *Poinier*, the equities do not

support a creative rewriting of the law to imply an unlimited interest obligation on

Donees in contravention of the explicit limitation of Section 6324(b).

> **b.    In *Baptiste I*, the Eighth Circuit Held That Section 6324 "Clearly" Contemplated That a Transferee's Liability is Limited.**

*Baptiste v. Commissioner*, 29 F.3d 433 (8th Cir. 1994) [hereinafter *Baptiste*

*I*], dealt with a son, Gabriel, who received $50,000 as a beneficiary of his father's

life insurance policy.  *See Baptiste I*, 29 F.3d at 434.  The government claimed an

estate tax deficiency and mailed a notice of deficiency to the father's estate.  *See*

*id.*  The parties ultimately entered into a stipulated decision that the father's estate

owed estate tax of $62,378.48, but the estate never paid.  *See id.*  The government

mailed a notice of transferee liability to Gabriel asserting that he was liable for the

estate tax in the amount of the $50,000 received by him, plus interest.  *See id.*

Section 6324(a)(2) stated (as it does today) in relevant part:

> Liability of Transferees and Others. − If the estate tax . . . is not
> paid when due, *then the . . . transferee . . . who receives . . .*
> *property included in the gross estate . . . to the extent of the*

> *value,* at the time of the decedent's death, of such property*, shall be personally liable for such tax.*

I.R.C. § 6324(a)(2) (1981) (emphasis added).

Gabriel filed a pro se petition with the Tax Court. *See Baptiste I*, 29 F.3d at 434. The Tax Court held that Gabriel was liable for interest in excess of his $50,000 personal liability for estate tax, notwithstanding the Section 6324(a)(2) liability limitation. *See Baptiste,* 100 T.C. at 257.

Gabriel appealed to the Eighth Circuit, arguing that his transferee liability under Section 6324(a)(2) was limited to $50,000. *See Baptiste I,* 29 F.3d at 435. The Eighth Circuit agreed and reversed the Tax Court.

The Eighth Circuit started its analysis of the interest issue by examining the language of Section 6324(a)(2), as supplemented by Section 6601(e), and concluded: "[T]hus, § 6324(a)(2) clearly contemplates that the limitations imposed upon a transferee's tax liability also encompass the transferee's liability for interest." *Id.* at 437.

The Eighth Circuit then rejected the Government's argument that Section 6324(a)(2) does not limit interest accruing on a transferee's liability for estate tax. *See id.* Finding persuasive the Third Circuit's reasoning in *Poinier*, the Eighth Circuit based its decision on the plain language of Section 6324(a)(2), as supplemented by Section 6601. *See id.* at 437-38. The Eighth Circuit reasoned:

> We believe § 6324(a)(2) does not provide for two estate tax liabilities, one owed by the estate and another owed by the transferee, and such a reading by the Commissioner reflects an artificial construction of the [Code]. The Commissioner's construction of § 6324(a)(2) ignores the fact that § 6324(a)(2) juxtaposes a transferee's personal liability with the limitation on transferee liability.

*Id.* at 438. Accordingly, the Eighth Circuit's decision interpreting Section 6324(a)(2) directly supports the conclusion that Section 6324(b) limits a donee's liability, including interest, to the value of the gift.

### C.    The District Court Erroneously Applied an Irrelevant Statute and Relied on Invalid Statutory Interpretations.

The District Court followed the minority Circuit split. *See MacIntyre*, 2012 WL 2064977, at *5 ("Although both the Third and Eleventh Circuits' reasoning is persuasive, the court agrees with and adopts the holding of the Eleventh Circuit . . . ."); (R1694).

### 1.    Minority's Erroneous Interpretations.

The Eleventh Circuit and the Tax Court adopted erroneous interpretations of Section 6324(a)(2) and Section 6901 to impose unlimited interest on transferees in *Baptiste v. Commissioner*, 29 F.3d 1533 (11th Cir. 1994) [hereinafter *Baptiste II*]. *Baptiste II* involved the transferee liability of Richard Baptiste, a brother of the taxpayer in *Baptiste I*, and otherwise the same facts as *Baptiste I*. Like Gabriel, Richard received $50,000 as beneficiary of his father's life insurance policy. *See id.* at 1535. The Government's Section 6901 notice of transferee liability claimed

that Richard owed estate tax of $50,000 plus interest. *See id.* at 1536. The Tax Court held that he was liable for the tax and interest from the due date of his father's estate tax return, in a split decision with multiple concurring opinions and a dissenting opinion. *See id.* at 1536-37; *Baptiste*, 100 T.C. 252.

In contrast to Gabriel who prevailed in the Eighth Circuit, Richard appealed to the Eleventh Circuit, which held in favor of the Government. *See Baptiste II*, 29 F.3d at 1541-43. The Eleventh Circuit "followed closely" Tax Court Judge Halpern's concurring opinion. *See Baptiste II*, 29 F.3d at 1542 n. 7. Notably, only one other Tax Court judge agreed with Judge Halpern's opinion. *See Baptiste*, 100 T.C. at 260-67.

The Eleventh Circuit initially concluded that Section 6324(a)(2) limits a transferee's liability for the estate tax, plus interest thereon, to the value of the property received by that transferee. *See Baptiste II*, 29 F.3d at 1541. Nevertheless, it further determined that Section 6324(a)(2) also imposes on a transferee an independent "personal liability of the general sort imposed by federal law," rather than a "tax." *Id.* It reasoned that the personal liability was not a "tax" because otherwise it could be collected under existing Code provisions, which would make Section 6901 superfluous. *See id.*

Since it was not a "tax," the Eleventh Circuit acknowledged that "[o]ther provisions of the tax code [such as Section 6601] do not automatically apply to

such obligations." *Id.* Nevertheless, it then decided that transferee liability should be treated as a "tax" and subjected to interest under Section 6601, which imposes interest only on "tax." *See id.* at 1542. It justified this by noting that Section 6901 provides that liabilities assessed and collected through its procedures shall be "'subject to the same provisions and limitations as in the case of taxes with respect to which the liabilities were incurred.'" *Id.* (quoting I.R.C. § 6901(a)). It then concluded: "Thus, section 6901 authorizes the government to impose interest" on transferee liability. *Baptiste II*, 29 F.2d at 1542.

Having characterized transferee liability as a "tax" for purposes of Section 6601 interest, the Eleventh Circuit then reverted back to its original position that the transferee liability is an independent obligation and not a "tax." *See id.* As a result of this circular reasoning, it then held that interest accruing on that independent obligation was not subject to the Section 6324(a)(2) limitation. *See id.*

### 2. The District Court Erroneously Relied on *Baptiste II* and Section 6901, Which is Irrelevant to This Case.

#### a. Section 6901 is Irrelevant.

The Government chose a District Court action against Donees, rather than following the Section 6901 procedures. *See MacIntyre*, 2012 WL 2064977, at *6. The Government did not issue Section 6901 notices of transferee liability to Donees. *See id*; (R607). Therefore, Donees were deprived of the procedural

options afforded a taxpayer who receives a notice of transferee liability under Section 6901, including the opportunity to choose which court – the Tax Court, District Court, or Court of Federal Claims – would determine their liabilities.

The Government cannot assert *Baptiste II* and Section 6901 as the basis for imposing unlimited interest on Donees because the Government elected not to follow Section 6901 procedures. The inapplicability of Section 6901 in this case is established by the language of Section 6901, the underlying Treasury Regulations, and case law.

Section 6901 applies only to transferee liability that is "assessed, paid, and collected in the same manner" as the tax deficiency giving rise to the transferee liability. I.R.C. § 6901(a). Donees' transferee liabilities have not been assessed, paid, and collected in the same manner as a gift tax deficiency because the Government did not issue notices of transferee liability to Donees and deprived Donees of the opportunity to petition the Tax Court.

This Court has also effectively held that the Government may not divide a tax statute in the middle and choose which parts apply. *Cf. Transco Exploration Co. v. Comm'r*, 949 F.2d 837, 839-40 (5th Cir. 1992) (refused Commissioner's urging to ignore part of a statute and regulations when there was a double tax benefit). Thus, one part of the statutory language cannot be applied without the other. Here, the Government has not applied the Section 6901 procedures, thus

rendering inapplicable *Baptiste II* and the Section 6901 language that transferee liability shall be "assessed, paid, and collected" in the same manner as the related tax deficiency.   *See MacIntyre*, 2012 WL 2064977, at *6.   Nevertheless, the Government relied on the Section 6901 language that transferee liability is "subject to the same provisions" as the related tax deficiency for imposing interest under Section 6601 and *Baptiste II*.   (R611-12).   The Government cannot divide the language of Section 6901 and seek to apply only the portion of the language that serves its purposes.

In addition, the Regulations provide that Code provisions enabling a transferee to file a petition with the Tax Court are made applicable because of Section 6901.  *See* Treas. Reg. § 301.6901-1(a)(3)(iv).  If the Government does not follow the Section 6901 procedures, the transferee does not have the right to petition the Tax Court to decide their transferee liability.  *See* I.R.C. §§ 6901(a), 6213.  Consistently, if the Section 6901 procedures do not apply, then Section 6901 cannot trigger the application of Section 6601, even under the *Baptiste II* interpretation.

The Government's argument in *United States v. Russell*, 327 F. Supp. 632 (D. Kan. 1971), also supports the "all or nothing" approach of applying Section 6901.  There, the transferee asserted that the Government was required to issue a Section 6901 notice of transferee liability before filing suit in District Court.  *See*

*Russell*, 327 F. Supp. at 633. The Government countered that "the procedure set out in 6901 is at most an alternative remedy" and that it could recover the transferee liability without prior assessment. *Id.* Thus, the Government argued that none of the safeguards relating to that procedure would apply if it did not proceed under Section 6901. *See id.*

On Appeal, the Tenth Circuit concluded that a prior Section 6901 assessment of transferee liability was not required for a District Court case. *See United States v. Russell*, 461 F.2d 605, 607-08 (10th Cir. 1972) *rev'g Russell*, 327 F. Supp. 632. Thus, since the Government did not follow the Section 6901 procedures, its procedural safeguards did not apply. *See Russell*, 461 F.2d at 607-08. Therefore, the Tenth Circuit's conclusion further establishes that none of Section 6901 applies to a District Court proceeding.

### b.     The Government Is Now Barred From Applying Section 6901.

The Government chose the remedies available to it in District Court. *See MacIntyre*, 2012 WL 2064977, at *6. If the Government should attempt to issue notices of transferee liability under Section 6901, the doctrine of *res judicata* would bar the attempt by virtue of this case. *See Davenport*, 484 F.3d at 326; and discussion *infra* Part VII.E.

Accordingly, the District Court erred as a matter of law in relying on *Baptiste II*, and Section 6901 cannot apply since the Government did not issue

notices of transferee liability. Thus, Section 6901 cannot be used as the justification for imposing unlimited interest on Donees. This is sufficient in and of itself to reverse the District Court and render judgment in favor of Donees.

### 3. The Government's Statutory Interpretations Are Invalid.

Even if Section 6901 were applicable, the District Court's decision is still incorrect because it relied on invalid interpretations of Sections 6324(b) and 6901.

### a. Section 6324(b) Imposes One Obligation.

Section 6324(b) imposes one obligation: "[T]he donee of any gift shall be personally liable for [the gift] tax . . . ." I.R.C. § 6324(b). The Third Circuit concluded that there was no authority to impose a second independent obligation on donees. *Poinier*, 858 F.2d at 920-22. The Eighth Circuit rejected the argument that Section 6324(a)(2) imposes a second obligation on transferees as "an artificial construction of the [Code]." *Baptiste I*, 29 F.3d at 438. The Third and Eighth Circuits' conclusions apply equally here. The Government's position that Section 6324(b) imposes a second obligation is invalid because it is contrary to the statutory plain language and directly contradicts Congress's intent to limit donee liability to the gift value.

### b. Section 6901 is Merely a Procedural Statute.

Even if relevant here, Section 6901 does not impose interest on Donees. The U.S. Supreme Court held long ago that Section 6901 is merely a procedural statute that does not create or define any substantive liability. *See Stern*, 357 U.S. at 42-

44.  Accordingly, the Supreme Court concluded that it was required to look to other sources besides Section 6901 to determine the existence and scope of substantive liability.  *See id.* at 44.

Therefore, Section 6901 cannot serve as the basis for imposing unlimited interest on Donees.  Instead, Donees' liabilities for interest must arise from some other Federal statute.  *See Poinier*, 858 F.2d at 920.  The only statute imposing pre-judgment interest on donee liability is Section 6324(b), which limits donee liability to the value of the gift.  As a result, Donees' liabilities for interest are limited by Section 6324(b).

### c.     The Government's Double Interest Interpretation.

The District Court relied on the Government's contorted interpretation of Section 6324 to hold that a donee is subject to two separate obligations – one liability for the gift tax owed by the donor, plus interest; and another independent, personal liability which bears unlimited interest because of Section 6901.  *See MacIntyre*, 2012 WL 2064977, at *6; (R1694-95).  According to that interpretation, interest accrues under Section 6601 simultaneously on both of those liabilities, beginning on the date the gift tax is due.  *See MacIntyre*, 2012 WL 2064977, at *6; (R611-12).

The Government is in effect arguing that there is double accrual of interest on the unpaid gift tax, until the donor's gift tax and interest equals the value of the

donee's gift, and there is no limit whatsoever on a donee's interest liability.  This

double accrual of interest is illustrated through the following simplified example.

Donor makes total gifts during a year of $4 million, consisting of $1 million

gifts to each of four donees.  The gifts are taxable at an assumed rate of 50%, for

total gift tax of $2 million, which donor does not pay.

After five years of interest accrual at an assumed rate of 5%, the donor will

owe $2,552,563, consisting of gift tax of $2 million plus interest of $552,563.[8]

This is the total amount to which the Government is entitled.  *See* I.R.C. § 6601.

By collecting $2,552,563, the Government would collect the gift tax and would be

made whole for the lost use of the money.

Nevertheless, the Government isn't satisfied with being made whole.  It

wants this Court to provide it with the legal authority to effectively charge interest

twice on the gift tax.

Section 6324(b) imposes liability on donees for the $2,552,563 gift tax and

interest owed by the donor.  Under the second independent, personal liability

interpretation, the Government argues that it is also entitled to collect unlimited

interest accruing on the value of the donees' gifts from the due date of the donor's

gift tax return.  Thus, under the assumed 5% interest rate over the five year period,

the Government argues it is legally entitled to collect $1,000,000 of transferee

---

[8] $2,552,563 = $2,000,000 x (1 + 5%)^5 years.

liability and $276,282 of interest from each donee,[9] for a potential total of $5,105,126 from the four donees.  By asserting unlimited interest against donees, the Government claims it is entitled to total interest of $1,105,126 from the four donees, at the same time as it is entitled to collect only $552,563 of interest owed by the donor.

The Government's interpretation, as illustrated by this example, makes no sense in light of the plain language of Section 6324(b).  The language clearly shows an intent to limit a donee's liability for the donor's gift tax and interest to the value of the donee's gift.  The Government admits this.  But, at the same time, it argues that Congress intended a donee to have unlimited, independent personal liability for interest on its transferee liability, notwithstanding that transferee liability is no more than a liability for the donor's tax and interest, which is expressly limited by Section 6324(b).

The Government recognizes that the double or greater interest result is too good to be true.  This recognition is implicit in the Government's representation in *MacIntyre* that it would only enforce collection of the lesser of two amounts:  (i) the unpaid gift tax plus interest; or (ii) the value of the gifts received by the donees plus interest.  Its interpretation, however, will clearly result in it being entitled to collect both amounts if correct.  (R617-18).  Because its interpretation is contrary

---

[9] $276,282 = ($1,000,000 x (1 + 5%)^5 years) - $1,000,000.

to Congressional intent to limit a donee's liability, its interpretation cannot be correct.

### d.     Section 6901 and Its Legislative History Show No Intent to Impose Unlimited Interest.

#### i.     Section 6901.

Section 6901 cannot serve as the basis for imposing unlimited interest on donees because Section 6901 does not explicitly impose any interest obligation. Since the inception of the Federal income tax, the U.S. Supreme Court has recognized the fundamental principal that a burden imposed on the citizenry must be explicitly provided for in the statute and cannot be implied.   *See Gould v. Gould*, 245 U.S. 151, 153 (1917) ("In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out.   In case of doubt they are construed most strongly against the government, and in favor of the citizen.")   This fundamental principal remains true today.   *See America Online, Inc. v. United States*, 64 Fed. Cl. 571, 576 (Fed. Cl. 2005).

Section 6901 does not contain any mention of the word "interest."   Since Supreme Court precedent prohibits implying an interest obligation where it is not explicitly imposed, Section 6901 cannot be used as a justification for imposing unlimited interest on a donee.

### ii.    Statutory Predecessors.

The language in the Section 6901 statutory predecessors similarly establishes that Congress did not intend to impose unlimited interest on donees. In 1926, the original version of Section 6901 was enacted for transferee liability for income tax. *See* Revenue Act of 1926 ("1926 Act"), Pub. L. No. 69-20, § 280, 44 Stat. 61. Section 280 stated in relevant part:

> Sec. 280. (a) The amounts of the following liabilities shall . . . be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title . . . :
>
> (1) The liability, at law or in equity, of a transferee of property of a taxpayer, *in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title* . . . .

*Id.* (emphasis added).

Thus, Section 280 originally referred to interest only as part of the transferor's tax liability. It did not suggest that separate interest of any kind would accrue on the transferee's liability.

Additionally, when Congress first enacted collection procedures for transferee liability for estate and gift tax in 1926[10] and

---

[10] In 1926, Congress enacted the Section 6901 predecessor for estate tax transferee liability, which was virtually identical to Section 280(a) of the 1926 Act, except it referred to a transferee of a "decedent or donor." 1926 Act, § 316(a)(1), 44 Stat. 80.

1932,[11] respectively, it also limited transferee liability.  *See* 1926 Act, § 315(b), 44 Stat. 80 ("[T]he transferee, trustee, or beneficiary shall be personally liable for such [estate] tax, and such property, to the extent of the decedent's interest therein at the time of such transfer . . . ."); 1932 Act, § 510, 47 Stat. 249 ("[T]he donee of any gift shall be personally liable for such [gift] tax to the extent of the value of such gift.").  Nothing in these respective Section 6901 predecessors suggests that Congress intended to impose an unstated obligation that would be exempted from the contemporaneously enacted estate and gift tax transferee liability limitations. There is simply no basis in Section 6901 or its predecessors for circumventing the Section 6324(b) limitation.

### iii.    Legislative History.

Because Section 6901 is clear that it does not impose interest on donee liability, there is no need to consult legislative history.  *See Freytag v. Comm'r*, 501 U.S. 868, 873 (1991) ("When . . . the terms of a statute [are] unambiguous, judicial inquiry should be complete except in rare and exceptional circumstances."); *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 808 n.3 (1989) ("Legislative history is irrelevant to the interpretation of an unambiguous statute.").  That the minority Circuit split reached a different result does not require

---

[11]  In 1932, Congress enacted the Section 6901 predecessor for gift tax donee liability, which was virtually identical to Sections 280(a) and 316(a) of the 1926 Act, except it referred to a transferee of a "donor."  *See* Revenue Act of 1932 (the "1932 Act"), Pub. L. No. 72-154, § 526(a), 47 Stat. 256-57.

a finding that Section 6901 is ambiguous.  *See Moskal v. United States*, 498 U.S. 103, 108 (1990).

Nevertheless, the legislative history supports the U.S. Supreme Court's interpretation that Section 6901 is merely a procedural statute that does not create any substantive liability.  *See, e.g., Stern*, 357 U.S. at 42-44.  The Senate report stated:

> It is the purpose of the committee's amendment to provide for the enforcement of [transferee] liability to the Government by the procedure provided in the Act for the enforcement of tax deficiencies. It is not proposed, however, to define or change existing liability.

S. Rep. No. 69-52 (1926), *reprinted in* 1939-1 C.B. (Pt. 2) 332, 354; (R1116).

Similarly, the House Report stated:

> Without in any way changing the extent of such liability of the transferee under existing law, the amendment enforces such liability . . . in the same manner as liability for a tax deficiency is enforced . . . .

H.R. Rep. No. 69-356 (1926), *reprinted in* 1939-1 C.B. (Pt. 2) 361, 371; (R1067).

Accordingly, the legislative history establishes that Section 6901 is procedural and does not impose unlimited interest on the Donees.

The 1926 House Report also discussed the manner in which interest would accrue on a tax deficiency in connection with transferee liability.  The House Report stated:

> Under the amendment the liability of the taxpayer for the tax, including all interest and penalties, is fixed as of the time of the transfer of the assets.  No further interest subsequently accrues upon

> such liability as assumed by the transferee, except the interest under section 276(b) and (c) for failure to pay upon notice and demand after the outlined procedure has been completed and interest at 6 per cent a year for reimbursing the Government at the usual rate for loss of the use of the money due it.

*Id.* at 372; (R1067). This language addresses the taxpayer's liability for the tax deficiency, including interest and penalties, and does not mention any independent personal obligation for interest on the transferee. The language merely indicates that interest would accrue on the taxpayer's tax deficiency, as assumed by the transferee, in the same way interest accrued at the time on any other tax deficiency.

In 1926, interest accruing on a tax deficiency was subject to multiple computations. First, interest accrued at six percent per year from the due date until the tax was assessed. *See* 1926 Act, § 274(j), 44 Stat. 56. Second, if the tax and interest was not paid within ten days from the date the IRS sent a notice and demand for payment, interest accrued at one percent per month from the notice and demand date until payment.[12] *See* 1926 Act, § 276(b), 44 Stat. 57-58.

In 1954, the provisions imposing interest on tax deficiencies were consolidated into a single provision so that thereafter tax deficiency interest was subject to only a single calculation. *See* I.R.C. § 6601(a) (interest at the "underpayment rate" from the last date for payment until paid); *Poinier*, 858 F.2d

---

[12] 1926 Act, Section 276(c) imposed reduced interest on estates held by fiduciaries, in lieu of Section 276(b). *See* 1926 Act, § 276(c), 44 Stat. 58.

at 921-22.  Accordingly, the separate interest calculations mentioned in the above-quoted House report have been obsolete since 1954.

Nevertheless, the quoted language in the House Report makes clear that there was intended to be a single interest obligation applying to tax deficiencies, as owed by the transferor or as assumed by the transferee.  In addition, the legislative history contains no indication that Congress intended to impose an unstated interest obligation on transferees that would be exempt from the liability limitations Congress set forth in the Code.

### e.    Donee Liability Cannot Be Both a Tax and Non-Tax.

The District Court's conclusion that donee liability is subject to interest under Section 6601, but not the Section 6324(b) limitation, was based on the Court's erroneous and inconsistent treatment of donee liability as a "tax" for some purposes and not a tax for others.  *See MacIntyre*, 2012 WL 2064977, at *6; (R1694-96).  The District Court concluded that donee liability is not subject to the Section 6324(b) limitation because such donee liability is an independent personal obligation that is not a tax.  *See MacIntyre*, 2012 WL 2064977, at *6; (R1695-96). The District Court next concluded that the donee's independent liability is subject to Section 6601, even though Section 6601 imposes interest only on "tax."  *See MacIntyre*, 2012 WL 2064977, at *6; (R1695-96); I.R.C. § 6601(a).

This inconsistent characterization of a donee's liability is erroneous because a single item must be treated consistently under Federal tax law. *See, e.g., Duffie v. United States*, 600 F.3d 362, 365 (5th Cir. 2010) (explaining that the Tax Equity and Fiscal Responsibility Act of 1982 was enacted to ensure consistent treatment of partnership items among partners); *Arberg v. Comm'r*, 94 T.C.M. (CCH) 215, 222 (stating "that a taxpayer has a duty to be consistent in the tax treatment of items . . . ."). Either the transferee liability is an independent personal obligation and not a tax for all purposes, in which case it is not subject to interest under Section 6601 or any other statute, or the transferee liability is a tax and is subject to the Section 6324(b) limitation. Either way, the District Court was incorrect.

### f.     Donee Liability Should Not Depend on the Chosen Procedure.

Consistency also reinforces the conclusion that Section 6901 does not support the imposition of unlimited interest. As previously discussed, there is no other Federal statute that imposes unlimited interest on transferee liability for gift tax in a District Court proceeding when the Section 6901 procedures have not been invoked by the Government. *See Poinier* 858 F.2d at 920-22. Thus, if unlimited interest were allowed to accrue in instances in which the Government utilized the Section 6901 procedures, this would lead to inequality in the transferee's potential liability based purely on the procedural route chosen by the Government. This cannot be the correct result. The Government is not entitled to unlimited interest

on a transferee's liability outside of Section 6901, and it should not be entitled to unlimited interest under Section 6901.

### D.      Policy Considerations Cannot Override Section 6324(b).

By enacting Section 6324(b), Congress has resolved all policy considerations by adopting the value-of-the-gift limit. Since Congress has spoken, policy considerations cannot justify deviating from the statute as written. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 188 (1994) ("Policy considerations cannot override [the court's] interpretation of the text and structure of the [statute], except to the extent that they may help to show that adherence to the text and structure would lead to a result 'so bizarre' that Congress could not have intended it."); *Texas v. United States*, 497 F.3d 491, 506 (5th Cir. 2007).

### 1.      The Limitation Is Reasonable.

As concluded by the Third Circuit, adherence to the Section 6324(b) limitation of the value of the gift does not lead to a bizarre or unreasonable result. *See Poinier*, 858 F.2d at 922. As stated therein:

> In the absence of explicit statutory authority or useful legislative history, the Commissioner is reduced to arguing that Congress could not have intended to encourage donees whose liabilities are already equal to the value of their gift to delay the payment of gift taxes as long as possible, and that we should read the 1954 Code creatively. *It was not, however, patently unreasonable for Congress to limit the total liability of donees to the value of the gift received.*

*Id.* (emphasis added).

Applying Section 6324(b) consistently with the value-of-the-gift limit does not lead to a bizarre result because it prevents donees, including charitable donees, from being forced to use their other assets to satisfy obligations arising from unsolicited gifts to them. In addition, the Government is adequately protected under the law as written. Since 1995, when the gifts at issue occurred, the maximum gift tax rate has not exceeded 55% and has been as low as 35%. *Compare* I.R.C. §§ 2502, 2001 (1995) (55%), *and* I.R.C. §§ 2502, 2001 (2012) (35%). The law also permits the Government to collect unpaid gift tax from the transferee of a non-taxable gift. *See Poinier*, 858 F.2d at 920. Thus, the value of the gifts should approximately double the gift tax deficiency or more. Therefore, the Government will generally have ample reserve value from which to collect the gift tax and interest accruing thereon. Furthermore, there is no limit on the amount of interest that can be collected from the donor. *See* I.R.C. § 6601(a). Thus, if the Government diligently pursues its claims, the Section 6324(b) limitation will not prevent the Government from collecting all of the tax and accrued interest.

### 2. Minority Split's Policy Justifications.

The Eleventh Circuit imposed unlimited interest on transferees based on the policy justification that the Government was denied the use of its money. *See Baptiste II*, 29 F.3d at 1542; *Baptiste*, 100 T.C. at 257. Congress, however, can

choose in its discretion to limit or forego interest on obligations owed to the Government. It has done so many times. *See, e.g.*, I.R.C. §§ 6601(i) (no interest on Federal unemployment tax for a period within a taxable year), 6601(j) (interest rate on certain estate tax limited to 2%), 6205(a)(1) (no interest accruing where employer underreports and underpays employment tax under certain conditions), 7508(a)(1)(B) (no interest on certain U.S. military taxpayers).

Congress exercised its discretion to limit interest on donee liability to the value of the gift under Section 6324(b). The notion that Donees have had the use of money due to the Government cannot justify overriding the language of Section 6324(b). *See Marsh & McLennan Cos. v. United States*, 302 F.3d 1369, 1381 (Fed. Cir. 2002) ("The use of money principle does not trump the language of the relevant statute . . . .").

The Eleventh Circuit also stated that limiting the transferee's interest obligation "would create a system which encourages transferees to retain assets of the estate, at the expense of the government, for as long as possible with no adverse consequences." *Baptiste II*, 29 F.3d at 1542 n. 9. This cynical view is incorrect and not a proper basis for changing the law. The Donees are motivated by complying with their legal obligations, not exploiting the system. This is established by how they have already made payment in full satisfaction of their liability under the Federal gift tax law and more.

If Congress wishes to impose unlimited interest liability on transferees, it can explicitly say so in the statute.  Congress does not need the courts to use a distorted interpretation of a procedural statute to imply an unlimited liability on donees in contravention of Section 6324(b).  *See Comm'r v. Lundy*, 516 U.S. 235, 252 (1996) (quoting *Badaracco v. Comm'r*, 464 U.S. 386, 398 (1984) ("We are bound by the language of the statute as it is written, and even if the rule [the taxpayer] advocates might 'accor[d] with good policy,' we are not at liberty 'to rewrite [the] statute . . . ."));  *Thompson v. Goetzmann*, 337 F.3d 489, 493 (5th Cir. 2003) ("[T]he courts are not in the business of amending legislation.  If the plain language of the [statute] produces the legislatively unintended result claimed by the government, the government's complaint should be addressed to Congress, not to the courts . . . .").

Congress decided in its discretion to limit donee liability to the value of the donee's gift.  If the Government does not like the result under Section 6324(b), its proper recourse is with Congress, not the courts.

## E.    *Res Judicata* Bars the Government's Contingent Claim Against EPM Estate.

In the District Court, the Government made an alternative claim that EPM received additional gifts of $35,939,316 from the GRIT as remainderman if it was determined that EPS did not receive gifts of that amount as income beneficiary of the GRIT.  (R376-78).  EPM Estate filed a motion for partial summary judgment

contending that *res judicata* barred the Government's alternative claim that EPM received gifts in excess of the amount decided and stipulated in the Tax Court proceedings. (Sealed Doc. 92). The District Court did not address the *res judicata* issue or the Government's alternative claim and denied the motion as moot since it held EPS received gifts of $35,939,316. *See MacIntyre*, 2012 WL 2064977, at *7; (R1696-97).

If this Court reverses the District Court's holding as to EPS in a manner that revives the Government's alternative claim, then EPM Estate requests that this Court rule that the Government is bound by the Decision and Stipulation. Because the application of *res judicata* is a question of law, EPM Estate respectively requests that this Court rule on this issue for purposes of judicial economy and the possible avoidance of a second appeal. *See Davenport*, 484 F.3d at 326; *Estate of Smith v. Commissioner*, 198 F.3d 515, 529-30 (5th Cir. 1999); *see also United States v. Marine Shale Processors*, 81 F.3d 1361, 1369 n. 8 (5th Cir. 1996).

EPM Estate also anticipates that the Government may raise *res judicata* as to EPS and that this Court will need to address the issue in that context. The potential *res judicata* issues involving EPS involve different facts from EPM. Therefore, EPM Estate respectfully requests the Court to consider *res judicata* separately as to EPM Estate as it believes that the EPM facts present a classic transferee *res judicata* situation. As the Tax Court stated long ago, the "transferee should be

protected from the Commissioner changing his mind and seeking reconsideration of an agreement previously made with the transferor . . . ." *Krueger v. Comm'r*, 48 T.C. 824, 830 (1967). This is especially true for EPM Estate as the Government has sued EPM Estate and collected $43,786,361 from EPM Estate on the basis of the agreed value of the gifts to EPM in the Decision and Stipulation.

### 1.     The Government is Bound.

The Decision and Stipulation are *res judicata* as to the gifts to EPM. In *Davenport*, 484 F.3d at 326, this Court stated:

> [f]or res judicata to apply, the following four-part test must be satisfied: (1) the parties must be either identical or in privity; (2) the judgment in the prior action [must have been] rendered by a court of competent jurisdiction; (3) the prior action must have been concluded to a final judgment on the merits; and (4) the same claim or cause of action [must have been] involved in both actions. [Internal quotations omitted].

Each of these requirements is met, as discussed below. The Government's primary position has also been that the requirements are met. (R1590).

(1)     In almost identical situations, a transferor and a transferee have been held to be in privity. *See Davenport*, 484 F.3d at 327; *Baptiste II*, 29 F.3d at 1539. Accordingly, JHM Estate, as transferor and party to the 2008 Decision, and EPM, as an individual transferee and whose estate is party to the present matter, are in privity. *See Davenport*, 484 F.3d at 327; *Baptiste II*, 29 F.3d at 1539.

(2)     The Tax Court is a court of competent jurisdiction.  *See Davenport*, 484 F.3d at 327.

(3)     The Decision, entered based upon the parties' Stipulation, constitutes a final judgment on the merits.  *See Davenport*, 484 F.3d at 327; *Baptiste II*, 29 F.3d at 1539-40.

(4)     Whether two suits involve the same claim or cause of action is determined by focusing on whether the two cases are based on "the same nucleus of operative facts."  *Davenport*, 484 F.3d at 326 (quoting *In re Southmark*, 163 F.3d 925, 934 (5th Cir. 1999).  The issue in JHM Estate's Tax Court case was the gift tax owed by the estate and involved numerous factual issues resolved by the Stipulation, including the amount of the total gifts to EPM.  (R647-50).  This total also resolved the amount to be attributed to him as remainderman from the GRIT. (Id.; Sealed Doc. 57, Para. 18).  The issue here is the extent of EPM's liability for JHM Estate's gift tax liability, which depends on the amount of the gifts to EPM. Accordingly, the factual predicate of the claims asserted in JHM Estate's Tax Court case and in this case are identical.  Both claims are based upon the same nucleus of operative facts: (i) indirect gifts by JHM to EPM; (ii) receipt of indirect gifts by EPM as shareholder of MPI; (iii) receipt of gifts by EPM as remainderman of the GRIT; and (iv) the combined values of those gifts.  (R647-50).  *See Davenport*. 484 F.3d at 327.

## 2.   *Res Judicata* **Authorities.**

This Court has held on nearly identical facts that *res judicata* precludes a donee from challenging the value of a gift determined in the donor's Tax Court proceeding.  *See id.* at 326-28.  In *Davenport*, the IRS determined that the donor had transferred stock for less than its value, resulting in a gift to the donees.  *See United States v. Davenport*, 327 F. Supp. 2d 725, 728 (S.D. Tex. 2004).  In the Tax Court case challenging the determination, the donor's estate stipulated that the value of the stock was $2,000 per share.  *See Estate of Davenport v. Comm'r*, 74 T.C.M. (CCH) 405, 410 n.7.  The estate did not pay the resulting gift tax, and the Government filed suit in District Court seeking to reduce to judgment the donee's liability under Section 6324(b).  *See Davenport*, 484 F.3d at 324.

On appeal, this Court addressed whether the donor's estate's stipulation to the value of the gift was *res judicata* as to the donee.  *See id.* at 327.  This Court held that *res judicata* barred the donee from contesting the amount of his liability because the donor's case and the donee's case were based upon the same operative facts – the gift transaction and the value of the stock.  *See id.*  This Court also found that its decision was consistent with the Eighth and Eleventh Circuits' decisions in *Baptiste I* and *II*, respectively, which also held that *res judicata* precluded a transferee from relitigating determinations made by the Tax Court in

the transferor's Tax Court case. *See id.*; *Baptiste I*, 29 F.3d at 435; *Baptsite II*, 29 F.3d at 1539.

Accordingly, *res judicata* bars the Government from relitigating the amounts of EPM's gifts. Therefore, the Government's contingent claim should be denied as a matter of law if it becomes relevant.

## VIII. CONCLUSION

Congress has spoken clearly and concisely in the form of a relatively simple statute. A donee is liable for a donor's gift tax and interest, limited by the value of the gift. Congress could not have spoken more clearly in enacting the plain language of Section 6324(b).

With all due respect, the District Court erred as a matter of law multiple times in failing to hold that the respective liabilities of Donees were not limited by the values of their gifts. Initially, the District Court erred in relying on Section 6901 and its related, erroneous authorities as the Government waived the application of Section 6901 by suing Donees in District Court. This error is sufficient by itself for this Court to reverse and render judgment in favor of Donees.

Further, the District Court's interpretations of the relevant statutes are wrong. The plain language of Section 6324(b) imposes only a single liability and limits all of that liability to the value of the gift. Moreover, Section 6901 is merely

a procedural statute, and it does not impose interest on any liability, let alone a donee's liability. The contrary interpretations relied on by the District Court are wrong and contradict the plain language of those Code provisions, the Supreme Court's interpretation of Section 6901, and the majority Circuit split authorities.

There are also no policy justifications that justify the District Court's extreme rewriting of Section 6324(b) and Section 6901. To the contrary, Congress recognized that donees should not be subjected to unlimited liability and enacted an appropriate limitation.

Accordingly, the District Court's judgment in favor of the Government should be reversed, and judgment should be rendered in favor of Donees as a matter of law with a full refund of the $74,990,571 paid post-judgment, except for the nominal amount of $1.67 and post-judgment interest on $1.67, together with interest on the refund as provided by law. Finally, if the Government's contingent claim against EPM Estate is revived, EPM Estate respectfully requests for purposes of judicial economy that this Court reject it as barred by *res judicata* as a matter of law.

Respectfully submitted,


/s/ William R. Cousins III
William R. Cousins III
Attorney-in-Charge
Texas State Bar No. 04901500

/s/ Robert Don Collier
Robert Don Collier
Texas State Bar No. 04599400


/s/ Stephen A. Beck
Stephen A. Beck
Texas State Bar No. 24006821


/s/ Brian J. Spiegel
Brian J. Spiegel
Texas State Bar No. 24063987

MEADOWS, COLLIER, REED, COUSINS, CROUCH & UNGERMAN, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile


Attorneys for ELAINE T. MARSHALL, Individually, as Executrix of the Estate of E. Pierce Marshall, as Trustee of the E. Pierce Marshall, Jr. Trust and as Trustee of the Preston Marshall Trust

## STATUTORY ADDENDUM

**I.R.C. § 6324. Special liens for estate and gift taxes.**

**(a) Liens for estate tax**

Except as otherwise provided in subsection (c)—

**(1) Upon gross estate**

Unless the estate tax imposed by chapter 11 is sooner paid in full, or becomes unenforceable by reason of lapse of time, it shall be a lien upon the gross estate of the decedent for 10 years from the date of death, except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof, shall be divested of such lien.

**(2) Liability of transferees and others**

If the estate tax imposed by chapter 11 is not paid when due, then the spouse, transferee, trustee (except the trustee of an employees' trust which meets the requirements of section 401(a)), surviving tenant, person in possession of the property by reason of the exercise, nonexercise, or release of a power of appointment, or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate under sections 2034 to 2042, inclusive, to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax. Any part of such property transferred by (or transferred by a transferee of) such spouse, transferee, trustee, surviving tenant, person in possession, or beneficiary, to a purchaser or holder of a security interest shall be divested of the lien provided in paragraph (1) and a like lien shall then attach to all the property of such spouse, transferee, trustee, surviving tenant, person in possession, or beneficiary, or transferee of any such person, except any part transferred to a purchaser or a holder of a security interest.

**(3) Continuance after discharge of fiduciary**

The provisions of section 2204 (relating to discharge of fiduciary from personal liability) shall not operate as a release of any part of the gross estate from the lien for any deficiency that may thereafter be determined to be due, unless such part of

the gross estate (or any interest therein) has been transferred to a purchaser or a holder of a security interest, in which case such part (or such interest) shall not be subject to a lien or to any claim or demand for any such deficiency, but the lien shall attach to the consideration received from such purchaser or holder of a security interest, by the heirs, legatees, devisees, or distributees.

**(b) Lien for gift tax**

Except as otherwise provided in subsection (c), unless the gift tax imposed by chapter 12 is sooner paid in full or becomes unenforceable by reason of lapse of time, such tax shall be a lien upon all gifts made during the period for which the return was filed, for 10 years from the date the gifts are made. If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift. Any part of the property comprised in the gift transferred by the donee (or by a transferee of the donee) to a purchaser or holder of a security interest shall be divested of the lien imposed by this subsection and such lien, to the extent of the value of such gift, shall attach to all the property (including after-acquired property) of the donee (or the transferee) except any part transferred to a purchaser or holder of a security interest.

**(c) Exceptions**

**(1)** The lien imposed by subsection (a) or (b) shall not be valid as against a mechanic's lienor and, subject to the conditions provided by section 6323(b) (relating to protection for certain interests even though notice filed), shall not be valid with respect to any lien or interest described in section 6323(b).

**(2)** If a lien imposed by subsection (a) or (b) is not valid as against a lien or security interest, the priority of such lien or security interest shall extend to any item described in section 6323(e) (relating to priority of interest and expenses) to the extent that, under local law, such item has the same priority as the lien or security interest to which it relates.

**I.R.C. § 6601. Interest on underpayment, nonpayment, or extensions of time for payment, of tax.**

**(a) General rule**

If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid.

**(b) Last date prescribed for payment**

For purposes of this section, the last date prescribed for payment of the tax shall be determined under chapter 62 with the application of the following rules:

**(1) Extensions of time disregarded**

The last date prescribed for payment shall be determined without regard to any extension of time for payment or any installment agreement entered into under section 6159.

**(2) Installment payments**

In the case of an election under section 6156(a) to pay the tax in installments—

**(A)** The date prescribed for payment of each installment of the tax shown on the return shall be determined under section 6156(b), and

**(B)** The last date prescribed for payment of the first installment shall be deemed the last date prescribed for payment of any portion of the tax not shown on the return.

**(3) Jeopardy**

The last date prescribed for payment shall be determined without regard to any notice and demand for payment issued, by reason of jeopardy (as provided in chapter 70), prior to the last date otherwise prescribed for such payment.

**(4) Accumulated earnings tax**

In the case of the tax imposed by section 531 for any taxable year, the last date prescribed for payment shall be deemed to be the due date (without regard to extensions) for the return of tax imposed by subtitle A for such taxable year.

**(5) Last date for payment not otherwise prescribed**

In the case of taxes payable by stamp and in all other cases in which the last date for payment is not otherwise prescribed, the last date for payment shall be deemed to be the date the liability for tax arises (and in no event shall be later than the date notice and demand for the tax is made by the Secretary).

\* \* \*

**(e) Applicable rules**

Except as otherwise provided in this title—

**(1) Interest treated as tax**

Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. Any reference to this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.

**(2) Interest on penalties, additional amounts, or additions to the tax**

**(A) In general**

Interest shall be imposed under subsection (a) in respect of any assessable penalty, additional amount, or addition to the tax (other than an addition to tax imposed under section 6651(a)(1) or 6653 or under part II of subchapter A of chapter 68) only if such assessable penalty, additional amount, or addition to the tax is not paid within 21 calendar days from the date of notice and demand therefor (10 business days if the amount for which such notice and demand is made equals or exceeds $100,000), and in such case interest shall be imposed only for the period from the date of the notice and demand to the date of payment.

**(B) Interest on certain additions to tax**

Interest shall be imposed under this section with respect to any addition to tax imposed by section 6651(a)(1) or 6653 or under part II of subchapter A of chapter 68 for the period which—

**(i)** begins on the date on which the return of the tax with respect to which such addition to tax is imposed is required to be filed (including any extensions), and

**(ii)** ends on the date of payment of such addition to tax.

### (3) Payments made within specified period after notice and demand

If notice and demand is made for payment of any amount and if such amount is paid within 21 calendar days (10 business days if the amount for which such notice and demand is made equals or exceeds $100,000) after the date of such notice and demand, interest under this section on the amount so paid shall not be imposed for the period after the date of such notice and demand.

\* \* \*

**I.R.C. § 6901. Transferred assets.**

**(a) Method of collection**

The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

**(1) Income, estate, and gift taxes**

**(A) Transferees**

The liability, at law or in equity, of a transferee of property—

**(i)** of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),

**(ii)** of a decedent in the case of a tax imposed by chapter 11 (relating to estate taxes), or

**(iii)** of a donor in the case of a tax imposed by chapter 12 (relating to gift taxes),

in respect of the tax imposed by subtitle A or B.

**(B) Fiduciaries**

The liability of a fiduciary under section 3713(b) of title 31, United States Code in respect of the payment of any tax described in subparagraph (A) from the estate of the taxpayer, the decedent, or the donor, as the case may be.

**(2) Other taxes**

The liability, at law or in equity of a transferee of property of any person liable in respect of any tax imposed by this title (other than a tax imposed by subtitle A or B), but only if such liability arises on the liquidation of a partnership or corporation, or on a reorganization within the meaning of section 368(a).

**(b) Liability**

Any liability referred to in subsection (a) may be either as to the amount of tax shown on a return or as to any deficiency or underpayment of any tax.

**(c) Period of limitations**

The period of limitations for assessment of any such liability of a transferee or a fiduciary shall be as follows:

**(1) Initial transferee**

In the case of the liability of an initial transferee, within 1 year after the expiration of the period of limitation for assessment against the transferor;

**(2) Transferee of transferee**

In the case of the liability of a transferee of a transferee, within 1 year after the expiration of the period of limitation for assessment against the preceding transferee, but not more than 3 years after the expiration of the period of limitation for assessment against the initial transferor;

except that if, before the expiration of the period of limitation for the assessment of the liability of the transferee, a court proceeding for the collection of the tax or liability in respect thereof has been begun against the initial transferor or the last preceding transferee, respectively, then the period of limitation for assessment of the liability of the transferee shall expire 1 year after the return of execution in the court proceeding.

**(3) Fiduciary**

In the case of the liability of a fiduciary, not later than 1 year after the liability arises or not later than the expiration of the period for collection of the tax in respect of which such liability arises, whichever is the later.

**(d) Extension by agreement**

**(1) Extension of time for assessment**

If before the expiration of the time prescribed in subsection (c) for the assessment of the liability, the Secretary and the transferee or fiduciary have both consented in writing to its assessment after such time, the liability may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. For the purpose of determining the period of

limitation on credit or refund to the transferee or fiduciary of overpayments of tax made by such transferee or fiduciary or overpayments of tax made by the transferor of which the transferee or fiduciary is legally entitled to credit or refund, such agreement and any extension thereof shall be deemed an agreement and extension thereof referred to in section 6511(c).

**(2) Extension of time for credit or refund**

If the agreement is executed after the expiration of the period of limitation for assessment against the taxpayer with reference to whom the liability of such transferee or fiduciary arises, then in applying the limitations under section 6511(c) on the amount of the credit or refund, the periods specified in section 6511(b)(2) shall be increased by the period from the date of such expiration to the date of the agreement.

**(e) Period for assessment against transferor**

For purposes of this section, if any person is deceased, or is a corporation which has terminated its existence, the period of limitation for assessment against such person shall be the period that would be in effect had death or termination of existence not occurred.

**(f) Suspension of running of period of limitations**

The running of the period of limitations upon the assessment of the liability of a transferee or fiduciary shall, after the mailing to the transferee or fiduciary of the notice provided for in section 6212 (relating to income, estate, and gift taxes), be suspended for the period during which the Secretary is prohibited from making the assessment in respect of the liability of the transferee or fiduciary (and in any event, if a proceeding in respect of the liability is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter.

**(g) Address for notice of liability**

In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, any notice of liability enforceable under this section required to be mailed to such person, shall, if mailed to the person subject to the

liability at his last known address, be sufficient for purposes of this title, even if such person is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence.

### (h) Definition of transferee

As used in this section, the term "transferee" includes donee, heir, legatee, devisee, and distributee, and with respect to estate taxes, also includes any person who, under section 6324(a)(2), is personally liable for any part of such tax.

### (i) Extension of time

For extensions of time by reason of armed service in a combat zone, see section 7508.

# <u>CERTIFICATE OF SERVICE</u>

I certify that the original and seven copies of this brief were filed with the Clerk of the Fifth Circuit Court of Appeals by Federal Express on this the 22d day of April 2013.  I further certify that on this 22d day of April 2013 I electronically filed the foregoing brief for Appellant Elaine T. Marshall with the Clerk of the Fifth Circuit Court of Appeals using the CM/ECF System and that service of such filing will be made electronically on the following registered CM/ECF users:

*Attorney for Plaintiff-Appellee, United States of America*

Ivan C. Dale
U.S. Department of Justice
Tax Division, Appellate Section
P.O. Box 502
Washington, D.C. 20044-0000

*Attorneys for Defendants-Appellants, Finley L. Hilliard and E. Pierce Marshall, Jr.*

Emily A. Parker
Eric Gorden Reis
Scott Patrick Stolley
Thompson & Knight, L.L.P.
1722 Routh Street, Suite 1500
Dallas, Texas 75201

*Attorneys for Defendant-Appellant, Preston Marshall*

John William Porter
Jeffrey D. Watters
Baker Botts, L.L.P.
910 Louisiana Street, Suite 3000
Houston, TX 77002

I further certify that on this 22d day of April 2013 I sent the foregoing brief

of Appellant Elaine T. Marshall via certified mail to the following:

Andrew L. Sobotka
U.S. Department of Justice
717 N. Harwood Street
Suite 400
Dallas, TX  75201

Don Jackson
Ware, Jackson, Lee & Chambers
2929 Allen Parkway
42nd Floor
Houston, TX  77019

Russell Hardin, Jr.
Rusty Hardin & Associates
1401 McKinney Street
Suite 2250
Houston, TX  77010

/s/ William R. Cousins III
William R. Cousins III
Attorney of Record for ELAINE T.
MARSHALL, Individually, as
Executrix of the Estate of E. Pierce
Marshall, as Trustee of the E. Pierce
Marshall, Jr. Trust and as Trustee of
the Preston Marshall Trust

## ECF CERTIFICATIONS

Pursuant to Fifth Circuit Rule 25.2, I hereby certify on this 22d day of April 2013 that (i) any required privacy redactions have been made, (ii) the electronic submission is an exact copy of the paper documents, and (iii) the document has been scanned for virus with a commercial virus scanning program and is free of virus.

/s/ William R. Cousins III
William R. Cousins III
Attorney of Record for ELAINE T. MARSHALL, Individually, as Executrix of the Estate of E. Pierce Marshall, as Trustee of the E. Pierce Marshall, Jr. Trust and as Trustee of the Preston Marshall Trust

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 13,980 words**,** excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003 in 14 point Times New Roman font for text and footnotes.

/s/ William R. Cousins III
William R. Cousins III
Attorney of Record for ELAINE T.
MARSHALL, Individually, as
Executrix of the Estate of E. Pierce
Marshall, as Trustee of the E. Pierce
Marshall, Jr. Trust and as Trustee of
the Preston Marshall Trust