NO. 12-20804

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff – Appellee,

v.

ELAINE T. MARSHALL, Individually, as Executrix of the Estate of E. Pierce
Marshall, as Trustee of the E. Pierce Marshall, Jr. Trust and as Trustee of
the Preston Marshall Trust; FINLEY L. HILLIARD, Individually, as former
executor of the Estate of James Howard Marshall, II and as former Trustee of
the Eleanor Pierce (Marshall) Stevens Living Trust; E. PIERCE MARSHALL, JR.,
Individually, and, as Executor of the Estate of Eleanor Pierce Stevens, PRESTON
MARSHALL, Co-Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust,
Defendants – Appellants.

Appeals from the United States District Court for the
Southern District of Texas, Houston

———————————

**BRIEF OF APPELLANT PRESTON MARSHALL, CO-TRUSTEE OF THE
ELEANOR PIERCE (MARSHALL) STEVENS LIVING TRUST**

———————————

BAKER BOTTS L.L.P.

JOHN W. PORTER
JEFFREY D. WATTERS, JR.
One Shell Plaza
910 Louisiana Street
Houston, Texas  77002-4995
Telephone: (713) 229-1597
Facsimile:  (713) 229-2797

COUNSEL FOR APPELLANT, PRESTON
MARSHALL, CO-TRUSTEE OF THE
ELEANOR PIERCE (MARSHALL)
STEVENS LIVING TRUST

NO. 12-20804

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff – Appellee,

v.

ELAINE T. MARSHALL, Individually, as Executrix of the Estate of E. Pierce
Marshall, as Trustee of the E. Pierce Marshall, Jr. Trust and as Trustee of
the Preston Marshall Trust; FINLEY L. HILLIARD, Individually, as former
executor of the Estate of James Howard Marshall, II and as former Trustee of
the Eleanor Pierce (Marshall) Stevens Living Trust; E. PIERCE MARSHALL, JR.,
Individually, and, as Executor of the Estate of Eleanor Pierce Stevens, PRESTON
MARSHALL, Co-Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust,
Defendants – Appellants.

Appeals from the United States District Court for the
Southern District of Texas, Houston

_____

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed

persons have an interst in the outcome of this case.  These representations are made

in order that the judges of this Court may evaluate possible disqualification or

recusal.

| Party | Counsel |
|-------|---------|
| Preston Marshall, Co-Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust | John W. Porter<br>Jeffrey D. Watters, Jr.<br>Baker Botts L.L.P.<br>910 Louisiana Street<br>Houston, TX 77002 |

| | |
|---|---|
| E. Pierce Marshall, Jr., Individually, and, as Executor of the Estate of Eleanor Pierce Stevens | Emily A. Parker<br>Eric Gordon Reis<br>Scott Patrick Stolley<br>Thomson & Knight L.L.P.<br>1722 Routh Street, Suite 1500<br>Dallas, Texas 75201<br><br>Russell Hardin, Jr.<br>Rusty Hardin & Associates<br>1401 McKinney Street, Suite 2250<br>Houston, TX 77010 |
| Finley L. Hilliard, Individually, as former executor of the Estate of James Howard Marshall, II and as former Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust | Emily A. Parker<br>Eric Gordon Reis<br>Scott Patrick Stolley<br>Thomson & Knight L.L.P.<br>1722 Routh Street, Suite 1500<br>Dallas, Texas 75201<br><br>Russell Hardin, Jr.<br>Rusty Hardin & Associates<br>1401 McKinney Street, Suite 2250<br>Houston, TX 77010 |
| Elaine T. Marshall, Individually, as Executrix of the Estate of E. Pierce Marshall, as Trustee of the E. Pierce Marshall, Jr. Trust and as Trustee of the Preston Marshall Trust | William R. Cousins, III<br>Stephen A. Beck<br>Robert Don Collier<br>Brian J. Spiegel<br>Meadows, Collier, Reed, Cousins, Crouch & Ungerman, L.L.P.<br>901 Main Street, Suite 3700<br>Dallas, TX 75202<br><br>Don Jackson<br>Ware, Jackson, Lee & Chambers, LLP<br>2929 Allen Parkway<br>42nd Floor<br>Houston, TX 77019 |

| United States of America | Ivan C. Dale<br>United States Department of Justice<br>Tax Division, Appellate Section<br>P.O. Box 502<br>Washington, D.C.  20044<br><br>Andrew L. Sobotka<br>U.S. Division of Justice<br>717 N. Harwood Street, Suite 400<br>Dallas, TX  75201 |

/s/ John W. Porter
John W. Porter
Attorney for Preston Marshall

## REQUEST FOR ORAL ARGUMENT

Preston Marshall, as Co-Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust, respectfully requests the Court to schedule oral argument in this appeal.  This case involves fundamental principles of transfer tax law and questions of first impression regarding the application of 26 U.S.C. § 6324, the transferee liability statute.   Oral argument is sought to aid the Court's understanding of the issues involved in this appeal.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

REQUEST FOR ORAL ARGUMENT ..................................................................v

TABLE OF CONTENTS................................................................................... vi

TABLE OF AUTHORITIES ............................................................................ viii

STATEMENT OF JURISDICTION.......................................................................1

STATEMENT OF THE ISSUES...........................................................................2

STATEMENT OF THE CASE..............................................................................3

STATEMENT OF THE FACTS ............................................................................6

SUMMARY OF ARGUMENT ...........................................................................10

ARGUMENT ..................................................................................................13

    I.      Standard of Review ........................................................................14

    II.    Res Judicata Does Not Preclude Mrs. Stevens From Contesting
           Her Status as a Donee of Mr. Marshall's Gift.....................................15

    III.   The GRIT is Not a Donee of Mr. Marshall's Gift...............................17

           A.    Transferee liability does not attach to Mrs. Stevens
                 because the GRIT did not receive a present property
                 interest from the Redemption...................................................18

           B.    Transferee liability does not attach to Mrs. Stevens
                 because the United States has not proved the value
                 of any gift to the GRIT............................................................22

    IV.   Mrs. Stevens -- As the Income Beneficiary of the GRIT --
           Is Not a Donee of Mr. Marshall's Gift ................................................24

           A.    The trustee of a trust is the donee of a gift to the trust .............24

           B.    In the alternative, an income beneficiary of a trust
                 is not the transferee of a gift for purposes of the
                 transferee liability statute .......................................................29

C.    No gift to Mrs. Stevens occurred because the Redemption
      was an arm's length transaction in the ordinary course
      of business as to Mrs. Stevens ..................................................33

V.    To the Extent Mrs. Stevens Is a Donee, the Amount of Her
      Liability Is Capped at the Value of Any Gift She Received ..............36

CONCLUSION ......................................................................................................38

CERTIFICATE OF SERVICE ...............................................................................39

CERTIFICATE OF COMPLIANCE ......................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Baptiste v. Comm'r,*
29 F.3d 433 (8th Cir. 1994) .................................................................37

*Baptiste v. Comm'r,*
29 F.3d 1533 (11th Cir. 1994) .............................................................37

*Baur v. Comm'r,*
145 F.2d 338 (3d Cir. 1944) ................................................................23

*Chanin v. United States,*
393 F.2d 972 (Ct. Cl. 1968) ..........................................................20, 32

*Citizens Bank & Trust Co. v. Comm'r,*
839 F.2d 1249 (7th Cir. 1988) .............................................................14

*Comm'r v. Chase Manhattan Bank,*
259 F.2d 231 (5th Cir. 1958) ...............................................................26

*Englert v. Comm'r,*
32 T.C. 1008 (1959), *acq.* 1960-2 C.B. 3 .....................................25, 26

*Estate of Bosca v. Comm'r,*
76 T.C.M. (CCH) 62 (1998) ................................................................31

*Estate of Hitchon v. Comm'r,*
45 T.C. 96 (1965), *acq.,* 1966-2 C.B. 3 .............................................33

*Estate of Maggos v. Comm'r,*
79 T.C.M. (CCH) 1861 (2000) ......................................................19, 31

*Estate of Mandels v. Comm'r,*
64 T.C. 61 (1975), *acq.,* 1975-2 C.B. 1 .......................................13, 26

*Estate of Sanford v. Comm'r,*
308 U.S. 39 (1939)...............................................................................25

*Estate of Trenchard v. Comm'r,*
69 T.C.M. (CCH) 2164 (1995) .......................................................20, 33

*Fehrs v. United States*,
  Nos. 118-72 & 119-72, 1979 WL 3946 (Ct. Cl. Nov. 27, 1979)........................34

*Fidelity Trust Co. v. Comm'r*,
  141 F.2d 54 (3d Cir. 1944) ........................................................................ *passim*

*Garrett v. Comm'r*,
  67 T.C.M. (CCH) 2214 (1994) ....................................................................25, 26

*Guilzon v. Comm'r*,
  985 F.2d 819 (5th Cir. 1993) .............................................................................36

*Helvering v. Hutchings*,
  312 U.S. 393 (1941)......................................................................................28, 29

*Heringer v. Comm'r*,
  235 F.2d 149 (9th Cir. 1956) ..................................................................19, 20, 33

*Higley v. Comm'r*,
  69 F.2d 160 (8th Cir. 1934) ........................................................25, 26, 27, 28

*Kincaid v. United States*,
  682 F.2d 1220 (5th Cir. 1982) ....................................................................19, 22

*La Fortune v. Comm'r*,
  263 F.2d 186 (10th Cir. 1958) ...........................................................................23

*Maverick Recording Co. v. Harper*,
  598 F.3d 193 (5th Cir. 2010) ......................................................................14, 15

*Meza v. Gen. Battery Corp.*,
  908 F.2d 1262 (5th Cir. 1990) ....................................................................15, 16

*Pasant v. Jackson Nat'l Life Ins. Co.*,
  52 F.3d 94 (5th Cir. 1995) .................................................................................14

*Poinier v. Comm'r*,
  858 F.2d 917 (3d Cir. 1988) ......................................................................37, 38

*Robinson v. Comm'r*,
  675 F.2d 774 (5th Cir. 1982) .............................................................................25

*Sw. Airlines Co. v. Texas Int'l Airlines, Inc.*,
546 F.2d 84 (5th Cir. 1977) ................................................................16

*Stinson's Estate v. United States*,
214 F.3d 846 (7th Cir. 2000) ................................................19, 20, 31

*Thompson v. Comm'r*,
42 B.T.A. 121 (1940)..........................................................................20

*Tilton v. Comm'r*,
88 T.C. 590 (1987), *acq.*, 1987-2 C.B. 1  ..........................18, 19, 22, 23

*United States v. Botefuhr*,
309 F.3d 1263 (10th Cir. 2002) ..........................................................26

*United States v. Detroit Bank & Trust Co.*,
No. 20937, 1962 WL 13125 (E.D. Mich. Feb. 27, 1962)...........................25, 26

*United States v. Gordon*,
406 F.2d 332 (5th Cir. 1969) ..............................................................25

*United States v. Johnson*,
No. 2:11-CV-00087, 2012 WL 1898873 (D. Utah May 23, 2012)..............25, 26

*United States v. Renda*,
709 F.3d 472 (5th Cir. 2013) ..............................................................36

*Want v. Comm'r*,
280 F.2d 777 (2d Cir. 1960) ...............................................................28

*Ward v. Comm'r*,
87 T.C. 78 (1986).................................................................................14

## STATUTES

26 U.S.C. § 2503 .................................................................................29

26 U.S.C. § 2512 .................................................................................33

26 U.S.C. § 6324 ....................................................................... *passim*

26 U.S.C. § 6601 .................................................................................37

K.S.A. 58-9-404 ..................................................................................33

**OTHER AUTHORITIES**

Dale S. Adams & Robert B. Smith, FEDERAL ESTATE & GIFT TAXATION ..............32

Treasury Regulation § 25.2512-8 ................................................................12, 24, 33

## STATEMENT OF JURISDICTION

The United States of America filed this action to recover unpaid gift taxes under 26 U.S.C. §§ 7402 and 7403 and 28 U.S.C. §§ 1340 and 1345. (USCA5 17)  The Honorable Gray H. Miller of the United States District Court for the Southern District of Texas entered a Final Judgment on July 26, 2012. (USCA5 1740)

A Motion to Alter the Judgment was timely filed on August 23, 2012, pursuant to Federal Rule of Civil Procedure 59(e).  (USCA5 1756)  Judge Miller denied the Motion to Alter the Judgment on November 5, 2012, and finally disposed of all parties' claims.  (USCA5 1866)

Finley Hilliard, as the then Co-Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust, timely filed a Notice of Appeal on December 28, 2012, pursuant to Federal Rule of Appellate Procedure 4(a)(1)(B)(i). (Supp. USCA5 61)  Thus, this Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

This appeal from cross-motions for summary judgment presents the following issues of law, which are of first impression in this Court:

1.     Whether transferee liability under 26 U.S.C. § 6324(b) can be imposed on the income beneficiary of a trust that owns corporate stock when a non-related shareholder redeems stock in the corporation for less than fair market value.

2.     Whether res judicata precludes the income beneficiary of the trust from litigating her status as a donee of the so-called "indirect gift" resulting from the redemption of stock when the income beneficiary was not a party to or in privity with a party to the prior proceeding.

3.     Whether the liability imposed under 26 U.S.C. § 6324(b) is limited to the value of the gift received by a donee.

## STATEMENT OF THE CASE

The United States filed its Original Complaint on August 6, 2010, in the United States District Court for the Southern District of Texas, Houston Division (the "District Court"), alleging that several parties, including the Eleanor Pierce (Marshall) Stevens Living Trust (the "Living Trust"), were liable under 26 U.S.C. § 6324(b) for the unpaid gift tax from an indirect gift that J. Howard Marshall II ("Mr. Marshall") made in 1995 to the shareholders of Marshall Petroleum, Inc. ("MPI") (such transaction, "Mr. Marshall's Gift") when he redeemed his shares. (USCA5 16) The Living Trust filed an Answer, specifically denying that any gift was made to Eleanor Pierce Stevens ("Mrs. Stevens") as a result of the redemption or that she benefitted from Mr. Marshall's Gift. (USCA5 108)

Both the Estate of Eleanor Pierce Stevens and the Living Trust filed a Motion for Summary Judgment, arguing that "Mrs. Stevens was not a donee of the alleged 1995 indirect gift," principally on the basis that Mrs. Stevens did not benefit from any gift, as she had irrevocably transferred all of her shares in MPI to several trusts by the time the alleged gift occurred. (Sealed Doc. #55, at 2) The United States filed a Response in Opposition to the Motion for Summary Judgment and a Cross Motion for Summary Judgment, arguing that res judicata precluded the Living Trust from contesting Mrs. Stevens' status as a donee. (Sealed Doc. #57)

After several responses, replies, and sur-replies, the Honorable Gray

Miller issued an Order on March 28, 2012, holding that Mrs. Stevens, as the

income beneficiary of one of the trusts, was a donee of Mr. Marshall's Gift.

(USCA5 1594)  Judge Miller also issued an Order on June 7, 2012, holding that a

donees' liability for the unpaid gift tax and interest was not limited to the value of

the gift she received, as she had an independent liability to pay the tax.  (USCA5

1686)

The District Court incorporated its March 28, 2012 Order and June 7,

2012 Order into a Final Judgment entered on July 26, 2012, providing that:

> E. Pierce Marshall, Jr., in his capacity as Executor of the
> Estate of Eleanor Pierce Stevens, and Finley L. Hilliard,
> in his capacity as Trustee of the Eleanor Pierce Stevens
> Living Trust, are jointly liable to the United States under
> 26 U.S.C. §§ 6324(b), 6601 and 6621 for Eleanor Pierce
> Stevens' $35,939,316 donee liability arising out of 1995
> plus interest, calculated through June 25, 2012, in the
> combined amount of $73,984,836.75, plus additional
> pre-judgment interest thereafter under 26 U.S.C. 6601
> and post-judgment interest under 28 U.S.C. § 1961(c)(1),
> at the underpayment rate set forth in 26 U.S.C. § 6621,
> until paid.

(USCA5 1740 ¶ 5)

After several post-judgment motions to alter the Court's Final

Judgment, the Court issued an order on November 5, 2012, denying all requested

relief.  (USCA5 1866)  Finley Hilliard, as Co-Trustee of the Living Trust, timely

filed a Notice of Appeal on December 28, 2012.  (Supp. USCA5 61)   Finley

Hilliard ceased serving as a Co-Trustee of the Living Trust and on March 11, 2013, this Court granted a Motion substituting Preston Marshall, as a Co-Trustee of the Living Trust, as a party in his stead.

## STATEMENT OF THE FACTS

Mr. Marshall and Mrs. Stevens were married for many years, but divorced in 1960. (Sealed Doc. #55) Under the terms of their divorce, Mr. Marshall and Mrs. Stevens divided their community property. (*Id*. #55-2) Mrs. Stevens' share was transferred to Marshall Associates, a Texas partnership. (*Id*.) In 1984, Marshall Associates converted into MPI and Mrs. Stevens was issued stock in MPI in exchange for her partnership interest in Marshall Associates. (*Id*.)

MPI was taxed as a Subchapter S-corporation, which meant that its shareholders were taxed on MPI's income whether or not it was distributed to them. (*See* Sealed Doc. #57-15) Mrs. Stevens was a minority shareholder, owning only a 21.8% interest in MPI. (Sealed Doc. #79-2) Mr. Marshall controlled MPI and made all decisions regarding distributions. (*See id*.) MPI had an informal policy to make quarterly distributions to its shareholders to offset the shareholders' estimated income tax liability resulting from MPI's flow-through income. (*Id*. ¶ 4) However, MPI made no other distributions other than its quarterly distributions. (*Id*.)

When Mrs. Stevens received her MPI shares, she transferred them into the Living Trust, which was established in 1979 to hold her assets. (Sealed Doc. #55-2) For tax purposes, the assets of the Living Trust were treated as owned by

Mrs. Stevens. In 1988 and 1989, Mrs. Stevens disposed of all the MPI shares held in her Living Trust by establishing four trusts, three charitable remainder annuity trusts ("CRATs") and one grantor retained income trust ("GRIT"), and funding them with the MPI shares. (*Id.*)

Mrs. Stevens was only entitled to the net income of the GRIT. (Sealed Doc. #55-8 Art. IV.A) She was forbidden from receiving any corpus:

> Settlor shall not be entitled to receive any trust corpus pursuant to this Paragraph and, notwithstanding any contrary statute or case law, Trustee shall not pay to Settlor or the executor, administrator or other duly appointed representative of the estate of Settlor, any trust corpus, including but not limited to any corpus that might be required to pay Settlor's tax liability (whether federal, state or otherwise) if any, in respect of gains realized by the trust and allocable to corpus but taxable to Settlor nor make any other distributions of corpus to or for the benefit of Settlor . . . .

(*Id.*) The corpus of the GRIT was defined to include the MPI shares Mrs. Stevens transferred to the GRIT, "as well as all increment thereto, and all increases, conversions, and reinvestments thereof." (*Id.* Art. II.B) The GRIT was irrevocable, *id.* Art. III., and had a ten-year term. (*Id.* Art. IV.B) After the expiration of ten years, the GRIT would terminate and the GRIT's corpus would be distributed to the remainder beneficiary, E. Pierce Marshall. (*Id.* Art. IV.E)

After the Living Trust transferred the MPI shares to the CRATs and the GRIT, all of the Living Trust's MPI stock certificates were cancelled and new

certificates in the name of the CRATs and the GRIT were issued. (Sealed

Docs. #55-2; #55-9—55-11)   The shares transferred to the CRATs were later

redeemed by MPI, leaving only the shares in the GRIT outstanding.[1]  (Sealed Doc.

#55-2)

In 1995, six years after the Living Trust completed the irrevocable

transfer of all of the MPI shares to the CRATs and the GRIT, MPI redeemed all of

Mr. Marshall's MPI shares (the "Redemption").   (USCA5 1595)    Neither

Mrs. Stevens, the Living Trust, nor the GRIT was involved in the Redemption or

had any input regarding the terms of the Redemption.   Neither Mrs. Stevens, the

Living Trust, nor the GRIT received any MPI shares as a part of the Redemption.

After the Redemption, MPI continued to make distributions to offset the

shareholders' estimated income tax liability resulting from MPI's flow-through

income.   (Sealed Doc. #79-2)   Mr. Marshall died soon after and the Internal

Revenue Service began an audit of Mr. Marshall's affairs.  (USCA5 1595)

During its audit, the Internal Revenue Service determined that the

Redemption took place at below market value and that Mr. Marshall had therefore

made an "indirect" gift to the shareholders of MPI.  (*Id.*)  In the subsequent Tax

Court litigation over Mr. Marshall's gift tax liability in the United States Tax Court

("Mr. Marshall's Tax Court case"), the Internal Revenue Service and

---

[1] As to the CRATs, the District Court held that no indirect gift occurred because the CRATs did not own MPI shares at the time of the Redemption.  (USCA5 1598)

Mr. Marshall's estate entered into a Stipulation of Settled Issues that purported to resolve all of the gift tax issues related to the Redemption ("Mr. Marshall's Tax Court Stipulation").  (Sealed Doc. #57-1)  Included in the Stipulation was an agreement between the Internal Revenue Service and Mr. Marshall's estate that he had made a gift of over $36 million to Mrs. Stevens, notwithstanding the facts that Mrs. Stevens (1) owned no MPI shares at the time of the Redemption, (2) received no MPI shares as a result of the Redemption, and (3) in no way benefitted from the Redemption.  (*Id.*)  Notably, Mrs. Stevens was not a party to Mr. Marshall's Tax Court case, had no notice of the proceeding, and was not consulted as to whether or not to enter into Mr. Marshall's Tax Court Stipulation.  Mr. Marshall's Tax Court Stipulation was eventually incorporated into a Decision of the Tax Court in 2008. (Sealed Docs. #57-3—57-5)

During the course of Mr. Marshall's Tax Court case, the GRIT terminated and its corpus (i.e., the MPI shares) passed to its remainder beneficiary in 1999.  (Sealed Doc. #68 ¶ 12 & n.5; USCA5 1595)  Mrs. Stevens died in 2007, leaving the bulk of her assets in the Living Trust.  (*See* Sealed Doc. #55)

## SUMMARY OF ARGUMENT

The District Court erroneously imposed almost $74 million of gift tax transferee liability on Mrs. Stevens under 26 U.S.C. § 6324(b) as a result of Mr. Marshall's redemption of his MPI stock, despite the fact that Mrs. Stevens (1) owned no MPI shares at the time of the Redemption, (2) received no MPI shares as a result of the Redemption, (3) was not involved in the Redemption, and (4) received no benefit from the Redemption. The transferee liability imposed included $35,939,316 of tax and $38,045,520.75 of interest.

The District Court imposed transferee liability on Mrs. Stevens because of her status as the income beneficiary of the GRIT. The District Court opined that because (1) the GRIT owned shares of MPI stock, (2) Mrs. Stevens had the right to receive income from the GRIT (including distributions from MPI), and (3) the remainder beneficiaries held a future interest in the GRIT, Mrs. Stevens was the donee of Mr. Marshall's indirect gift for purposes of imposing transferee liability. For numerous reasons, the District Court's judgment should be reversed.

As an initial matter, the GRIT received no present interest in property from the Redemption. While an indirect gift potentially enhances the intangible value of the corporate stock, that intangible value cannot be accessed by a minority shareholder such as the GRIT. Thus, any "benefit" received by the GRIT was at most a future interest. The absence of a present interest transfer renders the

transferee liability statute inapplicable, as there must first be some measurable benefit received for transferee liability to be imposed.

Even if the GRIT is considered the transferee, the United States still must prove that Mrs. Stevens, as the income beneficiary, is the proper party as between the trustee, the income beneficiary, and the remainder beneficiary on whom to impose transferee liability. Substantial authority demonstrates that the trustee of a trust is the proper party to hold liable under the transferee liability statute, as the trustee is in possession of the transferred property and can control its disposition. Since Mrs. Stevens had no control over the property of the GRIT, this Court should hold that as between the three, the trustee is the transferee of any gift.

But if the Court determines that a beneficiary of a trust must be the transferee for purposes of the transferee liability statute, the Court should hold that the remainder beneficiary, not Mrs. Stevens as the income beneficiary, is liable as the transferee of Mr. Marshall's Gift. Mrs. Stevens only received distributions equal to her estimated quarterly tax liability from MPI's flow-through income charged to her. The benefit, if any, from the Redemption was the enhanced value of the GRIT's MPI shares. As any enhanced value passed to the remainder beneficiary upon the termination of the GRIT, the remainder beneficiary of the GRIT would be the transferee, not the income beneficiary.

And to even hold Mrs. Stevens liable for Mr. Marshall's unpaid gift taxes under the transferee liability statute, the United States must prove that Mr. Marshall made a gift to Mrs. Stevens.   At the time of the Redemption, Mrs. Stevens and Mr. Marshall had been divorced for almost 35 years. Accordingly, as between Mrs. Stevens and Mr. Marshall, no gift could have occurred under any circumstances as the Redemption would have been at arm's length, bona fide, and free of donative intent.   The ordinary course of business exception under Treasury Regulation § 25.2512-8 applies and the Redemption did not result in a gift from Mr. Marshall to Mrs. Stevens.

Finally, the plain language of 26 U.S.C. § 6324 demonstrates that the liability for both the original unpaid tax and any interest incurred by its non-payment is limited to the value of the gift received.   Thus, to the extent that Mrs. Stevens is liable under the transferee liability statute, she cannot be held liable for interest beyond the value of the gift she received.

## ARGUMENT

In this case, the United States seeks to hold the Living Trust (via Mrs. Stevens) liable under the transferee liability statute for unpaid gift tax and interest owed by Mr. Marshall. The transferee liability statute provides, in relevant part:

> Except as otherwise provided in subsection (c), unless the gift tax imposed by chapter 12 is sooner paid in full or becomes unenforceable by reason of lapse of time, such tax shall be a lien upon all gifts made during the period for which the return was filed, for 10 years from the date the gifts are made. If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift. Any part of the property comprised in the gift transferred by the donee (or by a transferee of the donee) to a purchaser or holder of a security interest shall be divested of the lien imposed by this subsection and such lien, to the extent of the value of such gift, shall attach to all the property (including after-acquired property) of the donee (or the transferee) except any part transferred to a purchaser or holder of a security interest.

26 U.S.C. § 6324(b).

The key to the gift tax subsection of the transferee liability statute is that a person is only liable to the extent of the value of property they receive from a donor. *Id.*; *Estate of Mandels v. Comm'r*, 64 T.C. 61, 74 (1975), *acq.*, 1975-2 C.B. 1 ("The value of items received by a [donee] sets the limit on [the donee's] possible liability . . . ."). Importantly, the transferee liability measure of value (the property received by a donee) differs from the gift tax measure of value (the

property transferred by a donor). *Citizens Bank & Trust Co. v. Comm'r*, 839 F.2d 1249, 1251 (7th Cir. 1988) ("value is to be measured at the instant before transfer, so that the amount of tax depends on the value of the transferred property in the hands of the transferor rather than its value in the hands of the transferee"); *Ward v. Comm'r*, 87 T.C. 78, 100 (1986) ("[t]he gift is measured by the value of the property passing from the donor"). That distinction makes all the difference.

As the Living Trust will show, the United States did not demonstrate that either the GRIT or Mrs. Stevens received any present property interest from Mr. Marshall. Because neither the GRIT nor Mrs. Stevens received any present property interest from Mr. Marshall, they are not liable under the transferee liability statute. Accordingly, this Court should reverse the District Court and render judgment that the Living Trust is not liable under the transferee liability statute.

## I.    Standard of Review

This Court reviews cross motions for summary judgment de novo. *Pasant v. Jackson Nat'l Life Ins. Co.*, 52 F.3d 94, 96 (5th Cir. 1995). It places itself in the position of the district court and grants the judgment that the district court should have granted. *See Maverick Recording Co. v. Harper*, 598 F.3d 193, 195 (5th Cir. 2010). Thus, "if the record demonstrates that 'there is no genuine issue as to any material fact and that [the Living Trust] is entitled to judgment as a

matter of law," then the Court will grant the Living Trust's motion for summary judgment. *Id*. at 195 (quoting FED. R. CIV. P. 56(c)).  But if the Court finds that an issue of fact exists, it should deny both motions for summary judgment and remand the case for trial on the merits.

## II.    Res Judicata Does Not Preclude Mrs. Stevens From Contesting Her Status as a Donee of Mr. Marshall's Gift

In the District Court, the United States principally argued that Mr. Marshall's Tax Court Stipulation precluded the Living Trust from contesting Mrs. Stevens' status as a transferee of Mr. Marshall's Gift.  (*See* Sealed Docs. #57, #68, #9)  But as Mrs. Stevens was not in privity with Mr. Marshall, res judicata does not apply.

Under this Court's precedent, "[f]our requirements must be met in order to apply res judicata:  (1) the parties must be identical in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1265 (5th Cir. 1990).  On the first requirement, it is undisputed that the parties in this lawsuit are not identical to the parties in Mr. Marshall's Tax Court case, as neither Mrs. Stevens nor the Living Trust were involved with Mr. Marshall's Tax Court case.  When the parties are not identical, this Court has nevertheless applied res judicata when the party in the second lawsuit was in privity with a party in the

first lawsuit.  *Id*.  Thus, the only way that the United States can establish the first element of res judicata is if it can show that Mrs. Stevens was in privity with Mr. Marshall.

The privity requirement is crucial as the use of a prior judicial proceeding to determine the rights of a stranger to that proceeding violates the Constitution's due process guarantee that everyone is entitled to their day in court. *Id*. at 1266.  In order to ensure that a party's constitutional guarantees are not violated, courts will only find privity when there is a "sufficiently close" relationship "between the one who is a party on the record and the non-party . . . to afford application of the principle of preclusion."  *Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977) (quotation omitted).  This Court has determined that a sufficiently close relationship exists "in just three, narrowly defined circumstances:  (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit."  *Meza*, 908 F.2d at 1266.

Of those three narrowly defined circumstances, only the first is implicated by this case.  To apply res judicata then, the United States must demonstrate that Mrs. Stevens was a successor-in-interest to (i.e., a donee of) Mr. Marshall's Gift.  Yet, whether Mrs. Stevens is a donee of Mr. Marshall's Gift

(and thus a successor-in-interest to the property in question) is the exact question before this Court, as the Living Trust's entire argument from the beginning has been that Mrs. Stevens was not a donee of Mr. Marshall's Gift.

Thus, the United States' entire argument is circular -- (1) Mrs. Stevens is a donee because Mr. Marshall's Tax Court Stipulation says she is a donee; and (2) Mrs. Stevens is bound by Mr. Marshall's Tax Court Stipulation because she is a donee.  Left out of that circle is any consideration of whether Mrs. Stevens is actually a donee in the first place.

At bottom, whether res judicata applies turns on whether Mrs. Stevens was a donee of Mr. Marshall's Gift, which is the whole point of this case.  The Court simply cannot apply res judicata without first resolving the Living Trust's main contention that neither Mrs. Stevens nor the GRIT are donees of Mr. Marshall's Gift.

## III.    The GRIT is Not a Donee of Mr. Marshall's Gift

Since the Living Trust is not precluded by Mr. Marshall's Tax Court Stipulation, it is free to contest Mrs. Stevens' status as a donee of Mr. Marshall's Gift.  As Mrs. Stevens did not own any shares of MPI at the time of Mr. Marshall's Gift, the only way the United States can seek to hold her liable as a donee is through her status as an income beneficiary of the GRIT, which did own MPI

shares.  Thus, to determine whether Mrs. Stevens is a donee of Mr. Marshall's Gift, the first question to be answered is if the GRIT is a donee of Mr. Marshall's Gift.[2]

However, because the GRIT never received a present property interest from Mr. Marshall and the United States has never proved the value of any gift to the GRIT, this Court should reverse the District Court and hold that the GRIT is not a donee of Mr. Marshall's Gift.

**A.    Transferee liability does not attach to Mrs. Stevens because the GRIT did not receive a present property interest from the Redemption**

There is no support for the United States' position that a shareholder of a corporation can be liable for unpaid gift taxes under 26 U.S.C. § 6324(b). That is because no evidence exists to demonstrate that the GRIT received a present property interest from Mr. Marshall as a result of the Redemption.

In *Tilton v. Commissioner*, the Tax Court questioned the existence of transferee liability in a similar indirect gift case, observing that "[w]e have been unable to locate, and respondent has not cited, any case in which a shareholder of a corporation was charged with donee-transferee liability for gift taxes payable on a nonshareholder's transfer to the corporation."  88 T.C. 590, 599 (1987), *acq.*, 1987-2 C.B. 1.  Now over 25 years after *Tilton*, that principle still holds true.  No

---

[2] If the GRIT is determined to be a donee, then the next question is whether the trustee, the remainder beneficiary, or the income beneficiary of the GRIT is the ultimate party to be held responsible under the transferee liability statute.

court appears to have held a shareholder liable as a transferee for the unpaid gift taxes incurred on a transfer to the corporation. That is, until this case.

Courts have recognized that in the classic transferee liability case, the donee can be held liable as a transferee because he received property gratuitously transferred to him from the donor. But in this case, what property did the GRIT, as a shareholder of MPI, receive? Mr. Marshall did not transfer any shares, money, or other property to the GRIT.

When an indirect gift is made to the shareholders of a corporation, any benefit to the shareholders comes in the form of the increased intangible value of their shares in the corporation. *Kincaid v. United States*, 682 F.2d 1220, 1226 (5th Cir. 1982) ("[t]hat unequal exchange served to enhance the value of her sons' voting stock"); *Stinson's Estate v. United States*, 214 F.3d 846, 848 (7th Cir. 2000) ("the gift resulted in a balance sheet improvement . . . and the gift resulted in an increase to the shareholders in their stock value"); *Heringer v. Comm'r*, 235 F.2d 149, 153 (9th Cir. 1956) ("a direct consequence of their action was to proportionately increase the value of petitioners' holdings"); *Tilton*, 88 T.C. at 600 ("In the case of a gift to a small solvent family corporation, as in the Kincaid and Heringer cases, the increased value of the corporation's assets attributable to the transfer would cause a proportionate increase in the value of the corporation's stock."); *Estate of Maggos v. Comm'r*, 79 T.C.M. (CCH) 1861, 1865 (2000) ("The

amount of any such excess augmented the value of [] common stock in PCAB."); *Estate of Trenchard v. Comm'r*, 69 T.C.M. (CCH) 2164, 2174 (1995) ("the excess value naturally accrues to the benefit (and increases the value) of the common shareholders"); *Thompson v. Comm'r*, 42 B.T.A. 121, 123 (1940) ("the petitioner and the other shareholders derived benefit in the extent to which the augmentation of the corporation assets is reflected in the value of their shares").

This intangible enhancement of corporate value provides no individual control over the "gift" to a shareholder and thus involves a "postponement of enjoyment," which makes the gift one of a future interest. *Stinson's Estate*, 214 F.3d at 848; *Heringer*, 235 F.2d at 152 ("the consequent postponement and condition attached to their possession and enjoyment constituted their interests 'future interests'"); *Chanin v. United States*, 393 F.2d 972, 976 (Ct. Cl. 1968) ("Since each stockholder-donee's use, possession or enjoyment of the gift property or its proceeds were so dependent upon contingencies beyond his control, the gifts must be considered of future interests."). Thus, in these indirect gift cases, there is no present property interest transferred to fall into the scope of the transferee liability statute.

The Third Circuit noted the lack of a present interest in *Fidelity Trust Company v. Commissioner*, 141 F.2d 54 (3d Cir. 1944). In *Fidelity Trust*, the donor made gifts of insurance premiums to a life insurance trust that named his

wife and children as its beneficiaries. *Id.* The Internal Revenue Service sought to hold the beneficiaries liable for unpaid gift taxes under the transferee liability statute. *Id.* at 56. The court rejected that theory, noting the "serious obstacle" imposed because the gift was of a future interest. *Id.*

The Third Circuit reasoned that because the value of the gifts could not be immediately accessed by the wife and children, the possibility existed that "they might never realize" the value of the gift. *Id.* After all, "[t]he wife may predecease the settlor; or any child may predecease him without any surviving issue. In that event, the share would go to other beneficiaries, at present unknown both in name and number." *Id.* Thus, the court deemed them "beneficiaries of future interests" and held that they could not be liable as donees. *Id.*

*Fidelity Trust* recognizes that the goal of the transferee liability statute is to hold responsible the party who presently benefitted from the gift. If a party received a future interest, they did not presently benefit from the gift and cannot be held liable as a donee under the transferee liability statute. It is no different in this case. The record and case law makes clear that any value resulting from the Redemption is locked in MPI and the GRIT cannot (and did not) presently benefit from that value. As the GRIT did not receive any present property interest from Mr. Marshall's Gift, it cannot be held liable under the transferee liability statute.

**B.     Transferee liability does not attach to Mrs. Stevens because the United States has not proved the value of any gift to the GRIT**

To the extent that the Court finds that the GRIT did receive property from Mr. Marshall in the Redemption, the United States has not proved the value of the property received.  As stated previously, "[i]n the case of a gift to a small solvent family corporation, . . . the increased value of the corporation's assets attributable to the transfer would usually cause a proportionate increase in the value of the corporation's stock." *Tilton*, 88 T.C. at 600.  And as the party seeking to impose transferee liability, "the burden of proving the amount of the increase, if any, in the value of the [] stock . . . attributable to the transfer" is on the United States. *Id.*

In *Tilton*, the Tax Court measured the extent of transferee liability based on the "enhancement in the value of the stock in the hands of [the donees] . . . ."  Because the corporation's "stock had a zero value both before and after the transfer," the court held that there was no property "that would support the imposition of donee-transferee liability for the gift tax on [the shareholders] under section 6324(b)." *Id.*  Similarly, in *Kincaid v. United States*, this Court accepted the enhancement in value of the corporate stock as the measure of value to support transferee liability.  682 F.2d 1220, 1226 (5th Cir. 1982).

In this case, the United States has presented no evidence of whether or to what extent the value of the GRIT's shares in MPI were enhanced as a result of

the Redemption. It presented no expert opinion on the value of the GRIT's MPI shares before the Redemption and/or after the Redemption. The only evidence the United States has presented is the stipulated value of Mr. Marshall's Gift contained in Mr. Marshall's Tax Court Stipulation. (*See* Sealed Doc. #57) But "proof of the value of [the] transfer alone does not show any enhancement in the value of [the] stock and, consequently, does not show 'the value of the gift to the particular donee sought to be charged.'" *Tilton*, 88 T.C. at 604 (quoting *Want v. Comm'r*, 280 F.2d 777, 781 (2d Cir. 1960); *La Fortune v. Comm'r*, 263 F.2d 186, 194 (10th Cir. 1958); *Baur v. Comm'r*, 145 F.2d 338, 339 (3d Cir. 1944)). Based on this record, there is simply no way of knowing how much, if any, the GRIT's MPI shares increased in value as a result of the Redemption and, thus, the extent to which the GRIT is liable as a transferee.

As the United States has not shown the amount, if any, of the increase in the value of the GRIT's MPI shares as a result of the Redemption, it has not met its burden of proving transferee liability for the GRIT (and thus, Mrs. Stevens as its income beneficiary). Accordingly, this Court should reverse the District Court and render judgment that the Living Trust is not liable under 26 U.S.C. § 6324(b) for Mr. Marshall's unpaid gift tax or, alternatively, remand the case to the District Court to determine the amount, if any, that the GRIT's MPI shares increased in value as a result of the Redemption.

**IV.    Mrs. Stevens -- As the Income Beneficiary of the GRIT -- Is Not a Donee of Mr. Marshall's Gift**

Even if the Court determines that the GRIT is the donee of Mr. Marshall's Gift, that does not mean that Mrs. Stevens, as the income beneficiary of the GRIT, is also a donee of Mr. Marshall's Gift. Instead, as (1) the trustee of a trust has long been held as the transferee, (2) Mrs. Stevens did not receive any benefit from Mr. Marshall's Gift, and (3) no gift occurred because the Redemption satisfied the ordinary course of business exception under Treasury Regulation § 25.2512-8 as to Mrs. Stevens, she is not a donee of Mr. Marshall's Gift and thus not liable under the transferee liability statute.

**A.    The trustee of a trust is the donee of a gift to the trust**

The District Court opined that "[f]or the purposes of donee liability for unpaid gift taxes, courts have not addressed how to determine the identity of the donee." (USCA5 1600) However, that is not exactly true. In *Fidelity Trust v. Commissioner*, the Third Circuit rejected the Internal Revenue Service's attempt to hold beneficiaries of a trust liable for unpaid gift tax under a predecessor of 26 U.S.C. § 6324(b). 141 F.2d 54, 56 (3d Cir. 1944). The Third Circuit listed numerous problems with the Internal Revenue Service's position and reasoned that "[t]hese impediments arise from the notion that the donees of the settlor's beneficence for the purposes of [the transferee liability statute] are the beneficiaries of the trust." *Id*. at 57. The court determined that because "[t]he trust estate was

24

enhanced by the payments; it is the transferee in the common use of the term, as one to whom something is transferred." *Id.* Thus, "[t]he collection procedure authorized by [the transferee liability statute] may be instituted then, as here, against the trustee who as the fiduciary of the transferee, assumes the transferee's duties, the liability being collected from the trust estate." *Id.*

Additional support that the trustee is the donee exists in the decisions of numerous courts addressing estate tax transferee liability. *See Higley v. Comm'r*, 69 F.2d 160 (8th Cir. 1934); *United States v. Johnson*, No. 2:11-CV-00087, 2012 WL 1898873 (D. Utah May 23, 2012); *United States v. Detroit Bank & Trust Co.*, No. 20937, 1962 WL 13125 (E.D. Mich. Feb. 27, 1962); *Garrett v. Comm'r*, 67 T.C.M. (CCH) 2214 (1994); *Englert v. Comm'r*, 32 T.C. 1008 (1959), *acq.* 1960-2 C.B. 3.

The estate tax transferee liability case law is directly applicable, as estate tax and gift tax provisions have long been construed *in pari materia*. *Estate of Sanford v. Comm'r*, 308 U.S. 39, 44 (1939) ("The gift tax was supplementary to the estate tax. The two are in pari materia and must be construed together."); *Robinson v. Comm'r*, 675 F.2d 774, 779 (5th Cir. 1982) ("the estate and gift tax laws are to be applied in pari materia"); *United States v. Gordon*, 406 F.2d 332, 341 (5th Cir. 1969) ("This court has recognized the interrelationship between the estate and gift taxes and has found gift tax cases to be authoritative in estate tax

cases."). This is especially true for this case as this Court, among others, has looked to the estate tax subsection of the transferee liability statute to interpret the gift tax subsection. *See Comm'r v. Chase Manhattan Bank*, 259 F.2d 231, 256 (5th Cir. 1958); *United States v. Botefuhr*, 309 F.3d 1263, 1276 n.9 (10th Cir. 2002) ("Courts have held that the gift tax and estate tax provisions are in pari materia and must be construed together. . . . Consequently, our discussion of donee liability will refer to cases arising under both §§ 6324(a) and 6324(b).") (quotation omitted); *Estate of Mandels v. Comm'r*, 64 T.C. 61, 74 n.6 (1975), *acq.*, 1975-2 C.B. 1 ("While [a previous case] involved the companion provisions to sec. 6324(b) covering liability for estate taxes, sec. 6324(a)(2), these provisions have been interpreted in pari materia.") (citing *Chase Manhattan Bank*, 259 F.2d at 256).

 In the estate tax transferee liability cases, courts have uniformly held that when property is transferred to a trust, it is the trustee of the trust who is considered the transferee for the purposes of imposing transferee liability. *Higley*, 69 F.2d at 163; *Johnson*, 2012 WL 1898873 at *6; *Englert*, 32 T.C. at 1015 ("It was the 'trustee' of the 1941 trust who . . . held the property in question and not the [trust beneficiaries]."); *Garrett*, 67 T.C.M. at 2224-25 ("It was the trustee who received the property . . . and it had the legal title, control, and possession of such property."); *Detroit Bank*, 1962 WL 13125 (applying *Higley* and *Englert* in

holding that the life insurance beneficiaries were not liable under transferee liability statute because they were not trustees of the life insurance trust).

These courts have practically recognized that the goal of the transferee liability statute is to recover the transferred property and the way to effectuate that purpose is to hold liable the party who had control over the transferred property. As the court in *Higley* stated:

> [P]ersonal liability is placed upon those who are in position to dispose of the property and possibly delay or defeat collection. Upon them is placed a strong personal incentive to see that the tax is properly and promptly paid. This burden is placed only upon those . . . who have such legal title, control, and possession as would afford opportunity to dispose of the property primarily liable for the payment of the tax. A trust beneficiary may or may not occupy such a position, dependent upon the terms of the trust, but all opportunity for him to take advantage thereof is anticipated and guarded against by placing upon the trustee a personal liability and attaching the lien to the trust property.

69 F.2d at 163.

This common sense interpretation of the transferee liability statute certainly applies in this case. The GRIT was irrevocable, as no person had the right to terminate or modify it. (Sealed Doc. #55-8 Art. III) In administering the GRIT, it was the responsibility of the Trustee "to hold, manage, and administer the trust corpus." (*Id.* Art. IV) Mrs. Stevens was only entitled to income distributions and had no right to the corpus of the GRIT. Indeed, the Trust Indenture expressly

provided that Mrs. Stevens "shall not be entitled to receive any trust corpus" and that the "Trustee shall not pay to [Mrs. Stevens] or the executor, administrator, or other duly appointed representative of the estate of [Mrs. Stevens], any trust corpus . . ." (*Id.* IV.A)  Under the powers granted under the Trust Indenture, if the United States had proceeded against the GRIT during its term, Mrs. Stevens would not have had any power or authority to satisfy the amount of the liability.

Instead, the United States would have had to sue the trustee of the GRIT to recover any gifted amount.  As it was the GRIT trustee who had legal title, control, and possession of the property during the term of the GRIT (and Mrs. Stevens did not), the GRIT trustee is the transferee under 26 U.S.C. § 6324(b).[3]

Rather than looking to directly applicable case law, the District Court relied on *Helvering v. Hutchings*, 312 U.S. 393 (1941), which decided that the beneficiaries of a trust were donees for purposes of the gift tax annual exclusion

---

[3] Courts have long held that under this theory of personal liability, the trustee is only liable to the extent of the trust assets on hand when transferee liability is asserted. *Want v. Comm'r*, 280 F.2d 777, 782 (2d Cir. 1960).  In this case the GRIT terminated in 1999 and distributed its assets to the remainder beneficiary before transferee liability against Mrs. Stevens was asserted.  In such circumstances, the United States can attempt to use the 10-year gift tax lien or state law fraudulent conveyance statutes to recoup the unpaid gift tax.  *See Higley*, 69 F.2d at 163 ("It is very natural to presume that Congress deemed payment of the tax sufficiently secured by a lien on the property and by imposing a personal liability on the trustee without going further and placing this real hardship on beneficiaries . . . .").  The United States has not asserted transferee liability under either of those theories in this case.  (*See* USCA5 346)

statute.[4]   (USCA5 1600-02)   But as *Fidelity Trust* explained, *Helvering* and its progeny do not apply in the transferee liability context.   That is because "[t]he Congressional intent and practical considerations concerning tax avoidance prompted the conclusion there reached.   It does not follow, we think, that the same considerations preclude the conclusion that, for the purposes of [the transferee liability statute], the trust may be considered the transferee-donee."   141 F.2d at 57. The *Fidelity Trust* court understood that the considerations that animate the transferee liability statute (namely, who is "the actual recipient of the benefits flowing from [the gift]") are entirely different from those behind the gift tax annual exclusion statute (which focuses on who the donor intended to benefit) and should therefore be treated differently.[5]   *Id.*

> **B.    In the alternative, an income beneficiary of a trust is not the transferee of a gift for purposes of the transferee liability statute**

Even if the Court determines that a beneficiary of a trust can be held responsible under the gift tax transferee liability statute, Mrs. Stevens, as the income beneficiary of the GRIT, is not liable for Mr. Marshall's unpaid gift tax as she received no benefit from Mr. Marshall's Gift.

---

[4] The Internal Revenue Code provides that the first $10,000 (adjusted for inflation) of a gift "made to any person by the donor during the calendar year . . . shall not . . . be included in the total amount of gifts [the donor] made during such year."  26 U.S.C. § 2503(b).  Such amount is referred to as the donor's "annual exclusion."

[5] It is worth noting that gifts of future interests are not eligible for the gift tax annual exclusion. *Helvering*, 312 U.S. at 398; 26 U.S.C. § 2503(b)(1).  Thus, if the Court were to apply *Helvering* according to the District Court's logic, the GRIT would not be a donee for the purposes of the gift tax annual exclusion and thus not a donee under the transferee liability statute.

No prior case has determined whether the income beneficiary or the remainder beneficiary of a trust is liable under the transferee liability statute. Thus, the Court's analysis starts with the fundamental nature of Mr. Marshall's Gift and what value it provided. The essential theory behind transferee liability is that it is not a hardship for the donee to pay the donor's tax since the donee gratuitously received value from the donor. At bottom then, transferee liability depends on who is benefitted from the gift, as 26 U.S.C. § 6324(b) expressly provides.

The District Court opined that Mrs. Stevens benefitted from Mr. Marshall's Gift because she received increased distributions from MPI due to the GRIT's increased percentage ownership in MPI after the Redemption. (USCA5 1600-02) The District Court misunderstood the nature of Mr. Marshall's Gift. Mr. Marshall's Gift resulted from the fact that the consideration Mr. Marshall received had a value less than his MPI shares that were redeemed, in essence a below-market sale. It did not result from the fact that after the Redemption, the proportionate ownership percentage of the remaining MPI shareholders was increased. If MPI had paid Mr. Marshall fair market value in the Redemption, the GRIT's ownership percentage in MPI would have increased by the same amount and Mrs. Stevens would have received the same increased distributions as a result of the GRIT's increased ownership. As nothing would

have changed, that demonstrates that the increased ownership percentage alone could not have been a gift.

Instead, the gift component of the Redemption, as discussed *supra*, was that MPI did not have to sufficiently deplete its resources in purchasing Mr. Marshall's shares, leaving the company with a stronger balance sheet than if fair market value had been paid. *See, e.g.*, *Estate of Maggos v. Comm'r*, 79 T.C.M. (CCH) 1861, 1865 (2000) ("Respondent contends that PCAB redeemed decedent's shares in PCAB for less than fair market value . . . .  If the value of the property given up by decedent exceeded the value of the property she received, decedent made a gift for the purposes of the Federal gift tax."); *Estate of Bosca v. Comm'r*, 76 T.C.M. (CCH) 62, 69 (1998) ("A transfer of property by an individual to a corporation for less than adequate and full consideration in money or money's worth generally represents gifts by the individual to the shareholders of the corporation to the extent of each shareholder's proportionate interest in the corporation.  This is no less true when the property transferred to the corporation by the donor is the corporation's own stock.").

Courts have recognized that the only way for shareholders to realize the value of the indirect gift is to (1) liquidate the company or (2) declare a special dividend.  *See Stinson's Estate v. United States*, 214 F.3d 846, 848 (7th Cir. 2000) ("the shareholders could not individually realize the increase without liquidating

the corporation or declaring a dividend"); *Chanin v. United States*, 393 F.2d 972, 976 (Ct. Cl. 1968) ("a stockholder-donee could use, possess or enjoy [the gift] only up a liquidation . . . or a declaration of a [] dividend"); *see also* Dale S. Adams & Robert B. Smith, FEDERAL ESTATE & GIFT TAXATION § 9.04[3][e] ("Courts have held that each individual shareholder's inability to receive the individual's share of the capital without a corporate dividend or a liquidating distribution precludes any present enjoyment of property.").

In this case, the only evidence of dividends is "cash dividends equal to the estimated quarterly tax payments that would be owed by Mrs. Stevens as a result of the GRIT's share of the MPI's dividend income being passed though the GRIT to [Mrs.] Stevens." (*See* Sealed Doc. #79, at 5)  Thus, the increased distributions Mrs. Stevens received were only made to offset her increased tax liability attributable to the GRIT's ownership in MPI -- resulting in a wash to her from an economic perspective.  Mrs. Stevens did not receive any increase in after-tax income as a result of the Redemption.  Her net worth was not increased. Any value from the Redemption remained locked in MPI and could only have been accessed, if ever, by the remainder beneficiary, who was entitled to the corpus of the GRIT after its termination.[6]  Thus, if a class of beneficiary of the GRIT is

---

[6] Under the terms of the GRIT, the trust corpus was the property originally assigned to the trustee, including "all increment thereto, and all increases, conversions, and reinvestments thereof." (Sealed Doc. #55-8 Art. II.B) Thus, any increase in the value of the MPI shares or any

deemed to be a transferee under 26 U.S.C. § 6324(b), it is the remainder beneficiary and not the income beneficiary.

### C.    No gift to Mrs. Stevens occurred because the Redemption was an arm's length transaction in the ordinary course of business as to Mrs. Stevens

A gift includes the transfer of property for "less than full and adequate consideration in money or money's worth."  26 U.S.C. § 2512(b).  However, a transfer of property made in the ordinary course of business, even if for less than full and adequate consideration, is not a gift. 26 C.F.R. § 25.2512-8.  A transfer is in the ordinary course of business if it is bona fide, at arm's length, and free from any donative intent.  *Id.*

In cases involving indirect gifts similar to this one, the ordinary course of business exception did not apply because of a close family relationship between the donor and the shareholders of the corporation.  It was that close family relationship that raised the presumption of a gift.  *See Heringer v. Comm'r,* 235 F.2d 149, 151 (9th Cir. 1956) ("The family context of the transactions created a presumption of gift . . . ."); *Estate of Hitchon v. Comm'r,* 45 T.C. 96, 101 (1965), *acq.,* 1966-2 C.B. 3 (finding a gift redemption based only on the "close family relationship"); *Estate of Trenchard v. Comm'r,* 69 T.C.M. (CCH) 2164, 2170

---

liquidating distribution would accrue to the benefit of the trust estate and, therefore, to the remainder beneficiary who would receive the trust corpus upon termination of the GRIT. (*Id.* Art. IV.E)  Similarly, under the Kansas Uniform Principal and Income Act, any increases in the value of the trust corpus remains corpus.  K.S.A. 58-9-404(2).

(1995) ("We closely scrutinize a transfer involving related parties, such as family members and their closely held corporation, to determine whether the transfer is a gift. We presume that such a transfer is a gift.").

In those cases, the close family relationship and the accompanying gift presumption were crucial, as every business transaction that does not take place at exactly fair market value will not result in a gift. "The tax law does not insist that a bad bargain be turned into a gift by default." *Fehrs v. United States*, Nos. 118-72 & 119-72, 1979 WL 3946, at *5 (Ct. Cl. Nov. 27, 1979). Instead, when transactions, such as "[r]edemptions[,] are carried out in the ordinary course of business . . . [they] are not within the intended scope of the gift tax." *Id.*

But when a court must "deal entirely with an intra-family transfer, a circumstance which has always prompted special scrutiny by the courts precisely because the genuineness of the transaction cannot reasonably be inferred from any circumstantial assurances of business purpose," the analysis shifts. *Id.* Then, the only facts a court has to base its decision on is a close family relationship and when "the visible aspects of the transaction do not negate the existence of donative intent, there exists no ground upon which to conclude that the transaction was prompted solely by business considerations." *Id.*

In this case, the United States has only presented evidence consisting of (1) Mr. Marshall's Tax Court Stipulation, which provided that the fair market

value of his MPI shares was greater than the price paid to him in the Redemption, and (2) a family relationship between Mr. Marshall and other shareholders. (Sealed Doc. #57)  That evidence is claimed to establish that Mr. Marshall made a gift to Mrs. Stevens.  But a close family relationship did not exist between Mr. Marshall and Mrs. Stevens.  Mr. Marshall and Mrs. Stevens divorced in 1960, almost 35 years before the Redemption.  (USCA5 350 ¶ 13)  During that 35-year period, Mr. Marshall had been married again, widowed, and then married a third time.  (USCA5 351 ¶ 15)  In the meantime, Mrs. Stevens had moved on with her life, becoming an ordained minister and also marrying again.  (USCA5 503)  Such facts do not amount to a close family relationship where a donative motive can be presumed.

Without the close family relationship that gives rise to the presumption of a gift, the United States has no evidence that Mr. Marshall intended to make a gift to Mrs. Stevens.  Thus, the Redemption occurred at arm's length and was free of donative intent, implicating the ordinary course of business exception. This Court should therefore reverse the District Court and render judgment that the Living Trust is not liable under 26 U.S.C. § 6324(b) for Mr. Marshall's unpaid gift tax.

**V.    To the Extent Mrs. Stevens Is a Donee, the Amount of Her Liability Is Capped at the Value of Any Gift She Received**

Despite clear statutory language limiting a transferee's liability to the value of the gift received, the District Court held that interest on the donee's personal liability can cause the donee's liability to exceed the value of the gift they received.  (USCA5 1694-96)   Accordingly, to the extent Mrs. Stevens is liable under the transferee liability statute, this Court should reverse the District Court and hold that the value of the gift she received is the absolute limit of her liability.

In construing a statute, this Court starts with its plain meaning. *United States v. Renda*, 709 F.3d 472, 478 (5th Cir. 2013).  And when the plain meaning of the statute is unambiguous, this Court will not resort to extrinsic interpretive aids such as legislative history.  *Guilzon v. Comm'r*, 985 F.2d 819, 823 n.11 (5th Cir. 1993).

The plain language of 26 U.S.C. § 6324(b) provides that "donee of any gift shall be personally liable for such tax to the extent of the value of such gift."  In a separate section unrelated to the transferee liability statutes, the Internal Revenue Code further provides that:

> Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. ***Any reference to this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.***

26 U.S.C. § 6601(e)(1) (emphasis added).  Reading § 6324(b) and § 6601(e)(1) together provides that the Internal Revenue Code unambiguously limits both the tax and interest payable by a transferee of a gift to the value of the gift received. The Third Circuit and the Eighth Circuit have each relied on this plain meaning interpretation in holding that a transferee is only liable for what they received. *Poinier v. Comm'r*, 858 F.2d 917, 920 (3d Cir. 1988) ("This limitation on donee liability is both consistent with the plain language of section 6324(b) and sensible."); *Baptiste v. Comm'r*, 29 F.3d 433, 437 (8th Cir. 1994) ("Tax liability includes liability for interest, and thus, § 6324(a)(2) clearly contemplates that the limitations imposed upon a transferee's tax liability also encompass the transferee's liability for interest.").

Relying on policy rationales as stated in *Baptiste v. Commissioner*, 29 F.3d 1533 (11th Cir. 1994), the District Court held that the transferee had an "independent liability" for the tax owed and the statutory cap did not apply. (USCA5 1696)  Such an interpretation is not supported by the plain text of the Internal Revenue Code as "no specific code provision impos[es] such an independent liability on a transferee." *Poinier*, 858 F.2d at 920.  Instead, "it is well established that the general transferee liability provision 'neither creates nor defines a substantive liability but provides merely a new procedure by which the

Government may collect taxes.'" *Id.* (quoting *Comm'r v. Stern*, 357 U.S. 39, 42 (1958)).

This Court should follow the plain meaning of 26 U.S.C. § 6324(b) and the reasoning of the Third and Eighth Circuits and reject the District Court's attempt to hold a transferee liable beyond the value of the gift to them.

## CONCLUSION

For the foregoing reasons, Preston Marshall, Co-Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust, respectfully requests that this Court reverse the District Court and (1) render judgment that Mrs. Stevens (and the Living Trust) is not liable for unpaid gift tax under 26 U.S.C. § 6324(b) or (2) alternatively, remand this case to the District Court.

Respectfully submitted,

s/ John W. Porter
John W. Porter
(Texas State Bar No. 16149990)
Jeffrey D. Watters, Jr.
(Texas State Bar No. 24066695)
Baker Botts L.L.P.
910 Louisiana Street
Houston, Texas 77002
(713) 229-1597
(713) 229-2797 (fax)

COUNSEL FOR APPELLANT, PRESTON MARSHALL, CO-TRUSTEE OF THE ELEANOR PIERCE (MARSHALL) STEVENS LIVING TRUST

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2013, a copy of the foregoing document was filed and uploaded to the CM/ECF system, which will send notification of such filing to the following counsel:

Ivan C. Dale
United States Department of Justice
Tax Division, Appellate Section
P.O. Box 502
Washington, D.C.  20044

William R. Cousins, III
Stephen A. Beck
Robert Don Collier
Brian J. Spiegel
Meadows, Collier, Reed, Cousins,
Crouch & Ungerman, L.L.P.
901 Main Street, Suite 3700
Dallas, TX  75202-0000

Emily A. Parker
Eric Gordon Reis
Scott Patrick Stolley
Thomson & Knight L.L.P.
1722 Routh Street, Suite 1500
Dallas, Texas  75201

I further certify that on April 22, 2013, a copy of the foregoing document was served on the following counsel by FedEx, overnight delivery to:

Don Jackson
Ware, Jackson, Lee & Chambers, LLP
2929 Allen Parkway
42nd Floor
Houston, TX  77019

Andrew L. Sobotka
U.S. Division of Justice
717 N. Harwood Street, Suite 400
Dallas, TX  75201

Russell Hardin, Jr.
Rusty Hardin & Associates
1401 McKinney Street, Suite 2250
Houston, TX  77010

/s/ Jeffrey D. Watters, Jr.
Jeffrey D. Watters, Jr.

## CERTIFICATE OF COMPLIANCE

Pursuant to 5TH CIR. R. 32.2.7(c), undersigned counsel certifies that this brief complies with the type-volume limitations of 5TH CIR. R. 32.2.7(b).

1. Exclusive of the portions exempted by 5TH CIR. R. 32.2.7(b)(3), this brief contains 8,686 words printed in a proportionally spaced typeface.

2. This brief is printed in a proportionally spaced, serif typeface using Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes produced by Microsoft Word 2003 software.

3. Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4. Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5TH CIR. R. 32.2.7, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

s/ John W. Porter<br>John W. Porter