NO. 12-20804

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**UNITED STATES OF AMERICA**
*Plaintiffs/Appellants,*

v.

**ELAINE T. MARSHALL, Individually, as Executrix of the
Estate of E. Pierce Marshall, as Trustee of the E. Pierce
Marshall, Jr. Trust and as Trustee of the Preston Marshall
Trust; FINLEY L. HILLIARD, Individually, as former executor
of the Estate of James Howard Marshall, II and as former
Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust;
E. PIERCE MARSHALL, JR., Individually, and as Executor of
the Estate of Eleanor Pierce Stevens; PRESTON MARSHALL,
Co-Trustee of the Eleanor Pierce (Marshall) Stevens Living
Trust,**

*Defendant/Appellee.*

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION
HONORABLE GRAY H. MILLER, JUDGE PRESIDING**

---

**BRIEF OF AMICUS CURIAE TAX FOUNDATION & LAW PROFESSORS
IN SUPPORT OF APPELLANTS AND URGING REVERSAL**

---

Naman, Howell, Smith & Lee, PLLC
Marcus J. Brooks
State Bar No. 24040579
Joe Rivera
State Bar No. 24065981
Attorneys for Amicus Curiae Tax Foundation

400 Austin Ave., Ste. 800
P.O. Box 1470
Waco, Texas 76701
T: (254) 755-4100
F: (254) 754-6331

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to *Federal Rules of Appellate Procedure* 26.1 & 29, the Tax Foundation provides this Corporate Disclosure Statement. The Tax Foundation is a 501(c)(3) organization. The Tax Foundation does not have any parent corporation, nor does any publicly held corporation own 10% or more of its stock.

# **TABLE OF CONTENTS**

**PAGE**

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF CONTENTS........................................................................... iii

TABLE OF AUTHORITIES ....................................................................... v

STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE .......... 1

CREATION OF THE AMICUS BRIEF ............................................................. 2

SUMMARY OF THE ARGUMENT……………………………………………2

ARGUMENT……………………………………………………………………3

   I.   The Underlying Nature of the Gift Tax ........................................................... 4

       A. Background on the Taxing Power............................................................. 4

       B. The Gift Tax is an Excise Tax on a Gratuitous Transfer of Property ........ 6

       C. The Donor is Primarily Liable for the Tax; the Donee May Have
           Secondary Liability for the Tax………………………………………8

   II.   The Nature of Donee "Liability" Must Be a Tax Debt .................................. 11

   III.   The District Court Misapplied a Procedural Statute and the Concept of
       "Government Property," as it Relates to Donee Liability…………….....16

       A. Section 6901 is Procedural in Nature....................................................... 16

       B. Donee Has Not Possessed Government Property;
         the Policy of Limiting Donee Liability to Property Received is
         Reasonable .............................................................................................. 19

          i. The Donees Did Not Possess Government Property............................ 19

ii.  Capping Donee Liability at the Value of the Gift Was a Reasonable
     Policy Decision ............................................................................21

     a.  Section 6324(b) Strikes a Balance of Burdens and Limitations on
         Both Donees and the Government…………………………….....23

     b.  Section 6901 Is Not Superfluous...…………………………..23

iii. Remedial Provisions, Such as Section 6324, Are to be Construed
     Liberally for Taxpayers; Meanwhile, Tax Burdens Cannot
     Be Implied ............................................................................25

CONCLUSION .........................................................................26

CERTIFICATE OF SERVICE ..............................................................27

CERTIFICATE OF COMPLIANCE ......................................................28

# TABLE OF AUTHORITIES

**CASES**             **PAGE**

*America Online, Inc. v. United States*, 64 Fed. Cl. 571(Fed. Cl. 2005) ..................25

*Baptiste v. Comm'r*, 29 F.3d 1533 (11th Cir. 1994) ........................................ passim

*Baptiste v. Comm'r*, 29 F.3d 433 (8th Cir. 1994)…………………………..………..15

*Bogle v. Comm'r*, T.C. Memo 1983-587 ................................................................10

*Bonwit Teller & Co. v. United States*, 283 U.S. 258 (1931)...................................25

*Comm'r v. Stern*, 357 U.S. 39 (1958) .....................................................................18

*Diedrich v. Comm'r*, 457 U.S. 191 (1982)........................................................ 10-13

*Flint v. Stone Tracy Co.*, 220 U.S. 107 (1911) ..........................................................5

*Gould v. Gould*, 245 U.S. 151 (1917).....................................................................25

*Hylton v. United States*, 3 U.S. (3 Dall.) 171 (1796)............................................. 7-8

*Mayo Foundation for Medical Ed. and Research v. United States*,
    131 S. Ct. 704 (2011) ......................................................................................17

*Poinier v. Comm'r*, 858 F.2d 917 (3d Cir. 1988) ....................................... 14-15, 22

*Pollock v. Farmers' Loan & Trust Co.*, 158 U.S. 601 (1895) ...................................5

*Tax Ease Funding, L.P. v. Thompson (In re Kizzee-Jordan)*, 626 F.3d 239
    (5th Cir. 2010)..................................................................................................20

*Tex. Bank & Trust Co. of Dallas v. Custom Leasing, Inc.*, 402 S.W.2d 926
    (Tex. Civ. App.—Amarillo 1966, no writ).......................................................20

## STATUTES

Revenue Act of 1926, Pub. L. No. 69-20, §280 ......................................17

Revenue Act of 1926, Pub. L. No. 69-20, §315 ....................................18

Revenue Act of 1932, §510, 47 Stat. 249 ............................................18

26 U.S.C. §61……………………………………………………....24, 25

26 U.S.C. §71……………………………………………………..24

26 U.S.C. §83…………………………………………………….25

26 U.S.C. §2501…………………………………………..………7, 23

26 U.S.C. §2502……………………………………………...7-8, 10

26 U.S.C. §2513………………………………………………..11

26 U.S.C. §4401 ………………………………………………...6

26 U.S.C. §4942 ………………………………………………...6

26 U.S.C. §4971 ………………………………………………...6

26 U.S.C. §4980B…………………………………………………6

26 U.S.C. §4980D…………………………………………………6

26 U.S.C. §4980F……………………………………….…………6

26 U.S.C. §4980G…………………………………………………6

26 U.S.C. §5000A……………………………………………...6

26 U.S.C. §5672....………………………………………………...6

26 U. S. C. §6324.......................................................... *passim*

26 U.S.C. §6601(e)(1)……………………………………………………….*passim*

26 U.S.C. §6901....………………………………………………………….*passim*

26 U.S.C. §7806....……………………………………………………………...8

31 U.S.C. §192.......……………………………………………………..........9

## **OTHER AUTHORITIES**

United States Constitution……..……………………………………..........4-5

Federal Rules of Appellate Procedure 26.1 and 29 ...................................2

Steven J. Willis, "Some Limits of Tax Mitigation, Equitable Recoupment, and
    Res Judicata: Reflections Prompted by *Chertkof v. United States*," 38 TAX.
    LAWYER 625, 648-50 (1985)…………………………………..……….......……...……..8

Treas. Reg. §25.2502-2…………………………………………..…………………8-9

Treas. Reg. §301.6901-1…………………………………………………..…..16-17

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE

The Tax Foundation is a non-partisan tax research group based in Washington, D.C.  The Tax Foundation, founded in 1937, seeks to promote simple, sensible tax policy at the federal, state, and local levels by, among other things, providing economically principled analysis of tax policy issues.  The issue before the Court will provide important precedent in the area of donee liability with respect to gift taxes.  Specifically, if the Court affirms the district court or otherwise adopts the Government's position, it would set precedent providing that a recipient of a gift can be exposed to liability for tax and interest far in excess of the value of the gift itself. The Tax Foundation believes that such a result is not supported by the relevant legal structure and authorities, nor by sound tax and economic policy. Therefore, the Tax Foundation seeks to provide, through an amicus curiae brief, an analysis of the relevant authorities that should be helpful to the Court in making a decision in this matter.

The Amici Curiae professors supporting this brief are listed below. Institutional affiliations are provided for identification purposes only, and imply no endorsement of the views expressed herein by any of the institutions or organizations listed.

Marcus J. Brooks is a partner with the law firm of Naman, Howell, Smith & Lee, PLLC. He is also an adjunct professor at Baylor University School of Law and in Baylor University's Masters of Taxation Program, and he has published numerous articles with respect to taxation and tax procedure.

Thomas M. Featherston, Jr., is the Mills Cox Professor of Law at the Baylor University School of Law. He teaches and has written extensively on trusts and estates law, including estate, gift and generation skipping taxation.

Michael B. Lang is Professor of Law at Chapman University School of Law. He has written extensively about taxation and the regulation of tax practice.

Philip Manns is Professor of Law at Liberty University School of Law. He teaches and has written extensively on taxation and estate planning.

Ron Rotunda is the Doy and Dee Henley Chair and Distinguished Professor of Jurisprudence at Chapman University School of Law.

Steven J. Willis is Professor of Law at the University of Florida College of Law.

Pursuant to *Federal Rule of Civil Procedure* 29(a) and (c)(4), the Tax Foundation certifies that all parties have consented to the filing of this amicus curiae brief.

## CREATION OF THE AMICUS BRIEF

Pursuant to *Federal Rule of Civil Procedure* 29(c)(5), the Tax Foundation certifies that this amicus curiae brief was authored in whole by its counsel of record.

## SUMMARY OF THE ARGUMENT

The District Court erred in imposing a gift tax liability on the donees in excess of the value of the gift, *i.e.* in excess of the statutory limitation contained in section 6324(b). The foundation for this error is the District Court's incorrect

2

conclusion that the donees are responsible for some liability separate and apart from the statutory gift tax liability, for which the donees are secondarily liable. The District Court's error appears to be based on its misunderstanding of some important conceptual issues relating to the transfer tax regime.

1. Misunderstanding the nature of the gift tax as an excise on a person rather than a gratuitous transfer of property.

2. Wrongly classifying the nature of the donee's "liability" as some sort of non-tax debt, somehow separate and apart from the gift tax liability under section 6324(b).

3. Wrongly conflating procedural and substantive provisions of the Code.

4. Wrongly concluding that a tax lien converts private property into government property.

5. Failing to follow the statutory construction principles that remedial provisions are to be liberally construed , while taxability must be statutorily explicit, not implied.

## <u>ARGUMENT & AUTHORITIES</u>

For the sake of brevity, this brief does not endeavor to set forth the factual and procedural background of this appeal, but instead refers the Court to the factual and procedural background set forth in the Appellants' Briefs, already filed with this Court.

## I.    The Underlying Nature of the Gift Tax

Both the District Court in this case and the Eleventh Circuit in *Baptiste v. Comm'r*, 29 F.3d 1533 (11th Cir. 1994), misconstrued a transfer tax as an excise tax on a person. The District Court considered a gift tax liability, while the Eleventh Circuit considered an estate tax liability. Each of these taxes are imposed by Subtitle B of the Internal Revenue Code.   Each Court supposed two separate obligations existed: one owed by the transferor and the other by the transferee. That conclusion is fundamentally flawed. Congress laid a single gift tax (or estate tax in the case of *Baptiste*).   It then required multiple persons to pay the tax and provided ordering provisions regarding who was primarily liable and who had a lower or later responsibility.

The gift tax is an excise tax imposed on the gratuitous transfer of property by a donor to a donee. The donor is primarily liable for the tax, and the donee is secondarily liable.  To fully understand this, some background is useful.

### A.  Background on the Taxing Power.

Congressional taxing authority stems from the Article I of the United States Constitution:

> Section 2: Representatives and direct Taxes shall be apportioned among the several States.

Section 8: The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises . . .; but all Duties, Imposts and Excises shall be uniform throughout the United States;

Section 9: No capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken. . . . No Tax or Duty shall be laid on Articles exported from any State.

Traditionally, scholars have summarized the taxing power as follows. Congress may levy either "Direct" or "Indirect" taxes. Direct taxes must be apportioned among the states by population. Indirect taxes must be uniform. Direct taxes fall on a person or property and are not passed on to another. Indirect taxes may "fall on" one person, but can often be passed onto another. Of significance here, Congress lays indirect taxes on transfers and then requires persons to pay them.

In 1895, the Supreme Court found the income tax to be an un-apportioned direct tax and thus unconstitutional.[1] In response, States ratified the 16th amendment, obviating the apportionment requirement for a direct tax on derived income.

Excises are among the major types of taxes imposed. They include the taxes on corporate income,[2] estates and gifts, and gambling.[3] The United States excise

---

[1] *Pollock v. Farmers' Loan & Trust Co.*, 158 U.S. 601 (1895).

[2] *Flint v. Stone Tracy Co.*, 220 U.S. 107, 150-51 (1911) (the corporate "income" tax may appear to be a tax on "income"; however, it is not a direct tax subject to apportionment; instead, it is an indirect on the privilege of doing business as a corporation - tax subject to uniformity). The

tax system is complex. The Internal Revenue Code imposes approximately 98 excise taxes; most appear in Subtitle B, Estate and Gift Taxes, Subtitle C, Employment Taxes,[4] Subtitle D, Miscellaneous Excise Taxes, or Subtitle E, Alcohol, Tobacco, and Certain Other Excise Taxes.

Almost all tax the use of property, the transfer of property, or an activity. Nine[5] tax failures to act. No failure-to-act tax is laid on an individual, which would make it direct; instead, Congress lays the tax on the transaction and then provides for payment.

### B. The Gift Tax is an Excise Tax on a Gratuitous Transfer of Property

In 1794, Congress imposed a "tax on carriages." Many viewed this as an improperly apportioned direct tax: it appeared to be a property or wealth tax and it clearly affected states differently. In some states, many people had carriages, while in others, few were so lucky. The Court, however, designated the tax a duty on the

---

Court explained: "Excises are "taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges. Cooley, Const. Lim., 7th ed., 680. " *Id*. at 151.

[3] I.R.C. §4401.

[4] SUBTITLE C includes both Excise and income taxes.  Generally, the taxes imposed on employers are Excise Taxes while those imposed on individuals are income taxes.

[5] I.R.C. §§4942 (Failure to Distribute Income by a Private Foundation); 4971 (Failure to Meet Minimum Funding Standards by Qualified Plans); 4980B (Failure to Satisfy Continuation Coverage Requirements of Group Health Plans); 4980D (Failure to Meet Certain Group Health Plan Requirements); 4980E (Failure of Employer to Make Comparable Archer MSA Contributions); 4980F (Failure of Applicable Plans Reducing Benefit Accruals to Satisfy Notice Requirements); 4980G (Failure of Employer to Make Comparable Health Savings Account Contributions); 5672 (Penalty for Failure of Brewer to Comply with Requirements and to Keep Records and File Returns); 5000A (Failure to Acquire Proper Health Coverage).

use of carriages. *Hylton v. United States*, 3 U.S. (3 Dall.) 171 (1796). The Court approved of a tax on consumption as an indirect tax – one placed on the people by their choice to consume. *Id*. at 180. As a result, it merely had to be uniform to be constitutional. The *Hylton* case illustrates the nature of an excise or duty, each of which applies to transactions, to the use of property, or to the exercise of a privilege, rather than directly on people.

Similarly, the gift tax at issue is an indirect excise on the gratuitous transfer of property from one person to another. It is not a tax on a person, which would cause it to be direct and thus subject to apportionment, which it would fail. To be properly apportioned a tax must apply *per capita* the same in every state. That would be an impossible burden for a tax on gifts, which undoubtedly vary substantially *per capita* from state to state.

Section 2501(a)(1) expressly lays the tax on gifts, not on people:

> A <u>tax</u>, computed as provided in section 2502, is <u>hereby imposed</u> for each calendar year <u>on the transfer</u> of property by gift during such calendar year by any individual resident or nonresident.

(emphasis added) Section 2502(c) then requires the donor to pay the tax: "The tax imposed by section 2501 shall be paid by the donor."

Importantly, subsection 2502(c) does not lay the tax on the donor; instead, it merely makes the donor primarily liable for the tax. Section 6324(b) makes the donee also liable for the tax. Each is a method of collecting the tax as each makes

someone liable and, through the same or another section, provides procedural rules for collection. Hence, Congress lays the tax on the transfer and then separately provides for payment by or collection from various persons.

### C. The Donor is Primarily Liable for the Tax; the Donee May Have Secondary Liability for the Tax

Section 2502(c) provides that the donor shall pay the tax. If the donor dies before the tax is paid, the amount of the tax is a debt due from the decedent's estate, and his executor or administrator is responsible for its payment out of the estate.[6] If there is no duly qualified executor or administrator, the heirs, legatees, devisees, and distributees are liable for and required to pay the tax to the extent of the value of their inheritances, bequests, devises, or distributive shares of the donor's estate. *Id.* Enter section 6324.

That the donor is "primarily" liable for the tax – and that the donee is secondarily liable for the tax – is recognized by the Treasury Regulations. Section 25.2502-2, which lays out this hierarchy of collection, is entitled "Donor primarily liable for tax."[7]

---

[6] Treas. Reg. 25.2502-2.

[7] Although section 7806 precludes the use of Code section titles for substantive analysis, no such provision exists with regard to treasury regulations. The statutory prescription against the use of organization and descriptive information arose in 1939. The 1921 Code was essentially a mess, so the 1939 code was proposed to organize it. To assuage fears that the new act contained substantive changes, Congress inserted the forerunner to section 7806. *See*, Steven J. Willis, "Some Limits of Tax Mitigation, Equitable Recoupment, and Res Judicata: Reflections Prompted by Chertkof v. United States", 38 Tax. Lawyer 625, 648-50 (1985). In contrast,

The title of the regulation is significant: the donor's liability for the tax is primary; by implication, others' liability for the tax is secondary. Critically, both are substantively the same: liability for a tax. Contrary to both the District Court and the Eleventh Circuit in *Baptiste*, nothing suggests the donor liability is for a tax while the donee liability is for a debt other than a tax.

Indeed, section 6324 itself speaks of the donee's liability for the tax: "If the tax is not paid when due, the donee of any gift shall be personally liable *for such tax* to the extent of the value of such gift." (emphasis added) Such limitation necessarily applies to any statutory interest on the tax. I.R.C. §6601(e)(1) ("Any reference in this title … to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.").

In contrast, the Treasury Regulation[8] speaks of the executor's liability as a debt imposed by section 3467 of the Revised Statutes (31 U.S.C. 192), which reads as follows:

> Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid.

---

Treasury Regulations exist to elucidate the meaning of statutes. No reason exists to ignore descriptive material.

[8] Treas. Reg. section 25.2502-2.

9

Arguably, the executor liability is a non-tax debt imposed by a statute other than the Internal Revenue Code. The liability of the donee, however, is consistently referred to as a tax and is, in fact, imposed by the Code.

The United States Supreme Court and the Tax Court have recognized the nature of the gift tax as an excise on a transfer for which the donor is primarily liable. *Diedrich v. Comm'r*, 457 U.S. 191 (1982); *see also, e.g., Bogle v. Comm'r*, T.C. Memo 1983-587 (applying *Diedrich*). At issue in *Diedrich* were the tax consequences to the donor of conditioning the gift on the donee paying the related gift tax. More specifically, the issue was whether the donee's payment of the gift tax results in taxable income to the donor. *Diedrich*, 457 U.S. at 197. The Supreme Court held that it did, explaining that "[w]hen a donor makes a gift to a donee, a 'debt' to the United States for the amount of the gift tax is incurred." *Id.* "When a gift is made, the gift tax liability falls on the donor under 26 U. S. C. § 2502(d)." "The donee is secondarily responsible for payment of the gift tax," becoming liable to pay the tax only "should the donor fail to pay the tax." *Id.* at 197 n.6 (citing 26 U. S. C. § 6324(b)). Consequently, when the donee pays the gift tax, the donor, as the primary obligor, has had an indebtedness discharged and must recognize a taxable economic benefit as a result. *Id.*

Thus the District Court is incorrect in styling the donee liability as a distinct liability from that of the donor. Both the donor and donee liabilities are predicated

on a single tax imposed on the gift. Rather than make the two responsible parties jointly and severally liable (as with split gifts by husbands and wives[9]), the Code and regulations make the donor primarily liable and others secondarily liable. Both, however, are liable for the tax. Thus, the section 6324 cap on donee liability, limiting it to the amount of the gift must apply. No second liability of the donee exists.

## II.    The Nature of Donee "Liability" Must Be a Tax Debt.

In reaching the conclusion that a donee can be held personally liable for an amount in excess of the value of the gift, both the District Court and the Eleventh Circuit first conclude that the transferee liability is not a tax. But neither provide any authority for the source of such liability, other than as a tax.

Executor liability for the gift tax not paid by the executor's decedent is imposed by a statute outside the Internal Revenue Code. The executor has an obligation to pay debts of the estate, including gift taxes owed by the decedent; if the executor transfers property in his fiduciary capacity in a way that harms the government's claim, a statute makes the executor responsible.[10]

---

[9]I.R.C. §2513(d). Surely the government would not claim a joint gift by husband and wife amounts to two separate tax liabilities. In fact, one liability exists with two persons responsible for it. The distinction between husband and wife liability versus donor/donee liability involves the primacy of the liability, not the existence of two separate debts.

[10] One might legitimately ask where Congress obtained the power to impose such a liability.  The Constitution created an Executive with power to spend for the general welfare. Implicitly, that grants the power to manage the monies of the United States. Under the necessary and proper

Donee liability, however, is another matter. It does not generally result because of any action taken by the donee. The donee is simply the recipient of the gift. Here, the donees were simply shareholders of the corporation who found the value of their shares increased. As the Supreme Court explained in *Diedrich,* the secondary "responsibility of the donee [for the gift tax] is analogous to a lien," having followed the gift to the donee. *Diedrich*, 457 U.S. at 197, n.6.

As the Supreme Court explained in *Diedrich,* based on the plain language of section 6324, "[t]he donee is secondarily responsible for payment of *the gift tax* should the donor fail to pay the tax. 26 U. S. C. § 6324(b)." *Diedrich*, 457 U.S. at 197, n.6 (emphasis added).  The Supreme Court's explanation of the nature and operation of the gift tax necessarily rebuts the notion that the donee's liability is an obligation of some general sort, rather than a secondary liability for the gift tax. Contrary to the conclusions of both the District Court here and the Eleventh Circuit in *Baptiste*, Congress chose to cap the donee's liability. "The donee's liability . . . is limited to the value of the gift."  *Diedrich*, 457 U.S. at 197 n.6 (citing section 6324(b)). This limit also necessarily applies to statutory interest on the tax, as section 6601(e)(1) makes clear that "[a]ny reference in this title … to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax."

clause, the executive would reasonably need the power to create a debt owed by an executor who mismanages property to the detriment of the United States.

If, when the donee paid the gift tax liability, the donee was not paying a liability primarily of the donor, but was instead paying some other independent obligation of the donee itself arising from some unnamed statutory source or "general federal law," then *Diedrich*'s holding that the donor recognized and economic benefit and thus is taxable on that action is wrong. If the donee has two liabilities, who is to say that the donee is paying the gift tax liability primarily of the donor, rather than paying the donee's own liability "of a general sort imposed by federal law?" If that is the case, why would the payment of this other liability result in income to the donor?

The IRS is happy to allege that the donee is paying the donor's gift tax liability (and not the donee's own independent liability), when that results in income taxes to the donor and more money in the government's coffers. When, however, the government's coffers benefit from the donee's payment of the gift tax liability actually being the payment of some other independent liability of the donee, the IRS changes its tune and alleges that the donee is paying some other kind of liability. The IRS cannot have it both ways. There is only one liability. That is the gift tax liability, for which the donor is primarily responsible and the donee is secondarily responsible. That gift tax liability is quintessentially a tax, and as such is subject to the value-of-the-gift limit of section 6324.

13

Further, Congress cannot impose some other non-tax liability on the donee without some other Constitutionally permissible statutory basis for this second liability. *Cf. Baptiste*, 29 F.3d at 1541. No one has identified any enumerated power – other than the taxing power – that grants Congress the ability to create a liability to the government owed by such a "donee." Such a person has taken no action affecting the rights or property of the United States.

But, even more fundamentally, Congress has not purported to have done so. All of the statutes at issue here exist in the Internal Revenue Code, and provide a hierarchy of liability for an excise tax (the gift tax) and a mechanism for collection of that tax.

The Eleventh Circuit stated in *Baptiste*:

> The question is whether this is a tax liability as opposed to a personal liability of the *general sort imposed by federal law*. We opine that it is the latter.[11]

The District Court below relied on that language.

Neither court cited any authority, other than a tax statute, for the obligation. Indeed, both the 3rd and 8th Circuits pointed out the difficulty of articulating the government's argument that donee liability is a general obligation, independent of the gift tax, because the government can point to no specific Code provision imposing liability independent of the gift tax on the donee. *Poinier v. Comm'r*, 858

---

[11] *Baptiste,* 29 F.3d at 1541 (emphasis added).

F.2d 917, 920 (3d Cir. 1988); *Baptiste v. Comm'r*, 29 F.3d 433, 438 (8th Cir. 1994). Thus, these courts properly concluded that there is only one liability, it is a tax liability and that the donee is secondarily liable for the tax, to the extent of the value of the gift, as provided in section 6324(b). *Baptiste*, 29 F.3d at 438; *Poinier*, 858 F.2d 920-22. If the District Court and the Eleventh Circuit suggest that some enumerated power other than the taxing power supports the obligation, they should have identified it.

Further, if donee transferee liability is not pursuant to the taxing power, then it neither need be uniform nor apportioned. Does the Court really want to hold that Congress has the power to create a non-uniform system of asserting transferee liability somehow arising out of tax liabilities, although not being a tax liability? Courts should be wary of discovering heretofore unknown powers of Congress to impose obligations on individuals unless those obligations are grounded in an enumerated power.

These Constitutional issues are not raised by a correct reading of the statutes at issue. Congress established an excise tax on a transfer (the gift), provided a hierarchy of liability (primary liability for the donor, secondary liability for the done) and methods of collection.

**III.** **The District Court Misapplied a Procedural Statute and the Concept of "Government Property," as it Relates to Donee Liability.**

A. Section 6901 is Procedural in Nature

Section 6901 and the Treasury Regulations promulgated thereunder make plain that the language at issue is procedural in nature.

The actual section 6901(a) language is as follows:

(a) Method of collection
The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred.

"Method of Collection" is plainly indicative of a procedural statute. The Treasury Regulations provide further clarity, beginning with the title, "*Procedure in the case of transferred assets.*" Treas. Reg. §301.6901-1. The regulation also provides further clarity with respect to the term "provisions," and states, *inter alia*:

Sec. 301.6901-1 Procedure in the case of transferred assets.
(a) Method of collection
…
(3) Applicable provisions. The provisions of the Code made applicable by section 6901(a) to the liability of a transferee or fiduciary referred to in subparagraphs (1) and (2) of this paragraph (a), include the provisions relating to:
(i) Delinquency in payment after notice and demand and the amount of interest attaching because of such delinquency; (ii) The authorization of distraint and proceedings in court for collection; (iii) The prohibition of claims and suits for refund; and (iv) In any instance in which the liability of a transferee or fiduciary is one referred to in subparagraph (1) of this paragraph (a), the filing of a petition with the Tax Court of the United States and the filing of a petition for review of the Tax Court's decision.

16

For detailed provisions relating to assessments, collections, and refunds, see chapters 63, 64, and 65 of the Code, respectively.

Paragraph (3) lists the relevant "provisions," each of which is procedural. None involve the levying of interest. The regulation further cross references "detailed provisions" to procedural Internal Revenue Code chapters. Section 6601 – providing for interest on taxes – appears in Chapter 67 of the Internal Revenue Code, and is manifestly not on the list. These regulations are entitled to *Chevron* deference. *Mayo Foundation for Medical Ed. and Research v. United States*, 131 S. Ct. 704 (2011)).

In 1926, the original version of Section 6901 was enacted for transferee liability for income tax. *See* Revenue Act of 1926 ("1926 Act"), Pub. L. No. 69-20, § 280, 44 Stat. 61. Section 280 stated in relevant part:

Sec. 280. (a) The amounts of the following liabilities shall . . . be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title . . . :

(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title . . . .

*Id.* (emphasis added).

Thus, Section 280 originally referred to interest only as part of the transferor's tax liability. It did not suggest that separate interest of any kind would accrue on the transferee's liability.

17

Additionally, when Congress first enacted collection procedures for transferee liability for estate and gift tax in 1926 and 1932, it also limited transferee liability. *See* 1926 Act, § 315(b), 44 Stat. 80 ("[T]he transferee, trustee, or beneficiary shall be personally liable for such [estate] tax, and such property, to the extent of the decedent's interest therein at the time of such transfer . . . ."); 1932 Act, § 510, 47 Stat. 249 ("[T]he donee of any gift shall be personally liable for such [gift] tax to the extent of the value of such gift."). Nothing in these Section 6901 predecessors suggests that Congress intended to impose an unstated obligation that would be exempted from the contemporaneously enacted estate and gift tax transferee liability limitations. *See Comm'r v. Stern*, 357 U.S. 39, 42-44 (1958) ("The courts have repeatedly recognized that § 311 neither creates nor defines a substantive liability but provides merely a new procedure by which the Government may collect taxes."). There is no basis in Section 6901 or its predecessors for imposing an additional obligation on the transferee and circumventing the Section 6324(b) limitation.

Additionally, after the 1954 repeal of the parenthetical "interest" in the predecessor to section 6901, the Treasury Department could have listed "interest" in a regulation. After all, it listed multiple "provisions." However, it never did. Forty-nine years later the government asks this Court to include the word the

government itself neglected to include for a half-century: a word Congress manifestly repealed.

B. <u>Donee Has Not Possessed Government Property; the Policy of Limiting Donee Liability to Property Received is Reasonable</u>

Failing a statutory basis for the imposition of interest in excess of the section 6324(b) limitation, the District Court and the court in *Baptiste* appear to have substantively relied on an equitable argument (labeled by the District Court as "common sense"):

> [S]ection 6901(a) authorizes the government to impose interest on the obligation of the transferee under section 6601 as if it were a tax liability. This conclusion is further bolstered by common sense, as it is unlikely that Congress would alter the traditional rule that *one who possesses funds of the government must pay interest* for the period that person enjoys the benefit of same.[12]

If someone "possesses" government property, he or she may be obligated to compensate the government for that use. However, that assumes the person "possessed" property belonging to the government.

*i.     The Donees Did Not Possess Government Property*

The donees here did not possess government property. The donor, through his stock redemption, gave value to the donees by an increase in the value of their stock. No property belonged to the government. Later the government assessed a gift tax, which created a debt owed by the estate of the donor. That did not create a

---

[12] 29 F.3d at 1542; D.C. at 7.

property interest on behalf of the government in any property of the donees. It did not even create a then-current obligation of the donees to pay anything: donee liability arises only after the donor has failed to pay. The government had only a lien under section 6324. The donees never possessed property belonging to the government.

"A lien in itself is neither property nor a debt." *Tax Ease Funding, L.P. v. Thompson (In re Kizzee-Jordan)*, 626 F.3d 239, 245 n.29 (5th Cir. 2010) (quoting *Tex. Bank & Trust Co. of Dallas v. Custom Leasing, Inc.*, 402 S.W.2d 926, 930 (Tex. Civ. App.—Amarillo 1966, no writ). It is instead a right to have a debt satisfied out of property used to secure the debt. *Id.* Thus, far from the Eleventh Circuit's reasoning, adopted by the District Court, the donee's liability is not a general, independent obligation. It is a secondary obligation for the gift tax that arises in the event the primary obligor donor does not pay the tax, and follows the gift to the donee as a lien on the gift.

To illustrate the nature of a lien: one rarely makes "house payments" or "car payments." Such payments occur in matters involving conditional sales: those in which the seller holds title and the purchaser buys the property over time. They are also known as "rent-to-own" contracts. The typical home mortgage loan or automobile loan is nothing like that; instead, nearly all home purchasers pay cash – in full – for their property. They may borrow much of the cash from a third party,

such as a bank, but that changes nothing: they pay the seller in full and they grant a mortgage on the property to secure the debt owed for the cash borrowed.

Thus, the purchaser owns the property fully – it is not a conditional sale. The lender does not "own" the house or the automobile; the lender merely has a lien against the house or automobile.

The same is true with a gift of property; the donee owns the property received. The government does not. The government has a lien on the property. The government does not, however, own the gifted property.  Oddly, the *Baptiste* court – and the District Court below – blurred this line.  Hence, both decisions, to the extent grounded on equity or "common sense," are in error.

   ii. *Capping Donee Liability at the Value of the Gift Was a Reasonable Policy Decision*

Both the District Court and the Eleventh Circuit in *Baptiste* appear to believe the donees somehow benefitted from possessing "government" property. Undoubtedly, the donees benefitted from possessing their own property, but not that of the government. The donees did benefit from the deferred payment of the underlying obligation – the gift tax. That obligation, however, is a tax owed primarily by the donor and secondarily by the donee and further statutorily capped at the value of the gift. Congress did not have to place such a cap on transferee liability, but it did.

As concluded by other circuits, the Section 6324(b) limitation of the value of the gift does not lead to an unreasonable result. *See Poinier*, 858 F.2d at 923.

> In the absence of explicit statutory authority or useful legislative history, the Commissioner is reduced to arguing that Congress could not have intended to encourage donees whose liabilities are already equal to the value of their gift to delay the payment of gift taxes as long as possible, and that we should read the 1954 Code creatively. *It was not, however, patently unreasonable for Congress to limit the total liability of donees to the value of the gift received.*

*Id.* (emphasis added). In a situation involving an excise tax on a transfer, for which the donor is primarily liable (and where, further, the donor has income to the extent that the donee is forced to pay the gift tax), limiting the donee's secondary liability to the value of the gift received is a legitimate policy choice for Congress to have made. It is entirely reasonable for Congress to have chosen not to punitively tax donees in excess of the value of the property received, where the donor is the party that is primarily responsible for the tax. In fact, it is very difficult to read section 6324 and not immediately reach the conclusion that Congress plainly made that policy decision.

Interest on a tax obligation can exceed the amount of the tax owed if the amount due is unpaid long enough. For gift taxes, this can occur before liability even attaches to the donee, and is likely to occur after a period of years when the gift is held by the donee.

### a. *Section 6324(b) Strikes a Balance of Burdens and Limitations on both Donees and the Government*

This statute is not purely a benefit for donees. Initially, the statute burdens *any* gift made by the donor in a calendar year (as the tax is computed under section 2501(a)(1)) with the *entire* unpaid tax for that year. The statute then makes all donees *personally liable* for "such" tax (i.e. the donor's entire gift tax from the calendar year). Any donee may have received a gift small in amount as compared to other gifts to other donees. In that light, the limitation contained in the next few words of the statute, i.e. "the donee of *any* gift shall be personally liable for *such* tax to the extent of the value of such gift" is necessary to avoid overburdening donees with gift tax liabilities with respect to which they have no connection. It is an entirely reasonable policy choice for Congress to have struck such a balance of burdens and limitations.

The statute also sets a 10-year lien upon all gifts made during the period for which the return was filed, provides personal liability for the donee, and provides that the lien attaches to after-acquired property. While the Eleventh Circuit expressed astonishment that Congress might "create a system which encourages transferees to retain assets of the estate, at the expense of the government, for as long as possible with no adverse consequences," the statute balances that risk against the possibility that innocent donees will be unaware of potential liabilities for years, accruing massive amounts of interest above and beyond the value of the

gift, until the IRS initiates collection actions. Consider also the fact that the "gifts" received by donees (here, simply an increase in value of property already held by the donees) are often unmarketable and illiquid, such as undivided interests in property held by a number of family members.

While the IRS argues that the statutory reading incentivizes taxpayers to delay repaying tax, the Third Circuit found that equity favored the donee. That Court noted that the IRS was fully aware of the tax liability and chose to delay collection for ten years in order to maximize the tax liability. Thus, the Court found that in the rare case a tax liability exceeds the value of a gift, equity favors reducing the IRS's incentive to delay rather than imposing additional burdens on the taxpayer. In any event, there are clearly policy arguments in both directions, and Congress struck its chosen bargain in section 6324 by creating security positions for the government and personal liability for the donee but also limiting that personal liability to the value of the property received.

### b. *Section 6901 is Not Superfluous*

Finally, it is worth noting that applying section 6324's limitation on donee liability does not render section 6901 superfluous. Like many Code sections, it may initially state an already established principle, but then provides additional rules, which are the point. For example, section 71 begins by claiming to tax alimony; however, section 61 already does that. Section 71 is all about the

exclusions. Section 83 begins by stating that transfers of property are taxed; however, section 61 does that. Section 83 is all about the subsequent deferral provisions contained therein. Section 6901 operates in a similar fashion, and is not superfluous, including provisions regarding limitations, extensions of time, rules where a transferor is deceased, address notices, and the like.

> iii.   *Remedial Provisions, Such as Section 6324, Are to be Construed Liberally for Taxpayers; Meanwhile, Tax Burdens Cannot Be Implied*

Remedial provisions, such as section 6324, are to be construed liberally in favor of taxpayers. *Bonwit Teller & Co. v. United States*, 283 U.S. 258, 263 (1931). Further, the U.S. Supreme Court long ago established the principle that a tax burden imposed must be explicitly provided for in the statute and cannot be implied. *See Gould v. Gould*, 245 U.S. 151 (1917) ("In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out.  In case of doubt they are construed most strongly against the government, and in favor of the citizen."); *America Online, Inc. v. United States*, 64 Fed. Cl. 571, 576 (Fed. Cl. 2005).

In line with these rules of construction, there are a number of questions one might legitimately ask:

- Even if the Court determined that two distinct liabilities exist, why would the "limitations" language in 6901 not include the liability limitation in section 6324 (which section is even cross-referenced in section 6901)?

- Why would a more general provision (6901, covering a panoply of potential donee tax liabilities and related issues) rule over a much more specific provision (6324, which clearly applies only to donee liability for gift taxes)?

- Why would we imply "interest" from the "provisions" language in 6901, when the other examples of provisions in the Code and regulations are clearly procedural in nature?

Had the District Court used the appropriate rules of construction with respect to the Code, perhaps these questions would have been evaluated.

## CONCLUSION

The District Court erred because of its failure to understand some important conceptual tax issues: (i) the nature of the gift tax as an excise tax on a gratuitous transfer of property; (ii) the nature of the donee's liability as a tax debt; (iii) procedural versus substantive provisions; (iv) whether a tax lien converts private property into government property; and (v) taxability must be explicit, not implied, while remedial provisions are to be liberally construed. This Court should correct the

District Court's error and support the legitimate policy decision of Congress to limit

donee gift tax liability to the amount of the gift received.

WHEREFORE, for the foregoing reasons, the Tax Foundation supports the

Appellants' position in this appeal.

Respectfully submitted,

Naman, Howell, Smith & Lee, PLLC
400 Austin Avenue, Suite 800
P. O. Box 1470
Waco, Texas 76703-1470
(254) 755-4100
FAX (254) 754-6331

/s/ *Marcus J. Brooks*
Marcus J. Brooks
State Bar No. 24040579
Joe Rivera
State Bar No. 24065981

ATTORNEYS FOR TAX FOUNDATION
AS AMICUS CURIAE

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was delivered to counsel of record via electronic filing with the Clerk of Court using the Electronic Filing System which will send notification of such filing to the following, on this 29th day of April, 2013.

/s/ *Marcus J. Brooks*
Marcus J. Brooks

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to 5th Circuit Rule 32.2.7(C)(i), the undersigned certifies this brief complies with the type-volume limitations of 5th Circuit Rule 32.2.7(b).

1. Exclusive of the exempted portions in 5th Circuit Rule 32.2.7(b)(3), the Brief contains no more than 6,903 words in proportionally spaced typeface, including footnotes.

2. The Brief has been prepared in proportionally spaced typeface using:

**Microsoft Word 2003**

**Times New Roman (14 Pt. Type)**

3. If the Court so requests, the undersigned will provide an electronic version of the Brief, and/or a copy of the word or line printout.

4. The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type / volume limits in 5th Circuit Rule 32.2.27 may result in the Court's striking the Brief, and imposing sanctions against the person signing the Brief.


/s/ *Marcus J. Brooks*
Marcus J. Brooks

02349744-1.3